UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSEF SALAAM,<br>RAYMOND SANTANA,<br>KEVIN RICHARDSON,<br>ANTRON BROWN,<br>and<br>KOREY WISE,<br><br>                Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP,<br><br>                Defendant. | CIVIL NO.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

**CIVIL ACTION COMPLAINT**

1. This case involves false and defamatory statements made by Defendant, Donald J. Trump, during a presidential debate that took place on September 10, 2024, in Philadelphia, Pennsylvania.

2. During the debate, Defendant Trump made several statements concerning the "Central Park Five." The Central Park Five, now also known as the Exonerated Five, are five individuals who, as teenagers, were wrongfully convicted of a series of assaults that occurred in Central Park, New York City on April 19, 1989.

3. The Central Park Five or Exonerated Five is comprised of Plaintiffs Yusef Salaam, Raymond Santana, Kevin Richardson, Antron Brown and Korey Wise. Plaintiffs were wrongfully convicted of crimes they did not commit when they were between fourteen and sixteen years old and spent the formative years of their lives in prison.

1

4. In 2002, based on newly discovered DNA evidence and the confession of the true perpetrator, Plaintiffs were exonerated. Plaintiffs have spent the last two decades attempting to rebuild their lives.

5. At the September 10, 2024 presidential debate, Defendant Trump falsely stated that Plaintiffs killed an individual and pled guilty to the crime. These statements are demonstrably false. Plaintiffs never pled guilty to any crime and were subsequently cleared of all wrongdoing. Further, the victims of the Central Park assaults were not killed.

6. Plaintiffs have suffered injuries as a result of Defendant Trump's false and defamatory statements and bring this lawsuit to obtain redress.

## THE PARTIES

7. Plaintiff Yusef Salaam is now 50 years old and is a New York City Council Member representing District Nine, although he brings suit here only in his personal capacity. Plaintiff Salaam is a citizen and resident of the State of New York.

8. Plaintiff Raymond Santana is now 50 years old and is an author, fashion designer and civil rights advocate. Plaintiff Santana is a citizen and resident of the State of Georgia.

9. Plaintiff Kevin Richardson is now 50 years old and is a motivational speaker and philanthropist. Plaintiff Richardson is a citizen and resident of the State of New Jersey.

10. Plaintiff Antron Brown (formerly known as Antron McCray) is now 50 years old and is retired. Plaintiff Brown is a citizen and resident of the State of Georgia.

11. Plaintiff Korey Wise is now 52 years old and is a civil rights advocate. Plaintiff Wise is a citizen and resident of the State of New York.

12. Defendant Donald J. Trump is the Republican nominee for President of the United States, although he is sued here only in his personal capacity. Defendant Trump is a citizen and resident of the State of Florida.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction because the Plaintiffs and the Defendant are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

14. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

15. The Court has personal jurisdiction over Defendant Trump pursuant to Pennsylvania's long-arm statute. *See* 42 Pa. C.S. § 5322.

## FACTUAL ALLEGATIONS

**A.     The "Central Park Five" Case**

16. On the night of April 19, 1989, Ms. Patricia Meili was assaulted and raped while jogging in Central Park.

17. On the same night, Mr. David Lewis and Mr. John Loughlin were assaulted while jogging in a different part of the park.

18. Plaintiffs, who were between fourteen and sixteen years old at the time, were taken in for questioning in connection with these crimes. Plaintiffs would later come to be collectively known as the "Central Park Five" or the "Exonerated Five."

19. While in police custody, Plaintiffs were each separately subjected to hours of coercive interrogation, under duress, with no attorney present and often without a parent or guardian present.

20. Plaintiffs all initially denied having any knowledge of the Central Park assaults. However, after hours of interrogation, four of the Plaintiffs agreed to provide written and videotaped statements in which they falsely admitted to having been present during the assaults.

21. Plaintiff Salaam did not provide a written or videotaped statement because his mother intervened during his interrogation. However, the police detectives allegedly took notes of his responses during his hours-long interrogation, in which Plaintiff Salaam also purportedly admitted to having been present during the assaults.

22. The statements were contradictory, unreliable and inconsistent with each other and with the objective evidence of the assaults.

23. In fact, Plaintiffs were not involved in the assaults in any way, and their statements were the product of coercion and duress. Plaintiffs all recanted their coerced statements shortly after their interrogations.

24. On May 1, 1989, only eleven days after the horrendous assault on Ms. Meili took place, and while public sentiment against these young boys was still high, Defendant Trump published a full-page advertisement in four New York City newspapers. The advertisement alluded to the assaults in Central Park without specifically identifying the suspects and called for the City of New York to "[s]end a message loud and clear to those who would murder our citizens and terrorize New York—BRING BACK THE DEATH PENALTY AND BRING BACK OUR POLICE!"

25. A true and correct copy of the advertisement is attached as Exhibit "A."

26. On May 4, 1989, Plaintiffs were indicted and charged with attempted murder, rape, sodomy, assault, robbery, sexual abuse and riot.

27. Plaintiffs pled not guilty on all counts. They would all maintain their innocence throughout their trials and years in prison—even when this later hindered them from obtaining parole and extended their incarcerations.

28. Plaintiffs Salaam, Santana and Brown were tried jointly beginning June 25, 1990. After ten days of deliberation, the jury convicted each of them of assault in connection with the attack on Mr. Lewis, assault and robbery in connection with the attack on Mr. Loughlin, assault and rape in connection with the attack on Ms. Meili and of riot. The jury acquitted each of them of attempted murder and sodomy.

29. Plaintiffs Richardson and Wise were tried jointly beginning October 22, 1990. After eleven days of deliberation, the jury convicted Plaintiff Richardson on all counts. Plaintiff Wise was convicted of assault and sexual abuse with respect to the attack on Ms. Meili and of riot. He was acquitted of the remaining charges.

30. As the Manhattan District Attorney's Office would later acknowledge in court filings: "the People's case at both trials rested almost entirely on the statements made by the defendants" during their interrogations. In fact, there was no forensic evidence that linked these five youths to this offense.

31. Plaintiff Wise was sentenced as an adult to five to fifteen years in prison. The remaining Plaintiffs were sentenced as juveniles to five to ten years.

32. While in prison in 2002, Plaintiff Wise met the true perpetrator of the attack on Ms. Meili, Matias Reyes, who was incarcerated at the same prison for a series of rapes committed around the same time as the Central Park assaults. After the encounter, Reyes confessed to prison staff that he was the true perpetrator of the assault and rape of Ms. Meili.

33. Following his confession to prison staff, Reyes met with prosecutors from the Manhattan District Attorney's Office and provided details that only the true perpetrator could know. The police also performed a DNA test that conclusively showed that Reyes was the true perpetrator. Prior DNA tests on the five who were convicted of these crimes were negative in all respects.

34. Following these revelations, the Manhattan District Attorney's Office reopened its investigation into the Central Park assaults.

35. At the conclusion of a thorough re-investigation, Nancy Ryan, the Chief of the Trial Division of the District Attorney's Office, filed an affirmation on behalf of the District Attorney's Office recommending that Plaintiffs' convictions be vacated and that the indictments be dismissed.

36. Ms. Ryan wrote: "the People's case at both trials rested almost entirely on the statements made by the defendants. . . . But a comparison of the statements reveals troubling discrepancies. . . . The accounts given by the five defendants differed from one another on the specific details of virtually every major aspect of the crime – who initiated the attack, who knocked the victim down, who undressed her, who struck her, who held her, who raped her, what weapons were used in the course of the assault, and when in the sequence of events the attack took place . . . In many other respects the defendants' statements were not corroborated by, consistent with, or explanatory of objective, independent evidence. And some of what they said was simply contrary to established fact."

37. Given the unreliability of the statements, as well as the "newly discovered" and "incontrovertible proof" tying Matias Reyes to the assault, the District Attorney's Office recommended that the charges relating to the attack on Ms. Meili be vacated.

38.     With respect to the attacks on Mr. Lewis and Mr. Loughlin, Ms. Ryan stated: "[T]he trial evidence as to the other charges, like the evidence as to the attack on the female jogger, consisted almost entirely of the defendants' statements." Consequently, "there was no significant evidence at trial establishing the defendants' involvement in the other crimes of which they stand convicted that would not have been substantially and fatally weakened by the newly discovered evidence in this matter."

39.     On December 19, 2002, New York Supreme Court Justice Charles J. Tejada vacated Plaintiffs' convictions and dismissed the indictments, as the District Attorney's Office had recommended.

40.     In 2003, Plaintiffs brought suit against the City of New York for, among other things, false arrest, malicious prosecution and racially motivated conspiracy. The lawsuit settled for $41 million in 2014, with then-Mayor De Blasio stating that the settlement was a "moral obligation to right this injustice."

**B.    The September 10, 2024 Presidential Debate**

41.     On September 10, 2024, Defendant Trump participated in a presidential debate hosted at the National Constitution Center in Philadelphia, Pennsylvania. The debate was watched live by more than 67 million people in the United States. The video and transcript of the debate have since been viewed by many others.

42.     During the segment of the debate dedicated to "race and politics in this country," Defendant Trump's opponent, Vice President Kamala Harris, made the following statement: "Let's remember, this is the same individual [Trump] who took out a full-page ad in The New York Times calling for the execution of five young Black and Latino boys who were innocent, the Central Park Five. Took out a full-page ad calling for their execution."

43. Vice President Harris's comment came as part of a longer answer relating to "race and politics."

44. Defendant Trump responded: "[T]hey come up with things like what she just said going back many, many years when a lot of people including Mayor Bloomberg agreed with me on the Central Park Five. They admitted – they said, they pled guilty. And I said, well, if they pled guilty they badly hurt a person, killed a person ultimately. And if they pled guilty – then they pled we're not guilty."

45. Defendant Trump's statements came as part of a longer response to Vice President Harris's comments.

46. A true and correct videorecording of the debate is available at the following link: https://abcnews.go.com/Politics/watch-full-abc-news-presidential-debate/story?id=113470583. The relevant portion of the debate can also be accessed at the following link: https://exoneratedfiveversustrump.com.

47. Defendant Trump's statements were of or concerning Plaintiffs, collectively known as the "Central Park Five."

48. Defendant Trump's statements were false and defamatory in numerous respects.

49. Plaintiffs never pled guilty to the Central Park assaults. Plaintiffs all pled not guilty and maintained their innocence throughout their trial and incarceration, as well as after they were released from prison.

50. None of the victims of the Central Park assaults were killed.

51. Michael Bloomberg, referenced in Mr. Trump's remarks, would not become mayor of New York until 2002. The mayor at the time of the Central Park assaults was Ed Koch. Mayor Koch did not agree with Defendant Trump's statements regarding the assaults. In fact, in the 1989

advertisement, Defendant Trump acknowledged: "Mayor Koch has stated that hate and rancor should be removed from our hearts. I do not think so." In response to Mr. Trump's advertisement, Mayor Koch was quoted as saying: "Nobody I know of in Western society believes that under any circumstances would you ever impose the death penalty on juveniles." Further, during a 1989 interview discussing the Central Park Five, Mayor Koch carefully noted: "We always have to say 'alleged' because that's the requirement."

52. Defendant Trump also omitted key facts, further rendering his statements false, misleading and defamatory. These include, among other things, the fact that the Manhattan District Attorney's Office later acknowledged that the teens' confessions were unreliable and conflicted with the objective evidence; that four of the five were acquitted of attempted murder; that all five men's convictions were later vacated; that the true perpetrator, Matias Reyes, confessed; that DNA evidence confirmed that Reyes was the true perpetrator; and that the City of New York ultimately agreed to pay $41 million for its conduct toward Plaintiffs.

53. Defendant Trump's statements of or concerning Plaintiffs on September 10, 2024 were made negligently, with knowledge of their falsity and/or with reckless disregard for their falsity.

54. Defendant Trump's false and insulting statements about Plaintiffs were defamation *per se* in that they ascribe to Plaintiffs the commission of criminal offenses, including offenses for which Plaintiffs have never been charged or accused, offenses for which they were acquitted at trial and offenses for which they were conclusively exonerated and their convictions vacated.

55. Defendant Trump's statements about Plaintiffs were also defamation *per se* because the Central Park assaults involved rape, and thus, by ascribing the commission of the assaults to Plaintiffs, Defendant Trump was also ascribing to Plaintiffs serious sexual misconduct.

56. Defendant Trump's conduct at the September 10 debate was extreme and outrageous, and it was intended to cause severe emotional distress to Plaintiffs.

57. Plaintiff Salaam attended the September 10 debate in person and was in the room when Defendant Trump made his false and defamatory statements.

58. After the debate, Defendant Trump passed through the post-debate "spin room" fielding questions from attendees.

59. As Defendant Trump approached Plaintiff Salaam, other attendees asked Defendant Trump, "Will you apologize to the Exonerated Five?" and "Sir, what do you say to a member of the Central Park Five, sir?"

60. When Defendant Trump did not respond, Plaintiff Salaam said, "President Trump, I'm Yusef Salaam, one of the Exonerated Five. How are you doing?"

61. Defendant Trump responded, "Ah, you're on my side then."

62. Plaintiff Salaam then said, "No, no, no, I'm not on your side."

63. Defendant Trump proceeded to wave his hand at Plaintiff Salaam, smile and walk away.

64. Plaintiff Salaam was attempting to politely dialogue with Defendant Trump about the false and defamatory statements that Defendant Trump had made about Plaintiffs less than an hour earlier, but Defendant Trump refused to engage with him in dialogue.

65. A recording of the exchange can be accessed at the following link: https://exoneratedfiveversustrump.com.

C. **Defendant Trump's pattern of wrongful conduct toward Plaintiffs**

66. Defendant Trump's conduct at the September 10 debate was part of a continuing pattern of extreme and outrageous conduct toward Plaintiffs stretching back decades.

67. Defendant Trump has previously made numerous public statements demonstrating that he is familiar with the Central Park assaults, the criminal case, the trials, the exoneration and the settlement with the City, and that he therefore knew that the statements he made on September 10, 2024 were false and misleading.

68. Like his statements at the September 10 debate, many of Defendant Trump's past statements are themselves false, defamatory and part of a continuing pattern of extreme and outrageous conduct directed at Plaintiffs.

69. By Defendant Trump's own admission, his conduct toward Plaintiffs is borne out of personal animus and an intent to make the men suffer. As Defendant Trump stated in his 1989 advertisement: "I want to hate these muggers and murderers. They should be forced to suffer . . . I want to hate these murderers and I always will . . . I am looking to punish them. . . . I want them to understand our anger. I want them to be afraid."

70. On April 24, 2013, Defendant Trump tweeted his impressions of a documentary film about the Central Park Five or Exonerated Five, which he described as a "one sided piece of garbage that didn't explain the.horrific [sic] crimes of these young men while in park [sic]."

71. Defendant Trump was referring to a 2012 film by documentarian Ken Burns titled "The Central Park Five." The documentary describes in detail the true circumstances of the Central Park assaults, the subsequent legal proceedings and the men's ultimate exoneration. The film explains that the Central Park Five or Exonerated Five never pled guilty and that the victims did not die.

72. Given that Defendant Trump has seen the film, he knew that his statements at the September 10 debate were false, misleading and defamatory.

73. Defendant Trump falsely stated in his April 24, 2013 tweet about the documentary that the Central Park Five committed "horrific crimes . . . while in park [sic]." This statement, written long after Plaintiffs had been exonerated, was itself false, defamatory and part of a continuing pattern of extreme and outrageous conduct.

74. On June 29, 2013, a Twitter user asked Defendant Trump: "How do you feel that the central park 5 were innocent." Defendant Trump responded: "Innocent of what-how many people did they mugg [sic]?"

75. Defendant Trump did not claim in this tweet that Plaintiffs had pled guilty to assaulting and killing someone like he did at the September 10 debate, because he knows that this is false.

76. However, Defendant Trump stated in his June 29, 2013 tweet that Plaintiffs were guilty of mugging. This statement was itself false, defamatory and part of a continuing pattern of extreme and outrageous conduct.

77. On June 21, 2014, Defendant Trump wrote an editorial in the New York Daily News regarding the civil settlement with the City of New York in which he called the settlement a "disgrace," stated that "[t]hese young men do not exactly have the pasts of angels," and asked rhetorically: "What about the other people who were brutalized that night, in addition to the jogger?"

78. Defendant Trump did not claim in this editorial that Plaintiffs had pled guilty to assaulting and killing someone like he did at the September 10 debate, because he knows that this is false.

79. However, Defendant Trump's derogatory comments and insinuations of criminality directed at Plaintiffs in the editorial were themselves false, defamatory and part of a continuing pattern of extreme and outrageous conduct.

80. On June 18, 2019, Defendant Trump was asked by a reporter: "The Central Park Five, they've been exonerated, there have been movies and videos . . . You came out with a full-page ad saying they should die, they should have the death penalty." Defendant Trump responded: "Why do you bring that question up now? It's an interesting time to bring it up. You have people on both sides of that. They admitted their guilt. If you look at Linda Fairstein and if you look at some of the prosecutors, they think that the City should never have settled that case. So we'll leave it at that."

81. Defendant Trump did not claim in his response to the reporter that Plaintiffs had pled guilty to assaulting and killing someone like he did at the September 10 debate, because he knows that this is false.

82. However, the clear implication of Defendant Trump's statement was that Linda Fairstein, a prosecutor on the Central Park assault case, continues to believe that Plaintiffs were rightfully convicted of assaulting and raping Ms. Meili. In fact, while Ms. Fairstein has made some negative comments about Plaintiffs, she nevertheless wrote in a Wall Street Journal editorial on June 10, 2019, less than two weeks before Defendant Trump's statement: "Mr. Reyes's confession, DNA match and claim that he acted alone required that the rape charges against the five be vacated. I agreed with that decision, and still do."

83. Defendant Trump also omitted the fact that Manhattan District Attorney Robert Morgenthau and Chief of the Trial Division Nancy Ryan, who were responsible for overseeing the prosecution, formally recommended that all charges against Plaintiffs be vacated and the

indictments dismissed. This further renders Defendant Trump's June 18, 2019 statement regarding the views of prosecutors on the case false and misleading.

84. Defendant Trump's false and misleading statements to reporters on June 18, 2019 were part of a continuing pattern of extreme and outrageous conduct toward Plaintiffs.

85. Plaintiffs suffered harm, including severe emotional distress and reputational damage, as a direct result of Defendant Trump's false and defamatory statements at the September 10 debate, as well as his continuing pattern of extreme and outrageous conduct.

## CAUSES OF ACTION

## COUNT I – DEFAMATION

86. Plaintiffs incorporate by reference the averments contained in the foregoing paragraphs of the Complaint as though fully set forth herein at length.

87. Defendant Trump published the above-mentioned statements, innuendos and implications concerning Plaintiffs, including to individuals in the Eastern District of Pennsylvania.

88. The aforementioned statements were of or concerning Plaintiffs, also known as the "Central Park Five."

89. Individuals who heard said statements, innuendos and implications understood them to refer to Plaintiffs.

90. The statements, innuendos and implications were defamatory *per se*.

91. Defendant Trump made his false and defamatory statements negligently, knowing they were false, and/or with reckless disregard for their truth or falsity.

92. Defendant Trump made his false and defamatory statements with ill will and spite, and with wanton, reckless or willful disregard for their injurious effects on Plaintiffs.

93. As a proximate result of Defendant's negligent, malicious, intentional and reckless conduct as set forth above and herein, Plaintiffs are entitled to such damages as will compensate them for their reputational damage, emotional pain and suffering, resultant out-of-pocket costs and expenses, and punitive damages to punish Defendant Trump for his conduct and deter him and others similarly situated from like acts in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Donald J. Trump for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000, and such other relief as this Court deems just and for a trial by jury on all issues so triable.

## COUNT II – FALSE LIGHT

94. Plaintiffs incorporate by reference the averments contained in the foregoing paragraphs of the Complaint as though fully set forth herein at length.

95. Defendant Trump's statements placed Plaintiffs in a false light that would be highly offensive to a reasonable person.

96. Defendant Trump knew that his statements were false and/or acted in reckless disregard as to the falsity of his statements and the false light in which they would place Plaintiffs.

97. Defendant Trump made his false and offensive statements with ill will and spite, and with wanton, reckless or willful disregard for their injurious effects on Plaintiffs.

98. As a proximate result of Defendant's negligent, malicious, intentional and reckless conduct as set forth above and herein, Plaintiffs are entitled to such damages as will compensate them for their reputational damage, emotional pain and suffering, resultant out-of-pocket costs and expenses, and punitive damages to punish Defendant Trump for his conduct and deter him and others similarly situated from like acts in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Donald J. Trump for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000, and such other relief as this Court deems just and for a trial by jury on all issues so triable.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

99. Plaintiffs incorporate by reference the averments contained in the foregoing paragraphs of the Complaint as though fully set forth herein at length.

100. Defendant Trump's conduct toward Plaintiffs at the September 10 debate was extreme and outrageous.

101. Defendant Trump's conduct toward Plaintiffs at the September 10 debate was part of a continuing pattern of extreme and outrageous conduct dating back several years, thus constituting a continuing tort.

102. Defendant Trump's conduct intentionally and/or recklessly caused Plaintiffs to suffer severe emotional distress.

103. Defendant Trump acted with ill will and spite, and with wanton, reckless or willful disregard for his conduct's injurious effects on Plaintiffs.

104. As a proximate result of Defendant's malicious, intentional and reckless conduct as set forth above and herein, Plaintiffs are entitled to such damages as will compensate them for their emotional pain and suffering, resultant out-of-pocket costs and expenses, and punitive damages to punish Defendant Trump for his conduct and deter him and others similarly situated from like acts in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Donald J. Trump for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess

of $75,000, and such other relief as this Court deems just and for a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court award Plaintiffs compensatory and punitive damages in an amount to be determined at trial, along with pre- and post-judgment interest, costs and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a jury trial on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: <u>October 21, 2024</u>

Respectfully Submitted,

By: <u>  */s/ Shanin Specter*  </u>
Shanin Specter, Esquire (No. 40928)
Alex Van Dyke, Esquire (No. 334456)
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
shanin.specter@klinespecter.com
alex.vandyke@klinespecter.com

*Lead Counsel for all Plaintiffs*

Jane Fisher-Byrialsen, Esquire, *pro hac vice forthcoming*
David Fisher, Esquire, *pro hac vice forthcoming*
FISHER & BYRIALSEN, PLLC
99 Park Avenue
New York, NY 10016
(303) 256-6345
jane@fblaw.org
david@fblaw.org

*Co-Counsel for Plaintiff Wise*

Hollis Whitson, Esquire, *pro hac vice forthcoming*
SAMLER & WHITSON, P.C.
1600 Stout St. Suite 1400
Denver, CO 80202
(303) 670-0575
hollis@samlerandwhitson.com

*Co-Counsel for Plaintiff Wise*

Jonathan C. Moore, Esquire, *pro hac vice forthcoming*
Marc Cannan, Esquire, *pro hac vice forthcoming*
BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue
New York, NY 10016
(212) 490-0400
jmoore@blhny.com
mcannan@blhny.com

*Co-Counsel for Plaintiffs Salaam, Santana, Richardson & Brown*