## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YUSEF SALAAM, et al.,

        *Plaintiffs*,

              *v.*

DONALD J. TRUMP,

        *Defendant*.

Case No. 2:24-cv-05560-WB

**MOTION TO DISMISS**

**(Fed. R. Civ. Proc. 12(b)(6); 42 Pa.C.S. § 8340.11 *et seq.*)**

## DEFENDANT DONALD J. TRUMP'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 2

LEGAL STANDARDS ............................................................................................... 4

    I.    Pennsylvania's Anti-SLAPP Statute .............................................................. 4

    II.   Federal Rule of Civil Procedure 12(b)(6) ..................................................... 7

ARGUMENT ............................................................................................................... 7

    I.    President Trump meets his initial burden under the anti-SLAPP statute
        because he is being sued for a matter of public interest ................................. 7

    II.   Plaintiffs fail to state a claim under Rule 12(b)(6) ....................................... 8

        A.   The statute of limitations bars liability for most statements alleged ........... 8

        B.   Plaintiffs fail to state a claim for defamation ................................................ 8

        C.   Plaintiffs fail to state a claim for false light .............................................. 14

        D.   Plaintiffs fail to state a claim for intentional infliction of emotional
            distress ........................................................................................................ 16

    III.  Fee-Shifting is Mandatory Under Pennsylvania's anti-SLAPP statute ........... 18

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Abadie v. Riddle Memorial Hosp.,*
589 A.2d 1143 (Pa. Super 1991) ........................................................ 18

*Adelson v. Harris*,
774 F.3d 803, 809 (2d Cir. 2014),
*certified question answered*, 402 P.3d 665 (Nev. 2017) .................................. 5, 6, 19

*Alston v. PW-Philadelphia Weekly*,
980 A.2d 215 (Pa. Commw. Ct. 2009) .............................................. 9, 11

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975) .................................................................... 6

*Arkansas Educ. Television Comm'n v. Forbes*,
523 U.S. 666 (1998) .................................................................... 8

*Armstrong v. Paoli Mem'l Hosp.,*
430 Pa. Super. 36 (1993) ............................................................ 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................... 7

*Baker v. Lafayette Coll.*,
532 A.2d 399 (Pa. 1987) ............................................................ 11

*Beverly Enterprises, Inc. v. Trump,*
1 F.Supp.2d 489 (W.D. Pa. 1998),
*aff'd*, 182 F.3d 183 (3d Cir. 1999) .............................................. 14

*Birl v. Philadelphia Electric Company,*
167 A.2d 472 (Pa. 1960) ............................................................. 9

*Bobb v. Kraybill,*
511 A.2d 1379 (Pa. Super 1986) .................................................. 12

*Bobulinski v. Tarlov,*
No. 1:24-cv-02349-JPO (S.D.N.Y. 2024) .................................... 6, 19

*Bowley v. City of Uniontown Police Dep't,*
404 F.3d 783 (3d Cir. 2005) ........................................................ 8

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006) ........................................................ 13

*Cheney v. Daily News L.P.*,
654 Fed.Appx. 578 (3d Cir. 2016) ................................................................. 17, 18

*Connick v. Myers*,
461 U.S. 138 (1983) ......................................................................................... 7

*Cotton v. Slone*,
4 F.3d 176 (2d Cir.1993) ................................................................................. 5

*Cox v. Keystone Carbon Co.*,
861 F.2d 390 (3d Cir.1988) ............................................................................. 17

*Curran v. Philadelphia Newspapers, Inc.*,
546 A.2d 639 (1988) ........................................................................................ 16

*Davis v. City of Philadelphia*,
821 F.3d 484 (3d Cir. 2016) ............................................................................ 7

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) ........................................................................................... 5

*Fargione v. Sweeney*,
CV 16-5878,
2017 WL 4283955 (E.D. Pa. Sept. 27, 2017) ................................................. 16

*Fenico v. City of Philadelphia*,
No. 20CV3336,
2024 WL 4591798 (E.D. Pa. Oct. 28, 2024) ................................................... 7

*Fla. Star v. B. J. F.*,
491 U.S. 524 (1989) ......................................................................................... 8

*Garrett v. Bamford*,
582 F.2d 810 (3d Cir. 1978) ............................................................................ 4

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) ............................................................................. 5

*Guaranty Trust Co. v. York*,
326 U.S. 99 (1945) ........................................................................................... 19

*Hanna v. Plumer*,
380 U.S. 460 (1965) ......................................................................................... 19

*Henry v. Lake Charles Am. Press, L.L.C.*,
566 F.3d 164 (5th Cir. 2009) .......................................................................... 5

iii

*Hill v. Borough of Doylestown*,
   CIV.A. 14-2975,
   2015 WL 1874225 (E.D. Pa. Apr. 23, 2015) .................................................................. 17

*Huber v. Palm*,
   38 Pa. D. & C.3d 227 (Pa. Com. Pl. 1985) ................................................................... 14

*In re 42 Pa. C. S. § 1703*,
   394 A.2d 444 (Pa. 1978) ................................................................................................... 4

*Jones v. Johnson & Johnson*,
   CIV. A. 94-7473,
   1995 WL 549042 (E.D. Pa. Sept. 13, 1995) .................................................................. 17

*Krajewski v. Gusoff*,
   53 A.3d 793 (Pa. Super 2012) ......................................................................................9, 11

*Larsen v. Philadelphia Newspapers, Inc.*,
   543 A.2d 1188 (Pa. Super 1988) .................................................................................... 15

*M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*,
   43 F. Supp. 3d 412 (M.D. Pa. 2014) .............................................................................. 18

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ............................................................................................ 5

*Mantua Cmty. Planners v. City of Phila.*,
   No. CV 12-4799,
   2016 WL 3227643 (E.D. Pa. June 13, 2016) ................................................................. 16

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991) ........................................................................................................ 12

*McCafferty v. Newsweek Media Grp., Ltd.*,
   955 F.3d 352 (3d Cir. 2020) ........................................................................................... 15

*Melius v. Glacken*,
   94 A.D.3d 959 (N.Y. App. Div. 2012) ........................................................................... 14

*Monge v. Univ. of Pennsylvania*,
   674 F. Supp. 3d 195 (E.D. Pa. 2023) ............................................................................. 15

*Olivet Univ. v. Newsweek Digital LLC*,
   No. 23 CIV. 5670 (NRB),
   2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024) .......................................................... 12, 13

iv

*Pacitti v. Durr*,
    310 Fed.Appx. 526 (3d Cir. 2009) ....................................................... 12

*Reardon v. Allegheny Coll.*,
    926 A.2d 477 (Pa. Super 2007) .......................................................... 9

*Richette v. Philadelphia Mag.*,
    No. 802,
    1996 WL 756953 (Pa. Com. Pl. Jan. 23, 1996) ................................. 18

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    977 F.2d 47 (2d Cir. 1992) .......................................................... 6, 19

*Rouch v. Enquirer & News of Battle Creek Michigan*,
    487 N.W.2d 205 (Mich. 1992) ....................................................... 12

*San Diego v. Roe*,
    543 U.S. 77 (2004) ........................................................................ 7

*Sarkisian v. Rooke*,
    No. 06-CV-00170,
    2007 WL 9811040 (E.D. Pa. Mar. 23, 2007) ................................... 15

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ...................................................................... 7

*Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*,
    864 F.3d 236 (2d Cir. 2017) .......................................................... 12

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir.1999) ............................................................ 5

*Vivian v. Blank Rome, LLP*,
    318 A.3d 890 (Pa. Super. 2024) ..................................................... 11

*White v. Brommer*,
    747 F.Supp.2d 447 (E.D. Pa.2010) ................................................ 18

**Statutes**

42 Pa.C.S. § 5523(1) ............................................................................ 8

42 Pa.C.S. § 8340.13(3) ........................................................................ 7

42 Pa.C.S. § 8340.15 ......................................................................... 4, 7

42 Pa.C.S. § 8340.15(1)(ii) ................................................................... 8

42 Pa.C.S. § 8340.17 ............................................................................ 4

42 Pa.C.S. § 8349.12(2) ................................................................................................. 7

42 Pa.C.S. §8340.18 ............................................................................................... 4, 19

Pa. C.S.A. § 5524 ........................................................................................................ 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 7

**Other**

Ballard Spahr LLP, *Pennsylvania Protects Press Freedom, Passes Anti-SLAPP Statute*, Ballard
    Spahr LLP (July 20, 2024),
    https://www.ballardspahr.com/insights/alerts-and-articles/2024/07/pennsylvania-protects-
    press-freedom-passes-anti-slapp-statute ................................................................. 5

H.B. 1466, 2023 Gen. Assemb., Reg. Sess. (Pa. 2023),
    https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr=
    2023&sessInd=0&billBody=H&billTyp=B&billNbr=1466&pn=3487 .................................... 4

Restatement (Second) of Torts § 652E ........................................................................ 15

## INTRODUCTION

Over 30 years ago, there was a series of violent crimes in New York City's Central Park. Plaintiffs originally "admitted to having been present" for the commission of these crimes and were indicted. Countless citizens of New York City – including the juries that convicted Plaintiffs and President-elect Trump – reasonably believed based on the available facts that Plaintiffs committed the crimes to which they had earlier confessed. Thus, two weeks after the crimes took place, President-elect Trump took out an advertisement expressing the view that those who commit the types of harrowing crimes the city was experiencing deserved the death penalty. In 2002 – more than a decade after the advertisement was printed – Plaintiffs' convictions were vacated.

Twenty years later, on September 10, 2024, President-elect Trump and Vice President Kamala Harris engaged in a televised Presidential Debate before a national audience. During the debate, Ms. Harris reminded the audience of the 1989 crimes and characterized President-elect Trump's contemporaneous advertisement as calling for the execution of "innocent" people. This was misleading as Plaintiffs would not be adjudged "innocent" until ten years after the ad appeared. In response to these damning accusations, President-elect Trump explained the opinion that he had held in 1989 (that Plaintiffs were guilty) and disclosed the true factual basis for that opinion (that each Plaintiff had admitted guilt to law enforcement). Far from asserting "false facts," President-elect Trump acknowledged that Plaintiffs later denied guilt and did not dispute that Plaintiffs had ultimately been cleared of wrongdoing.

Plaintiffs now attempt to recast political rhetoric and debate about criminal justice and public safety as "defamation." This ignores well-settled First Amendment jurisprudence that protects the President-elect's speech about matters of public concern. Plaintiffs' claims fail to meet the elements required for defamation because President-elect Trump's statements, taken in context,

were protected opinions based on true disclosed fact, lacked any defamatory sting, and were substantially true. Plaintiffs' remaining claims for false light and intentional infliction of emotional distress fail for the same reasons, and because Plaintiffs fail to meet the additional required elements of those claims.

President-elect Trump respectfully requests that the Court schedule oral argument for this matter. For the reasons discussed below, Plaintiffs' Complaint must be dismissed for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6). Further, because Plaintiffs have decided to sue President-elect Trump for his protected public expression, Pennsylvania's anti-SLAPP statute entitles him to an award of his attorneys' fees and costs should he prevail as to any claim.

## FACTUAL BACKGROUND

On April 19, 1989, three individuals were violently assaulted while jogging in Central Park. Compl., ¶¶ 16–17, 28–29. The female victim, Ms. Patricia Meili, was knocked to the ground, undressed, struck, held, raped, and left critically injured to the point of near-death. *See id.*, ¶¶ 16, 36. Plaintiffs were taken into police custody, and each of them admitted to having been present during the assaults. *Id.*, ¶¶ 18–21.

On May 1, 1989, approximately two weeks after the "Central Park Assaults" occurred, President-elect Trump (then, a private citizen) took out an advertisement in four New York City newspapers in which he voiced his concerns about public safety and called for accountability (the "Ad"). Compl., ¶ 24. The Ad did not identify Plaintiffs by name. *Id.* Three days after the Ad appeared, Plaintiffs were indicted for murder, rape, sodomy, assault, robbery, sexual abuse, and riot. *Id.*, ¶ 26. Despite having confessed to the crimes, Plaintiffs pled not guilty to those charges. *Id.*, ¶ 27. A jury ultimately convicted Plaintiffs Salaam, Santana and Brown of assault, robbery, rape and riot; convicted Plaintiff Richardson on all counts; and convicted Plaintiff Wise of assault,

sexual abuse, and riot. *Id.* These convictions were primarily based on Plaintiffs' own initial statements of guilt. *Id.,* ¶ 30.

In 2002, more than a decade after President-elect Trump's Ad ran in the papers, Plaintiffs' sentences were vacated following a concession of guilt by another individual and supported by DNA evidence. Compl., ¶¶ 32, 33, 39.

Fast forwarding another two decades to 2024: President-elect Trump and Vice President Harris participated in a presidential debate in Philadelphia, Pennsylvania on September 10, 2024. Compl., ¶ 41. During a segment dedicated to "race and politics in this country," Ms. Harris brought up the 1989 Ad and characterized it as "calling for the execution of five young Black and Latino boys who were innocent, the Central Park Five." Compl., ¶ 42. In response to this accusation, President-elect Trump explained why he had decided to place the Ad in May 1989, including because Plaintiffs had admitted guilt to the assaults at the time of their arrests. *Id.,* ¶ 44 ("This is the most divisive presidency in the history of our country. There's never been anything like it. They are destroying our country, and they come up with things… like what she just said, going back many, many years, where a lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five. They admitted – they said, they pled guilty. And I said, well, if they pled guilty, they badly hurt a person, killed a person ultimately"). President-elect Trump then acknowledged that Plaintiffs later denied guilt (Compl., ¶ 44 ("And if they pled guilty – then they pled we're not guilty. But, this is a person who has to stretch back years, forty, fifty years ago because there's nothing now.")), and he did not dispute Ms. Harris's statement that Plaintiffs were ultimately adjudged to be innocent. *See also* Compl., ¶ 46 (videorecording of the debate).

Plaintiffs claim that these statements were false and tortious because "Plaintiffs never pled guilty to the Central Park assaults" and because "[n]one of the victims of the Central Park assaults

were killed." Compl., ¶¶ 49–50.  These arguments fail as a matter of law.

## LEGAL STANDARDS

### I.    Pennsylvania's Anti-SLAPP Statute

Pennsylvania's anti-SLAPP statute is designed to protect free speech on matters of public concern by granting immunity from civil liability and mandating an award of attorney's fees for defendants subjected to meritless litigation.[1]  The substantive parts of the anti-SLAPP statute provide that "a person is immune from civil liability for a cause of action based on protected public expression" if plaintiff "fails to establish a prima facie case as to each essential element of the cause of action" or "fails to state a cause of action upon which relief can be granted," or if there is "no genuine issue as to any material fact" and a defendant is entitled to judgment as a matter of law. 42 Pa.C.S. § 8340.15. An order deciding an anti-SLAPP motion is immediately appealable. *Id.* § 8340.17. A party immune under the statute shall be awarded his attorney fees, costs and expenses. *Id.* at § 8340.18. While Act 72 also has procedural elements, those have not yet gone into effect.[2]

Federal courts sitting in diversity are required to apply state substantive laws that do not conflict with federal rules. This mandate derives from the *Erie* doctrine and is intended to

---

[1] H.B. 1466, 2023 Gen. Assemb., Reg. Sess. (Pa. 2023), https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr=2023&sessInd=0&billBody=H&billTyp=B&billNbr=1466pn=3487.

[2] *See* HB 1466 at Section 7, sub. (1) (stating that 42 Pa.C.S. §8340.16, which would implement a special motion procedure, a discovery stay, and other procedural requirements, shall take effect upon approval by the state supreme court, while "the remainder of this act shall take effect immediately."). This is because "[t]he Pennsylvania Constitution gives the state's supreme court exclusive power to establish rules of procedure for state courts" and "the legislature . . . is [w]ithout power to control procedure." *In re 42 Pa. C. S. § 1703*, 394 A.2d 444, 448 (Pa. 1978) ( citing *Garrett v. Bamford*, 582 F.2d 810, 814 (3d Cir. 1978)); *see also* Ballard Spahr LLP, *Pennsylvania Protects Press Freedom, Passes Anti-SLAPP Statute*, Ballard Spahr LLP (July 20,

discourage forum-shopping and avoid inequitable administration of the law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Federal courts routinely apply substantive portions of state anti-SLAPP statutes, including immunity[3] and fee shifting clauses. *See, e.g.*, *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993) ("Attorney's fees mandated by state statute are available when a federal court sits in diversity."). There are good reasons to do so: as explained by the Ninth Circuit, "[p]lainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum," and "litigant[s] otherwise entitled to the protections of the Anti–SLAPP statute would find considerable disadvantage in a federal proceeding" – an "outcome [that] appears to run squarely against the 'twin aims' of the *Erie* doctrine." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co*., 190 F.3d 963, 973 (9th Cir. 1999).

Courts in multiple Circuits have applied state anti-SLAPP statutes in federal diversity cases, recognizing that they operate harmoniously with federal procedural rules. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79, 91–92 (1st Cir. 2010) ("Congress, in approving Rules 12 and 56, did not intend to preclude special rules designed to make it more difficult to bring certain types of actions where state law defines the cause of action."); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168–69 (5th Cir. 2009) (the act "provides for the avoidance of a trial that would imperil a

---

2024), https://www.ballardspahr.com/insights/alerts-and-articles/2024/07/pennsylvania-protects-press-freedom-passes-anti-slapp-statute.

[3] *See, e.g., Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), *certified question answered*, 133 Nev. 512, 402 P.3d 665 (2017); *Godin v. Schencks,* 629 F.3d 79, 91–92 (1st Cir. 2010); *Henry v. Lake Charles Am. Press, L.L.C.,* 566 F.3d 164, 168–69 (5th Cir. 2009); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 972–73 (9th Cir. 1999); *cf. Makaeff v. Trump Univ., LLC,* 715 F.3d 254, 276 (9th Cir. 2013) (Paez, J., concurring).

substantial public interest."); *Bobulinski v. Tarlov*, No. 1:24-cv-02349-JPO, at 22 (S.D.N.Y. 2024) (unpublished) (holding that New York anti-SLAPP rule entitling defendant to fees is substantive); *See, e.g.*, *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) ("State law creates the substantive right to attorney's fees . . . .") (collecting cases); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (in diversity cases, "state law denying the right to attorney's fees or a giving a right thereto, which reflects a substantial policy of the state, should be followed"). In fact, the Second Circuit found it "unproblematic" to conclude that the mandatory fee-shifting provision in Nevada's anti-SLAPP law was "substantive within the meaning of Erie" and stated the provision "does not squarely conflict with a valid federal rule." *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014). "[E]ven if the *procedural* elements of certain Anti-SLAPP statutes present problems under *Erie*, . . . those problems are not presented in this case, where the effects of the Anti-SLAPP law (fee-shifting and a heightened substantive legal standard) are substantive." *Adelson v. Harris*, 973 F. Supp. 2d 467, 494 n.21 (S.D.N.Y. 2013), *aff'd*, 774 F.3d 803 (2d Cir. 2014).

For these reasons, the immunity – a heightened substantive legal standard – and fee-shifting provisions of Pennsylvania's anti-SLAPP law should be applied in this federal court diversity action. Unlike the few state anti-SLAPP laws that have been held not to apply in federal court, Pennsylvania's anti-SLAPP's immunity and fee-shifting provisions do not turn on any special procedure; Pennsylvania's anti-SLAPP specifically permits immunity arguments to be raised in a motion allowed under the Federal Rules of Civil Procedure. Failure to apply the substantive portions of the anti-SLAPP statute here would undermine Pennsylvania's strong public interest in ensuring that "participation in matters of public significance…should not be chilled through abuse

of the judicial process," 42 Pa.C.S. § 8349.12(2), and would be contrary to the holding of *Erie* and federal policy goals.

## II.    Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for failing to state a plausible claim for relief.  Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Davis v. City of Philadelphia*, 821 F.3d 484, 488 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

## ARGUMENT

## I.    President-elect Trump meets his initial burden under the anti-SLAPP statute because he is being sued for a matter of public interest.

Pennsylvania's anti-SLAPP law provides immunity from civil liability for any claim based on "protected public expression" which includes statements made on a matter of public concern. 42 Pa. C.S. §§ 8340.15; 8340.13(3). It is well settled that "[s]peech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Snyder v. Phelps,* 562 U.S. 443, 453 (2011) (citing *Connick v. Myers,* 461 U.S. 138, 146 (1983)), "or when it 'is a subject of general interest and of value and concern to the public.'" *Id.* (citing *San Diego v. Roe,* 543 U.S. 77, 83–84 (2004)).

It is beyond dispute that statements made by a candidate for the nation's highest political office relating to crime, policing, punishment, and "race and politics in this country" constitute speech on "matters of public concern."[4] Compl., ¶ 42. As President-elect Trump is being sued for

---

[4] *See, e.g., Fenico v. City of Philadelphia,* No. 20CV3336, 2024 WL 4591798, at *10 (E.D. Pa. Oct. 28, 2024) (Speech involving policing, crime, and punishment is a "subject of general

his "protected public expression," he will be immune from civil liability under Pennsylvania law if Plaintiffs fail to state a cause of action on which relief can be granted. *See* §8340.15(1)(ii).

## II.    Plaintiffs fail to state a claim under Rule 12(b)(6).

### A.  The statute of limitations bars liability for most of Plaintiffs' complained of statements.

Pennsylvania has a one-year statute of limitations for defamation and false light claims and a two-year statute of limitations for intentional infliction of emotional distress claims. 42 Pa. Cons. Stat. § 5523(1); Pa. C.S.A. § 5524. To the extent Plaintiffs seek recovery based on statements published between 1989 and 2019, Compl. ¶¶ 24, 51, 66-68, those claims are barred and fail as a matter of law. The only timely statements of which Plaintiffs complain are those made in the 2024 Presidential Debate.

### B.  Plaintiffs fail to state a claim for defamation.

To prove defamation under Pennsylvania law, "a plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; [and if applicable] (7) abuse of a conditionally privileged occasion." *Alston v. PW-Philadelphia Weekly*, 980 A.2d 215, 220 (Pa. Commw. Ct. 2009). It is then left to the trial court to determine whether the challenged publication is capable

---

interest and of value and concern to the public."); *Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783, 787-88 (3d Cir. 2005) ("[T]he commission and investigation of violent crimes ... are matters of 'paramount public import.'") (quoting *Fla. Star v. B. J. F.*, 491 U.S. 524, 536-37 (1989)); *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 693 (1998) (discussing a televised debate, holding that the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office").

of a defamatory meaning by considering whether the statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (citing *Birl v. Philadelphia Elec. Company,* 167 A.2d 472 (Pa. 1960)).

President-elect Trump's statements, viewed in context, do not meet this standard: they explain his own rationale, in 1989, for taking out the Ad about crime and punishment. This reality supports at least three different matter of law defenses, each of which doom Plaintiffs' defamation claim.

**First,** the statements are not actionable because they provide the listener with President-elect Trump's opinions along with the truthful factual basis for those opinions. Statements of opinion are protected and cannot be defamatory so long as they do not "imply the existence of undisclosed defamatory facts" that would justify them. *Krajewski v. Gusoff*, 53 A.3d 793, 803 (Pa. Super 2012). "A statement of opinion relating to matters of public concern that does not contain a provably false connotation will receive full constitutional protection." *Id.* (cleaned up). Courts have found a defendant's statements of opinion regarding a plaintiff's guilt or innocence to be protected when accompanied by the factual basis relied on by defendant. *See Reardon v. Allegheny Coll.*, 926 A.2d 477, 484–85 (Pa. Super 2007) (holding that a professor's comments to an adjudicatory panel that the evidence suggested a student was guilty of an honor code violation were protected opinion); *see also Krajewski*, 53 A.3d at 803 (holding that a negative statement about an individual's competence for leading an investigation was protected opinion when accompanied by the factual basis for that opinion).

Plaintiffs sue President-elect Trump for expressing his May 1989 opinion of Plaintiffs' culpability. These comments were accompanied by the factual basis President-elect Trump relied

on to form that opinion at that time. During a segment of the debate entitled "race and politics in this country," Vice President Harris directly referenced the Ad, claiming that in the Ad President-elect Trump "call[ed] for the execution of five young Black and Latino boys who were innocent, the Central Park Five."  Compl., ¶ 42. In response to this attack, President-elect Trump explained why he had decided to place the Ad in 1989: because, at that time, Plaintiffs had admitted guilt to heinous crimes. This is a true fact that Plaintiffs freely admit. Compl, ¶¶ 20–21. President-elect Trump framed his debate statements as his own interpretation of the evidence available to him in 1989. *See* Compl. ¶ 44 ("And I said [to myself], 'well *if they pled guilty*, they badly hurt a person, killed a person ultimately...") (emphasis added).

In recounting his 1989 opinion and its true factual basis, President-elect Trump did not imply the existence of any undisclosed defamatory facts. Indeed, in the same breath President-elect Trump acknowledged that Plaintiffs later rescinded their admission of guilt. Compl, ¶ 44. ("They admitted – they pled guilty – then they pled we're not guilty..."). And President-elect Trump did not dispute Ms. Harris's assertion that Plaintiffs were ultimately found innocent. Compl., ¶ 46. That President-elect Trump was expressing an opinion, not a provably false assertion of fact, is directly reflected in his other statements as well – he referred to how "a lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five" at the time.  Compl. ¶ 44. As a matter of practical language, people do not "agree" with facts; they agree with opinions[5] - which is what President-elect Trump shared at the debate.

**Second,** President-elect Trump's statements cannot constitute defamation because, when viewed in context, they lack any "defamatory sting." Whether a statement is defamatory is a

---

[5] *See Vivian v. Blank Rome, LLP*, 318 A.3d 890, 900 (Pa. Super. 2024) ("A statement of fact can be verified as true or false, where as an expression of opinion only conveys a subjective belief of the speaker."), *reargument denied* (Aug. 14, 2024) (citation omitted).

question of law for the court to determine. *Alston*, 980 A.2d at 220. "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Krajewski*, 53 A.3d at 802 (cleaned up). To determine whether a statement is defamatory, it must be viewed "in context," and "[t]he test to be applied in evaluating any statement is 'the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'" *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987).

President-elect Trump's statements regarding Plaintiffs do not tend to harm their reputations or lower their communal esteem because, as explained above, President-elect Trump was not asserting that Plaintiffs *were guilty* of the 1989 crimes; he was explaining the reasons he purchased the Ad in 1989 in the aftermath of Plaintiffs' arrests and admissions. An average listener hearing President-elect Trump's statements in the context of his colloquy with Vice President Harris would not think that he was *presently asserting* that Plaintiffs were guilty of anything. Thus nothing in his statements would cause an average listener to have a lowered opinion of Plaintiffs.

**Third,** President-elect Trump's statements about Plaintiffs were not defamatory because they were substantially true. Truth is an absolute defense to a defamation claim in Pennsylvania. *Bobb v. Kraybill*, 511 A.2d 1379, 1380 (Pa. Super 1986). A "defendant need only show substantial, rather than complete, truth." *Pacitti v. Durr*, 310 Fed.Appx. 526, 528 (3d Cir. 2009); *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (cleaned up). Courts at both the federal

and state level have consistently found that, when a layperson uses legal terminology – particularly criminal law terminology – in ways that are technically incorrect, the statements are nonetheless "substantially true" when the effect on the lay audience listener would be the same.[6]

Plaintiffs allege that President-elect Trump defamed them by stating that they had "pled" guilty to the Central Park Assaults in 1989, Compl. ¶ 44, when in fact, Plaintiffs had "admitted" guilt in connection with the assaults. Compl., ¶¶ 20–21; *see also* Compl. ¶ 49. In other words, Plaintiffs object to the technically incorrect use of the criminal law term "pled." But an assertion that Plaintiffs initially "pled" guilty instead of "admitting" guilt is precisely the type of "technical inaccurac[y] [] in the inherently complicated context of criminal law" that "cannot be the basis of a defamation claim." *Olivet Univ. v. Newsweek Digital LLC*, No. 23 CIV. 5670 (NRB), 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024) (citation omitted). The difference between "pleading guilty" (and then later pleading not guilty) and "admitting" guilt (and then later pleading not guilty) is the kind of distinction that would not "have a different effect on the mind of the [listener]." *Id*. This is particularly the case here as President-elect Trump did not disagree with Ms. Harris's description of Plaintiffs having been exonerated. Thus, a reasonable listener would come away with the understanding that Plaintiffs were ultimately deemed innocent, regardless of whether they

---

[6] *See Olivet Univ. v. Newsweek Digital LLC*, No. 23 CIV. 5670 (NRB), 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024) (Statement that plaintiff pled guilty to money laundering instead of *conspiracy* to commit money laundering was still substantially true because "such technical inaccuracies, especially in the inherently complicated context of criminal law, cannot be the basis of a defamation claim where the substance of the reported change would 'not have a different effect on the mind of the reader from that which the pleaded truth would have produced.'") (quoting *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 243 (2d Cir. 2017)); *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 215 (Mich. 1992) ("The substantial truth doctrine is frequently invoked to solve two recurring problems: minor inaccuracies and technically incorrect or flawed use of legal terminology.").

had initially "pled" guilt or "admitted" guilt. As "the substance, the gist, the sting" of President-elect Trump's statements were not different from the truth, Plaintiffs' defamation claim fails.

Plaintiffs also point to President-elect Trump's remark that "if they pled guilty, they badly hurt a person, killed a person ultimately" as false and defamatory because "[n]one of the victims of the Central Park assaults were killed." Compl., ¶¶ 44, 50. But this inaccuracy does not render the "gist or sting" of the statement defamatory because the truth is that at least one of the victims, Ms. Patricia Meili, was described as "virtually dead" because of the attack and was still in a coma from which she was not expected to emerge when President-elect Trump placed the Ad. Ken Burns' 2012 documentary *The Central Park Five* ("Documentary"), which Plaintiffs incorporated by reference into their Complaint, described in detail the severity of Ms. Meili's injuries. Compl., ¶¶ 71–72; *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint and any 'matters incorporated by reference or integral to the claim ….'") (cleaned up).

The Documentary reflected that, when Ms. Meili was found after the attack, "her skull was fractured; she [had] lost a good deal of her bodily fluids; [and] she was virtually dead." *The Central Park Five* at 0:20:52–0:21:16 (PBS 2012). The attack left Ms. Meili "fighting for her life" in "critical condition at Metropolitan Hospital," *id*. at 0:48:56–0:49:31, where she lay in a coma for nearly two weeks with "no indication that she would recover consciousness," *id*. at 0:53:47–54:06; 0:54:45–0:54:47, and the distinct likelihood that even "if she live[d], it [was] likely she'[d] suffer from brain damage," *id*. at 0:49:29–0:49:32. The Ad appeared in New York newspapers on May 1, 1989, the same date Ms. Meili awoke from her coma. [7] *Id.* It was considered a "miracle" Ms. Meili

---

[7] Ms. Meili's injuries were so severe that her brain still functioned "abnormally" after she awoke. *The Central Park Five* at 1:01:51–1:01:59, 1:02:22–1:02:32 (PBS 2012). She thought the year was 1952 and could not "recall any details about the attack." *Id.*

survived.[8] *Id*. at 1:15:32–1:15:35. Thus, as President-elect Trump was describing his state of mind when he placed the Ad, at that time it was still widely believed that Ms. Meili would succumb to her injuries.

Yet even if that were not the case, the difference between (1) "badly hurt and ultimately killed a person," and (2) brought a victim *nearly* to death but they miraculously survived against all odds, is marginal enough that it would not make a difference in the mind of a listener. Further, "rhetorical hyperbole" is expected in political debate and audiences are primed to be skeptical of what they hear.[9] For all the above reasons, Plaintiffs fail to state a cause of action for defamation.

### C. Plaintiffs fail to state a claim for false light.

Under Pennsylvania law, "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Larsen v. Philadelphia Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super 1988) (quoting Restatement (Second) of Torts §§ 652E). Like with a defamation claim, protected opinion and substantial truth are both defenses to false light claims: "[t]o the extent the statements at issue . . . are substantially

---

[8] Plaintiffs indirectly admit the extent of Ms. Meili's injuries by acknowledging that their post-admission indictments included charges for *attempted murder* in addition to rape, sodomy, assault, robbery, sexual abuse, and riot, and that Plaintiff Richardson was found guilty of attempted murder. Compl. ¶¶ 26, 29, 52.

[9] *Huber v. Palm*, 38 Pa. D. & C.3d 227, 230–31 (Pa. Com. Pl. 1985); *see also Beverly Enterprises, Inc. v. Trump,* 1 F.Supp.2d 489, 492 (W.D. Pa. 1998), aff'd, 182 F.3d 183 (3d Cir. 1999); *Melius v. Glacken*, 94 A.D.3d 959, 960 (N.Y. App. Div. 2012) (audience of heated political debate would "anticipate the use of epithets, fiery rhetoric or hyperbole" and would "arrive with an appropriate amount of skepticism," "with the expectation that they are, in all probability, going to hear opinion," and with a reluctance "to conclude—absent clear clues to the contrary from the words or context—that the statements made are to be heard as objective fact").

true . . . or are 'opinions based on disclosed facts,' they are not 'false.'" *Monge v. Univ. of Pennsylvania*, 674 F. Supp. 3d 195, 213 (E.D. Pa. 2023).  "'In Pennsylvania, falsity means the same thing for false light as it does for defamation' and 'in both contexts, an opinion based on disclosed facts cannot be false.'"  *Id*. at 212–13 (quoting *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 360 (3d Cir. 2020)). Because President-elect Trump's statements were protected opinions and substantially true, *see supra* at II(b), they cannot support Plaintiffs' false light claim, and this claim must be dismissed as a matter of law on that ground alone.

It is also Plaintiffs' burden to establish that President-elect Trump's statements involved "'such a major misrepresentation of plaintiff's character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in plaintiff's position.'" *Sarkisian v. Rooke*, No. 06-CV-00170, 2007 WL 9811040, at *5 (E.D. Pa. Mar. 23, 2007) (quoting Restatement (Second) of Torts § 652E (1977)) (cleaned up).  Yet President-elect Trump's statements did not place Plaintiffs in an offensive false light for the same reasons that the statements did not have the requisite "defamatory sting" to constitute defamation.  *See supra* at II(b).  As discussed, the statements were made solely to explain why President-elect Trump placed the Ad in 1989, based on true facts known to him at that time. His remarks did *not* claim that Plaintiffs were adjudged guilty, nor did he disagree with or otherwise dispute Vice President Harris's statement that Plaintiffs were ultimately exonerated.  Because a reasonable listener, viewing the statements in context, would come away with the understanding that Plaintiffs had ultimately pled not guilty and were found innocent, there is no "major misrepresentation" that could form a valid basis for serious offense.

Nor do Plaintiffs sufficiently allege that President-elect Trump had knowledge of or acted in reckless disregard as to the falsity of his statements. Plaintiffs' allegation that President-elect

Trump does not like them, Compl. ¶¶ 69, is irrelevant because ill will does not suffice to show actual malice. *See Curran v. Philadelphia Newspapers, Inc.*, 546 A.2d 639, 642 (1988). Plaintiffs' allegation that President-elect Trump "knew" his statements at the debate were false because he made a tweet in 2013 indicating he had seen a documentary about the Central Park Assaults is both conclusory (why would watching a privately-produced documentary prove the truth or falsity of any fact?) and irrelevant; as discussed above, President-elect Trump's statements at the debate are not false, but rather explain his opinions and factual basis for taking out the 1989 Ad. Whether or not President-elect Trump made similar statements about Plaintiffs in the past is unrelated to falsity and does not help Plaintiffs meet their burden. For each of these reasons, the false light claim fails and should be dismissed.

### D. Plaintiffs fail to state a claim for intentional infliction of emotional distress.

To establish an intentional infliction of emotional distress claim ("IIED") in Pennsylvania, a plaintiff must show that a defendant's conduct was "(1) extreme or outrageous; (2) intentional or reckless; and (3) caused severe emotional distress to another." *Fargione v. Sweeney*, CV 16-5878, 2017 WL 4283955, at *5 (E.D. Pa. Sept. 27, 2017) (citing *Mantua Cmty. Planners v. City of Phila.*, No. CV 12-4799, 2016 WL 3227643, at *10 (E.D. Pa. June 13, 2016)). Plaintiffs must prove that the conduct is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Hill v. Borough of Doylestown*, CIV.A. 14-2975, 2015 WL 1874225, at *5 (E.D. Pa. Apr. 23, 2015) (quoting *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988)). "[I]t is for the court to determine if the defendant's conduct is so extreme as to permit recovery." *Cox*, 861 F.2d at 395. "Pennsylvania courts have been chary to declare conduct 'outrageous' to permit recovery for intentional infliction of emotional distress and have allowed recovery 'only in limited

circumstances where the conduct has been clearly outrageous.'" *Id.* President-elect Trump's statements do not rise to this level.

Courts have consistently found that defamation generally cannot constitute the type of "extreme or outrageous" conduct necessary to support a claim for intentional infliction emotional distress. *See Jones v. Johnson & Johnson*, CIV. A. 94-7473, 1995 WL 549042, at *2 (E.D. Pa. Sept. 13, 1995) ("Plaintiffs' claim for intentional infliction of emotional distress is premised on allegations that they were wrongly accused of misconduct and were defamed…false accusations and defamation in our society cannot be viewed as outrageous, atrocious and utterly intolerable conduct. If it were, virtually every defamation claim would be accompanied by one of infliction of emotional distress."); *Cheney v. Daily News L.P.*, 654 Fed.Appx. 578, 583–84 (3d Cir. 2016) (holding that a defamation claim did not rise to the level of extreme and outrageous because "Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children.").

In direct contravention of this authority, Plaintiffs base their intentional infliction of emotional distress claim exclusively on President-elect Trump's alleged defamation at the debate. Compl. ¶ 100. As discussed above, the defamation claim is not actionable. Yet even if it were, defamation does not constitute "extreme or outrageous" conduct generally, nor is there any reason that President-elect Trump's statements should be considered as outrageous as the other kinds of conduct that meet Pennsylvania's high burden. *See Cheney*, 654 Fed.Appx at 583–84.

Yet there is a further nail in the coffin of this claim: Plaintiffs must also show that "the resulting emotional distress has produced medically documented physical symptoms." *Richette v. Philadelphia Mag.*, No. 802, 1996 WL 756953, at *3 (Pa. Com. Pl. Jan. 23, 1996) (citing

*Armstrong v. Paoli Mem'l Hosp.,* 430 Pa. Super. 36, 43 n.1 (1993)). Plaintiffs have failed to make *any* allegations that they have suffered physical symptoms because of President-elect Trump's statements, much less symptoms verified by medical evidence. Plaintiffs' complaint only mentions "emotional pain and suffering," Compl. ¶ 104, "severe emotional distress." Compl. ¶ 102, and "injurious effects" on Plaintiffs. Compl. ¶ 103. "[S]uch a general, non-specific averment has been found insufficient to survive motions to dismiss." *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 430–31 (M.D. Pa. 2014); *see, e.g., Abadie v. Riddle Memorial Hosp.,* 589 A.2d 1143, 1145–46 (Pa. Super 1991) (dismissing IIED claim where, although Plaintiff pled that she was suffering from psychological factors affecting her physical condition, and that she would need to spend money in medical care for her injuries because she did not specifically plead the nature of those injuries); *White v. Brommer,* 747 F.Supp.2d 447, 465–466 (E.D. Pa.2010) (dismissing IIED claim for failure to plead requisite degree of physical harm where sole averment was that plaintiff "suffered, and continues to suffer, severe emotional distress").

Defamation generally cannot rise to the levels required for IIED absent additional facts demonstrating outrageous conduct, and Plaintiffs have failed to allege the required physical symptoms for a successful IIED claim. For each of these reasons, Plaintiffs' intentional infliction of emotional distress claim should be dismissed.

### III.     Fee-Shifting is Mandatory Under Pennsylvania's anti-SLAPP statute

Under Pennsylvania's anti-SLAPP statute, a prevailing defendant deemed immune from suit is entitled to an award of "attorney fees, court costs and expenses of litigation jointly and severally against each adverse party that asserted the cause of action." 42 Pa. C.S. § 8340.18. While the Third Circuit has yet to review this issue, sister circuits have had ample opportunity to examine similar substantive applications of anti-SLAPP through the federal rules. "In short, the anti-SLAPP

law here—a motion for attorney's fees upon a Rule 12(b)(6) dismissal—is doing no procedural work; it is merely defining the substantive standard for entitlement to attorney's fees." *Bobulinski v. Tarlov,* No. 1:24-cv-02349-JPO, at 26 (S.D.N.Y. 2024) (unpublished). Entitlement to attorney's fees is a substantive right under *Erie*. *Id*. at 27; *see Riordan*, 977 F.2d at 53; *Adelson*, 774 F.3d at 809. Granting fee-shifting under the anti-SLAPP statute in federal court aligns with the "twin aims" of *Erie*—ensuring equitable administration of laws and preventing forum shopping—as established in *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). Refusing to apply this provision would create disparate outcomes for defendants in state and federal courts defending against SLAPP suits. Defendants in federal court would bear the costs of defending meritless suits, while those in state court would benefit from fee-shifting provisions. Such inequities undermine the principle that litigation outcomes in federal and state courts should be substantially similar, as articulated in *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). This result is precisely what *Erie* and its progeny sought to prevent. *See id.*; *Hanna*, 380 U.S. at 468. Pursuant to this law, should the Court dismiss any of Plaintiffs' claims, President-elect Trump also asks the Court to declare his entitlement to a proportionate award of fees and costs, to be determined by separately noticed motion.

## CONCLUSION

For the above reasons, Defendant Donald J. Trump asks the Court to grant his Rule 12(b)(6) motion and declare his entitlement to an award of fees and costs under 42 Pa.S.C. § 8340.18 in an amount to be determined by a separately noticed motion.

Dated:  December 11, 2024

Respectfully submitted,

By:  /s/ Karin M. Sweigart
Karin M. Sweigart (PA No: 247462)
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: 415-433-1700
Facsimile: 415-520-6593
ksweigart@dhillonlaw.com
*Counsel for Defendants*