# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YUSEF SALAAM,
ANTRON BROWN,
KEVIN RICHARDSON,
RAYMOND SANTANA, and
KOREY WISE,

                Plaintiffs,

      v.

DONALD J. TRUMP,

             Defendant.

Case No. 2:24-cv-05560-WB

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ......................................................................................................... 1

II.  FACTUAL BACKGROUND ......................................................................................... 2

III. LEGAL STANDARD ................................................................................................... 5

IV.  ARGUMENT ................................................................................................................ 5

    A.  Plaintiffs have stated a claim for defamation ..................................................... 5

        1.  The Complaint satisfies each element of a defamation claim................................... 5

        2.  The Complaint separately states a claim under a defamation-by-implication theory 7

        3.  Defendant's arguments do not justify dismissal........................................................ 9

            i.    Defendant's alternative interpretation of his statements is improper at the 12(b)(6) stage and should be disregarded ................................................... 9

            ii.   Defendant's comments about Plaintiffs were statements of fact, not expression of opinion ...............................................................................11

            iii.  Defendant's statements were not "rhetorical hyperbole" either .............. 14

            iv.  Defendant's substantial truth defense cannot be decided on a motion to dismiss................................................................................................ 16

            v.   Defendant has waived any challenge to Plaintiffs' defamation-by-implication claim ................................................................................... 22

    B.  Plaintiffs have stated a claim for false light .................................................... 22

        1.  The Complaint satisfies each element of a false light claim................................... 22

        2.  Defendant's arguments do not justify dismissal........................................................ 24

    C.  Plaintiffs have stated a claim for intentional infliction of emotional distress ............... 26

        1.  The Complaint satisfies each element of an IIED claim........................................ 26

        2.  Defendant's arguments do not justify dismissal........................................................ 28

    D.  The Court need not address Pennsylvania's anti-SLAPP statute .................................. 29

    E.  Should the Court find that any of Plaintiff's claims are legally insufficient, Plaintiffs respectfully request leave to amend ............................................................. 30

V.   CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

*Abbas v. Foreign Policy Grp., LLC*
  783 F.3d 1328 (D.C. Cir. 2015) ............................................................. 30

*Ansley v. Wetzel*
  No. 1:21-CV-528, 2022 WL 676275 (M.D. Pa. Mar. 7, 2022) ........................................... 17, 19

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................. 5

*Baker v. Pennsylvania Econ. League, Inc. Ret. Income Plan*
  811 F. Supp. 2d 1136 (E.D. Pa. 2011) ............................................................. 22

*Banonis v. Roney*
  299 A.3d 866 (Pa. Super. Ct. 2023) ............................................................. 6, 9

*Beverly Enterprises, Inc. v. Trump*
  1 F. Supp. 2d 489 (W.D. Pa. 1998), *aff'd*, 182 F.3d 183 (3d Cir. 1999) ................................... 16

*Blankenship v. Trump*
  558 F. Supp. 3d 316 (S.D.W. Va. 2021) ............................................................. 14, 19

*Byars v. Sch. Dist. of Philadelphia*
  942 F. Supp. 2d 552 (E.D. Pa. 2013) ............................................................. 5

*Carbone v. Cable News Network, Inc.*
  910 F.3d 1345 (11th Cir. 2018) ............................................................. 30

*Cate St. Cap. Inc. v. Indus. Intel. Inc.*
  No. 1:14-CV-00200-JCN, 2015 WL 12564165 (D. Me. Oct. 28, 2015) ................................... 20

*Clemente v. Espinosa*
  749 F. Supp. 672 (E.D. Pa. 1990) ............................................................. 6

*Cowell v. Palmer Twp.*
  263 F.3d 286 (3d Cir. 2001) ............................................................. 26

*D'Alessandro v. Bugler Tobacco Co.*
  No. CIV A 05-5051 JBS, 2007 WL 130798 (D.N.J. Jan. 12, 2007) ........................................... 22

*Debar v. FirstEnergy Corp.*
  No. 24CV5164, 2024 WL 5008504 (E.D. Pa. Dec. 6, 2024) ................................... 30

*Doe v. Schneider*
  667 F. Supp. 2d 524 (E.D. Pa. 2009) ........................................................................... 26

*Dong-A Ilbo v. Lim*
  No. CV 08-2399, 2009 WL 10685313 (E.D. Pa. Aug. 24, 2009) ................................. 5

*Eck v. Oley Valley Sch. Dist.*
  431 F. Supp. 3d 607 (E.D. Pa. 2019) ..................................................................... 17, 20

*Entravision Commc'ns Corp. v. Belalcazar*
  99 S.W.3d 393 (Tex. App. 2003) .................................................................................. 8

*Fanelle v. LoJack Corp.*
  79 F.Supp.2d 558 (E.D. Pa. 2000) ............................................................................. 17

*Garcia v. Puccio*
  No. 108964/02, 2003 WL 25594218 (N.Y. Sup. Ct. Jan. 6, 2003) .............................. 7

*Glover v. Tacony Acad. Charter Sch.*
  No. CV 18-56, 2018 WL 3105591 (E.D. Pa. June 25, 2018) ..................................... 19

*Graboff v. Colleran Firm*
  744 F.3d 128 (3d Cir. 2014) ................................................................................. 23, 24

*Green v. Mizner*
  692 A.2d 169 (Pa. Super. 1997) ................................................................................ 19

*Herbert v. Lando*
  441 U.S. 153 (1979) .................................................................................................. 24

*Hoover v. Peerless Publications, Inc.*
  461 F. Supp. 1206 (E.D. Pa. 1978) ...................................................................... 12, 13

*Hotaling & Co., LLC v. Berry Sols. Inc.*
  No. 20CV18718KSHCLW, 2022 WL 4550145 (D.N.J. Sept. 29, 2022) .................... 17

*Hoy v. Angelone*
  691 A.2d 476 (Pa. Super. 1997), *aff'd* 720 A.2d 745 (Pa. 1998) ............................... 26

*Huber v. Palm*
  38 Pa. D. & C.3d 227 (Pa. Com. Pl. 1985) ............................................................... 15

*In re Burlington Coat Factory Sec. Litig.*
  114 F.3d 1410 (3d Cir. 1997) .................................................................................... 30

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*
  553 F. Supp. 3d 211 (D.N.J. 2021) ............................................................... 30

*Incarcerated Ent., LLC v. Warner Bros. Pictures*
  261 F. Supp. 3d 1220 (M.D. Fla. 2017) ....................................................... 29

*John v. Philadelphia Pizza Team, Inc.*
  209 A.3d 380 (Pa. Super. Ct. 2019) ............................................................. 26

*Karuza v. Chance*
  No. 34964–3–I, 1996 WL 180267 (Wash. Ct. App. Apr. 15, 1996) ............ 7

*Kazatsky v. King David Memorial Park, Inc.*
  527 A.2d 988 (Pa. 1987) ......................................................................... 28, 29

*Kornegey v. City of Philadelphia*
  299 F. Supp. 3d 675 (E.D. Pa. 2018) ...................................................... 28, 29

*Krajewski v. Gusoff*
  53 A.3d 793 (Pa. Super. 2012) .............................................................. 13, 23

*La Liberte v. Reid*
  966 F.3d 79 (2d Cir. 2020) .......................................................................... 30

*LaMon v. Butler*
  722 P.2d 1373 (Wash. Ct. App. 1986), *aff'd*, 770 P.2d 1027 (Wash. 1989) ............... 7

*Larsen v. Phila. Newspapers, Inc.*
  543 A.2d 1181 (1988) (en banc) ................................................................. 23

*Martin v. Griffin*
  No. CV 990586133S, 2000 WL 872464 (Conn. Super. Ct. June 13, 2000) ............... 8

*Martin v. Impact Health*
  No. 23-CV-04447, 2024 WL 3512069 (E.D. Pa. July 23, 2024) .............. 6, 9

*Martin-Trigona v. Kupcinet*
  No. 87 C 3347, 1988 WL 93945 (N.D. Ill. Sept. 2, 1988) ........................... 7

*McGarry v. CBS, Inc.*
  No. CIV. A. 91-4638, 1991 WL 280247 (E.D. Pa. Dec. 23, 1991) ............ 20

*Melius v. Glacken*
  94 A.D.3d 959 (N.Y. App. Div. 2012) ......................................................... 16

*Meyers v. Certified Guar. Co., LLC*
  221 A.3d 662 (Pa. Super. 2019) ........................................................................11

*Milkovich v. Lorain Journal Co.*
  497 U.S. 1 (1990) .......................................................................................... 12

*Morgenstern v. Fox Television Stations of Philadelphia*
  No. CIV.A. 08-0562, 2008 WL 4792503 (E.D. Pa. Oct. 31, 2008).......................... 17

*Mzamane v. Winfrey*
  693 F. Supp. 2d 442 (E.D. Pa. 2010)................................................................ 24, 25

*Olivet Univ. v. Newsweek Digital LLC*
  No. 23 CIV. 5670 (NRB), 2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024), *aff'd,* No. 24-1473-CV,
  2024 WL 5001841 (2d Cir. Dec. 6, 2024) ........................................................ 20

*Phillips v. Cnty. of Allegheny*
  515 F.3d 224 (3d Cir. 2008) .............................................................................. 5

*Purcell v. Westinghouse Broad. Co.*
  191 A.2d 662 (Pa. 1963)............................................................................... 7, 8, 9

*Rapid Cirs., Inc. v. Sun Nat. Bank*
  No. CIV.A. 10-6401, 2011 WL 1666919.............................................................. 6, 9

*RDO Foods Co. v. United Brands Int'l, Inc.*
  194 F. Supp. 2d 962 (D. N.D. 2002) ................................................................ 28

*Reardon v. Allegheny Coll.*
  926 A.2d 477 (Pa. Super. 2007) ...................................................................... 12

*Reeves v. Fayette SCI*
  897 F.3d 154 (3d Cir. 2018), *as amended* (July 25, 2018) .................................. 19

*Rouch v. Enquirer & News of Battle Creek Michigan*
  487 N.W.2d 205 (Mich. 1992) ......................................................................... 21

*RRZ Pub. Markets, Inc. v. Bond Buyer*
  No. CIV. A. 94-1168, 1995 WL 20838 (E.D. Pa. Jan. 18, 1995) ............................. 17

*Rubin v. CBS Broad. Inc.*
  170 A.3d 560 (Pa. Super. 2017) ...................................................................... 17

*Ruder v. Pequea Valley Sch. Dist.*
  790 F. Supp. 2d 377 (E.D. Pa. 2011).............................................................. 19

*Schiavone Const. Co. v. Time, Inc.*
  847 F.2d 1069 (3d Cir.1988) ............................................................ 24, 25

*Smith v. RB Distribution, Inc.*
  515 F. Supp. 3d 311 (E.D. Pa. 2021) ................................................ 26, 28

*St. Surin v. Virgin Islands Daily News, Inc.*
  21 F.3d 1309 (3d Cir. 1994) ................................................................ 20

*Strickland v. University of Scranton*
  700 A.2d 979 (Pa. Super. Ct.1997) ....................................................... 26

*Tah v. Global Witness Publishing, Inc.*
  991 F.3d 231 (D.C. Cir. 2021) ............................................................. 30

*Trump v. Am. Broad. Companies, Inc.*
  No. 24-21050-CIV, 2024 WL 3519177 (S.D. Fla. July 24, 2024) ............... 17, 18, 19

*United States v. Martin*
  454 F. Supp. 2d 278 (E.D. Pa. 2006) ..................................................... 22

*US Dominion, Inc. v. Powell*
  554 F. Supp. 3d 42 (D.D.C. 2021) ..................................................... 14, 15

*Vasquez v. Dorta*
  297 A.3d 448 (Pa. Commw. Ct. 2023) ..................................................... 5

*Weaver v. Lancaster Newspapers, Inc.*
  926 A.2d 899 (Pa. 2007) .................................................................... 25

*Wiest v. E-Fense, Inc.*
  356 F. Supp. 2d 604 (E.D. Va. 2005) ...................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................... 5

Fed. R. Civ. P. 54(d)(2) ...................................................................... 29

## I.    INTRODUCTION

Plaintiffs Yusef Salaam, Raymond Santana, Kevin Richardson, Antron Brown, and Korey Wise are five innocent men who spent the formative years of their lives in prison. In 1989, when they were between 14 and 16 years old, Plaintiffs were found guilty of having committed a series of assaults in Central Park based on false confessions that Plaintiffs gave under duress, after hours of coercive interrogation, and with no attorney present. Thirteen years later, in 2002, Plaintiffs were conclusively exonerated based on new DNA testing and the confession of the true perpetrator. They have spent the last twenty years rebuilding their lives and advocating for criminal justice reform.

On May 1, 1989, just days after the Central Park assaults took place, Defendant Donald J. Trump took out an advertisement in five New York City newspapers calling for Plaintiffs to be executed. Defendant declared in this Ad that he "hate[s]" Plaintiffs and "always will," he wants them to "suffer," and he is "looking to punish them." In the years since, Defendant has waged a personal vendetta against Plaintiffs, unleashing a torrent of hateful and false statements about them in newspapers, on television, on social media, and even from the White House lawn. This harassment campaign culminated at the September 10, 2024 presidential debate, where Defendant told an audience of over 67 million Americans that Plaintiffs "pled guilty" to having "killed a person."

The truth is that Plaintiffs pled not guilty from the outset of their criminal cases, were never accused of killing anyone, and were conclusively exonerated over twenty years ago. Defendant's statements were defamatory, cast Plaintiffs in a harmful false light, and were part of a decades-long pattern of wrongful conduct constituting intentional infliction of emotional distress. Plaintiffs brought this lawsuit to obtain redress and clear their names once again.

Defendant has now moved to dismiss the Complaint. In his motion, Defendant attempts to re-frame his words in the most charitable light and draw all possible inferences in his favor, which is improper on a motion to dismiss. Based on this alternative interpretation, Defendant argues that his statements at the debate were not actionable either because he was merely giving his opinion and engaging in hyperbolic political rhetoric or because his statements were substantially true. These arguments are unavailing. *First*, Defendant's statements are not non-actionable expressions of opinion because whether someone "pled guilty" to having "killed someone" is a factual statement that can be proven true or false. *Second*, Defendant's statements are not protected "political rhetoric" because they would not have been understood as a rhetorical device for making a broader political point and because political rhetoric does not shield provably false statements from liability. *Third*, Defendant's substantial truth defense cannot be resolved on a motion to dismiss, but in any event, Defendant's statements were not substantially true because they harmed Plaintiffs' reputation far more than if Defendant had correctly stated that no one was killed in the assault, Plaintiffs pled not guilty, and they were ultimately exonerated.

In short, Pennsylvania law does not permit Defendant to spread harmful falsehoods about private citizens simply because he was participating in a political debate. Defendant's motion must be denied.

## II.    FACTUAL BACKGROUND

On April 19, 1989, a series of assaults occurred in Central Park, New York City. Compl., ¶¶ 15–16. Plaintiffs, who were between 14 and 16 years old at the time, were arrested and subjected to hours of coercive interrogation, under duress and with no attorney present. Compl., ¶¶ 17–18. Plaintiffs eventually agreed to give statements falsely admitting to having participated in the assaults. Compl., ¶¶ 18–22.

Just days after the assaults took place, Defendant Donald J. Trump placed an advertisement in five New York City newspapers calling for the boys to be executed. Compl., ¶ 23. The advertisement read, in part:

> Mayor Koch has stated that hate and rancor should be removed from our hearts. I do not think so. I want to hate these muggers and murderers. They should be forced to suffer . . . I want to hate these murderers and I always will . . . I am not looking to psychoanalyze or understand them, I am looking to punish them . . . BRING BACK THE DEATH PENALTY AND BRING BACK OUR POLICE!

Compl., Ex. A. The Ad prompted then-Mayor Ed Koch to respond, "Nobody I know of in Western society believes that under any circumstances would you ever impose the death penalty on juveniles." Compl., ¶ 51.

Shortly after being released from police custody, Plaintiffs recanted their false confessions. Compl., ¶ 22. Plaintiffs all pled not guilty from the outset of their criminal cases, but they were each convicted of various crimes based on their previous confessions and spent years in prison. Compl., ¶¶ 28–32. Plaintiffs never admitted to, never were accused of, nor were charged with killing anyone, and none of the victims of the Central Park assaults died. Compl., ¶¶ 25, 51.

Thirteen years later, in 2002, the true perpetrator Matias Reyes came forward and confessed. Compl., ¶¶ 33–34. Reyes provided the police with new information that only the true culprit would know. Compl., ¶ 33. New DNA tests were conducted that conclusively exonerated Plaintiffs. Compl., ¶ 34. The Manhattan District Attorney's Office recommended that Plaintiffs' convictions be vacated, and on December 19, 2002, New York Supreme Court Justice Charles J. Tejada vacated the convictions, formally exonerating Plaintiffs. Compl., ¶¶ 35–40. Plaintiffs brought suit against the City of New York for its wrongful conduct toward them, and the City eventually agreed to settle the suit, which Mayor De Blasio described as a "moral obligation to right this injustice." Compl., ¶ 41.

Despite Plaintiffs' exoneration, Defendant has waged a public, decades-long campaign of harassment and intimidation against them, publicly spreading falsehoods and hateful rhetoric about the five men. Compl., ¶¶ 58–77. This culminated at the September 10, 2024 presidential debate between Defendant and Vice President Kamala Harris, which took place at the Constitution Center in Philadelphia, Pennsylvania. Compl., ¶ 42. At the debate, which was watched by over 67 million Americans, Vice President Harris said the following:

> Let's remember, this is the same individual [Trump] who took out a full-page ad in The New York Times calling for the execution of five young Black and Latino boys who were innocent, the Central Park Five. Took out a full-page ad calling for their execution.

Compl., ¶¶ 42–43. Defendant responded:

> They come up with things like what she just said going back many, many years when a lot of people including Mayor Bloomberg agreed with me on the Central Park Five. They admitted – they said, they pled guilty. And I said, well, if they pled guilty they badly hurt a person, killed a person ultimately. And if they pled guilty – then they pled we're not guilty."

Compl., ¶¶ 45.

As alleged in the Complaint, these statements are capable of a false and defamatory meaning because they convey that Plaintiffs pled guilty to having killed a person when in fact (1) they pled not guilty and (2) no one died in the assault. Compl., ¶¶ 49–50. The Complaint separately alleges that Defendant's statements are actionable because he referenced Plaintiffs' criminal proceedings without also acknowledging their subsequent exoneration. Compl., ¶ 52.

Defendant's conduct has caused Plaintiffs severe emotional distress and reputational harm. Compl., ¶¶ 85, 90, 96. Plaintiffs bring claims against Defendant for defamation, false light, and intentional infliction of emotional distress. Compl., ¶¶ 78–96.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint." *Dong-A Ilbo v. Lim*, No. CV 08-2399, 2009 WL 10685313, at *1 (E.D. Pa. Aug. 24, 2009). To survive a 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In ruling on the motion, the Court is "required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

## IV.    ARGUMENT

### A.    Plaintiffs have stated a claim for defamation.

#### 1.    The Complaint satisfies each element of a defamation claim.

"To state a claim for defamation, a plaintiff must show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Byars v. Sch. Dist. of Philadelphia*, 942 F. Supp. 2d 552, 563 (E.D. Pa. 2013) (citing 42 Pa.C.S. § 8343(a)). Spoken defamation, also known as slander, satisfies the "publication" requirement when uttered in public. *Vasquez v. Dorta*, 297 A.3d 448 (Pa. Commw. Ct. 2023). Where spoken words impute a "criminal offense" or "serious sexual misconduct," they constitute slander per se and do not require any showing of special harm. *Id.* ("A plaintiff is relieved of the requirement to plead and prove special

5

harm only where the alleged defamatory statements are defamatory per se because they impute a criminal offense, a loathsome disease, business misconduct, or serious sexual misconduct"); *see also Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990) (same).

To survive a motion to dismiss, the Complaint need only plead that the challenged statements are "capable of a defamatory meaning." *See Rapid Cirs., Inc. v. Sun Nat. Bank*, No. CIV.A. 10-6401, 2011 WL 1666919, at *12 (E.D. Pa. May 3, 2011). So long as this requirement is met, the Complaint will state a claim even if the statements could *also* be interpreted as innocent and non-actionable. *See id.* ("[C]ounts alleging defamation should not be dismissed unless . . . it is clear that the communication is *incapable* of defamatory meaning.") (emphasis in original); *Martin v. Impact Health*, No. 23-CV-04447, 2024 WL 3512069, at *3 (E.D. Pa. July 23, 2024) ("Even where there is a plausible innocent interpretation, if there is an alternative defamatory interpretation, the issue must proceed to a jury to determine if the recipient understood the defamatory meaning"); *Banonis v. Roney*, 299 A.3d 866 at *4 (Pa. Super. Ct. 2023) (same).

At the September 10 debate, Defendant told an audience of over 67 million Americans that Plaintiffs "admitted – they said, they pled guilty. And I said, well, if they pled guilty, they badly hurt a person, killed a person ultimately. And if they pled guilty – then they pled we're not guilty." Compl., ¶¶ 41, 44. As alleged in the Complaint, Defendant's statements plausibly conveyed that Plaintiffs initially "pled guilty" to having "killed a person." Compl., ¶¶ 48–49, 55. Defendants' statements were, at a minimum, capable of this defamatory meaning. Indeed, it is the most natural understanding of Defendant's words at the debate.

Defendant's statements therefore constitute slander per se both because they impute criminal offenses and because the crimes in question involved serious sexual misconduct.[1] Viewers understood the defamatory meaning of Defendant's words and that they were intended to apply to Plaintiffs. Compl., ¶ 89. No showing of special harm is required to plead slander per se and no conditional privilege applies. Because all the necessary elements are met, the Complaint states a claim for defamation.

### 2. The Complaint separately states a claim under a defamation-by-implication theory.

The Complaint also alleges that Defendant committed defamation because he referenced Plaintiffs' criminal proceedings in a way that cast doubt on their innocence without also acknowledging that Plaintiffs were exonerated over thirty years ago and had all charges against them formally vacated. Compl., ¶ 52. Courts across the country, including the Pennsylvania Supreme Court, have found that publicizing an individual's criminal charges while omitting later exculpatory proceedings is actionable.[2]

---

[1] One of the victims of the Central Park assaults was raped. Thus, by ascribing the assaults to Plaintiffs, Defendant was also ascribing to them serious sexual misconduct. Compl., ¶ 55.

[2] *See Purcell v. Westinghouse Broad. Co.*, 191 A.2d 662, 666 (Pa. 1963) (holding that reporting on a preliminary hearing without mentioning that the court's findings had been nullified was actionable); *Karuza v. Chance*, No. 34964–3–I, 1996 WL 180267, at *2 (Wash. Ct. App. Apr. 15, 1996) ("A true statement can also be defamatory if it has been legally voided"); *Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 610 (E.D. Va. 2005) ("It is a misleading half-truth to say that a person was convicted of a [crime] without including the fact that his conviction was overturned on appeal"); *Garcia v. Puccio*, No. 108964/02, 2003 WL 25594218, at 10 (N.Y. Sup. Ct. Jan. 6, 2003) (holding that reporting on a criminal accusation without mentioning "that the accusation was ultimately found to be baseless and expunged" is defamatory); *Martin-Trigona v. Kupcinet*, No. 87 C 3347, 1988 WL 93945, at *5 (N.D. Ill. Sept. 2, 1988) (holding that a statement that an individual was "convicted" of a crime was actionable because the conviction had been expunged); *LaMon v. Butler*, 722 P.2d 1373, 1377 (Wash. Ct. App. 1986), *aff'd*, 770 P.2d 1027 (Wash. 1989) (en banc) (holding the same and noting "falsity in this case lies not in what was said but in what was left unsaid."); *Entravision Commc'ns Corp. v. Belalcazar*, 99 S.W.3d 393, 398 (Tex. App.

*Purcell v. Westinghouse Broad. Co.*, 191 A.2d 662, 666 (Pa. 1963) is instructive. The plaintiff in that case, Austin Purcell, owned a towing company. *Id.* at 664. He was found guilty of extortionate business practices at a preliminary hearing before a magistrate judge and subsequently appealed this conviction. *Id.* During the pendency of his appeal, a local radio station aired a sensationalized report about the preliminary hearing without mentioning that Purcell had appealed the magistrate judge's findings. *Id.* at 665. Purcell was ultimately exonerated and sued the radio station for defamation. *Id.* at 667. The station argued that because Purcell had not yet won his appeal at the time of the broadcast, it could not be held liable for defamation. *Id.* at 665. The Pennsylvania Supreme Court disagreed, holding that by omitting the fact that Purcell had appealed the magistrate judge's findings, the broadcast had defamed Purcell:

> [Defendant], who knew the realities, did not acquaint the public with the fact that Purcell announced, after the magistrate's action, that he would file an appeal and that this appeal was indeed officially filed long before the broadcast. . . . The stark unbudgeable fact remains that Purcell did appeal and that appeal stayed all punitive proceedings. It did more than that, it nullified for the period of appellate pendency the effect of everything which had been presented by the Commonwealth, so that Purcell stood before the world as unoffending as one who had never been accused.

*Id.* at 666. This case is even stronger than *Purcell*. The defamatory broadcast in *Purcell* was aired during the pendency of the appeal and before the plaintiff had been conclusively exonerated. Here, Plaintiffs were exonerated over twenty years ago. Their charges were vacated, and the City of New York agreed to settle their civil lawsuit for prosecutorial misconduct because doing so was a "moral obligation to right [the] injustice" that had been done to them. Compl., ¶ 41. Today, Plaintiffs

---

2003) (holding that reporting on a civil lawsuit without mentioning that it had been dismissed can be defamatory); *Martin v. Griffin*, No. CV 990586133S, 2000 WL 872464, at *18 (Conn. Super. Ct. June 13, 2000) (holding that discussing a felony conviction coupled with "omission to mention the reversal of the conviction" can be defamatory).

"[stand] before the world as unoffending as one who had never been accused." *Purcell*, 191 A.2d at 666. Defendant knows these facts but chose to omit them when discussing Plaintiffs' criminal proceedings. That is actionable defamation.

### 3.    Defendant's arguments do not justify dismissal.

Defendant advances an alternative interpretation of his statements and argues that when viewed in his favor, the statements are either non-actionable expressions of opinion, protected political rhetoric, or substantially true statements of fact. These arguments are all unavailing. *First*, to survive a motion to dismiss, a plaintiff need only show that the challenged statements are capable of a defamatory meaning. Thus, even if Defendant's statements were *also* capable of an alternative, innocent interpretation, this would not justify dismissal. *Second*, the Complaint adequately pleads that Defendant's comments were statements of fact, not expressions of opinion. *Third*, provably false statements are not shielded from liability simply because they are made in a political context. *Fourth*, determining whether a statement is substantially true is a jury question that is not appropriate for resolution on a motion to dismiss.

### i.    Defendant's alternative interpretation of his statements is improper at the 12(b)(6) stage and should be disregarded.

Throughout his motion, Defendant strains to re-characterize his words at the debate in a way that would be non-actionable. In doing so, Defendant draws all possible inferences in favor of Defendant, rather than Plaintiffs. This is improper on a motion to dismiss. At trial, Defendant will be free to present the jury with a charitable gloss on his statements. But at this stage, Plaintiffs have adequately pleaded that Defendant's statements are, at a minimum, "capable of a defamatory meaning," and nothing more is required to survive dismissal. *Rapid Cirs.,* Inc, 2011 WL 1666919, at *12; *Banonis*, 299 A.3d 866 at *4 (same); *Martin*, 2024 WL 3512069, at *3 ("Even where there

is a plausible innocent interpretation, if there is an alternative defamatory interpretation, the issue must proceed to a jury to determine if the recipient understood the defamatory meaning.").

Because the Court must accept Plaintiffs' well-pleaded allegations as true and draw all reasonable inferences in Plaintiffs' favor, it need not consider Defendant's alternative interpretation of his remarks at the debate. But for the avoidance of doubt: Defendant's interpretation is incoherent and implausible. For example, Defendant asserts that his statements were merely an attempt to "explain his own rationale, in 1989, for taking out the Ad" calling for Plaintiffs to be executed. Mot. at 16. However, at the debate, Defendant stated that Plaintiffs "pled guilty – then they pled we're not guilty." Compl., ¶ 44. Plaintiffs were indicted and pled not guilty *after* Defendant placed the Ad. Compl., ¶ 24, 26. Thus, a reasonable viewer would not have understood Defendant merely to be describing his rationale at the time he took out the Ad.

Defendant also stated at the debate that "Mayor Bloomberg agreed with me on the Central Park Five." Compl., ¶ 44. Michael Bloomberg would not become Mayor of New York until 2002. Compl., ¶ 51. Bloomberg was mayor when Plaintiffs' convictions were vacated, not when Defendant placed his Ad, further indicating that Defendant was not simply describing his thought process in May 1989. In his motion, Defendant quotes his statement about Michael Bloomberg from the debate but tellingly adds the words "at the time" to the end of the sentence. *See* Mot. at 10 ("President-elect Trump . . . referred to how 'a lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five' ***at the time***.") (emphasis added). During the debate, Defendant did not say Mayor Bloomberg agreed with him "at the time." Defendant cannot now supplement his statements from the debate so that they better support his preferred interpretation— this would turn the motion to dismiss standard on its head.

Defendant also asserts in his motion that he did not "disagree with or otherwise dispute Vice President Harris's statement that Plaintiffs were ultimately exonerated." Mot. at 15. Here, too, Defendant is attempting to edit his defamation. As alleged in the Complaint, there was no discussion of Plaintiffs' ultimate exoneration at the debate. The audience did not hear, for example, that DNA evidence conclusively proved Plaintiffs' innocence, that the true perpetrator came forward and confessed, or that Plaintiffs' convictions were vacated. Compl., ¶ 52. Vice President Harris did say that Plaintiffs are "innocent," but Defendant did not express any agreement with Vice President Harris's statement, instead asserting that Plaintiffs "pled guilty" and that "if they pled guilty, then they badly hurt a person, killed a person ultimately." Compl., ¶¶ 42, 44.

In sum, a reasonable viewer of the September 10 debate would have understood Defendant's statements that Plaintiffs "pled guilty" and that "if they pled guilty then they badly hurt a person, killed a person ultimately" to mean (1) that Plaintiffs pled guilty to a crime, and (2) the crime involved killing a person. Defendant's statements are at the very least *capable* of this defamatory meaning, which is all that is required to survive dismissal. Defendant's attempt to put forward a more favorable interpretation of his remarks is improper at the motion to dismiss stage and should be disregarded.

### ii.   Defendant's comments about Plaintiffs were statements of fact, not expression of opinion.

Pennsylvania law "distinguishes a statement of fact from a statement of opinion by whether it can be 'objectively determined.'" *Meyers v. Certified Guar. Co., LLC*, 221 A.3d 662, 670 (Pa. Super. 2019) (citing Restatement (Second) of Torts, § 566, Comment (a)). "A statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker." *Id.* But "[w]hether construed as an expression of fact or opinion, a statement is defamatory if it 'contained a demonstrably false factual connotation.'" *Id.* (quoting *Milkovich v.*

*Lorain Journal Co.*, 497 U.S. 1, 21, (1990)). "[T]he inquiry is whether a statement is sufficiently factual to be susceptible of being proved true or false with reference to a core of objective evidence." *Id.* (internal quotation marks omitted).

A statement can be defamatory even if the speaker disclaims having any firsthand knowledge of the events at issue. For example, in *Hoover v. Peerless Publications, Inc.*, the plaintiff applied for a job at the Valley Sentinel newspaper. 461 F. Supp. 1206, 1208 (E.D. Pa. 1978). While plaintiff's application was being considered, the defendant sent a letter to the general manager of the newspaper stating that he had heard secondhand that the plaintiff suffered from "some mental problems." *Id.* The defendant argued that this statement was merely "an expression of the writer's opinion based on information received from many sources and without any reasonable warrant of the completeness or accuracy of the information." *Id.* at 1209. The court rejected this argument, which "would make an 'opinion' out of every statement that is not based on personal knowledge." *Id.*

Here, Defendant's statements that Plaintiffs pled guilty to a crime and that someone was killed can be verified as true or false—they are both false. Plaintiffs pled not guilty from the start of their criminal trials and no one was killed during the Central Park assault. The cases cited by Defendant do not support his position that his statements at the debate were non-actionable opinion. In *Reardon*, a professor investigating an alleged honor code violation said about a student, "[C]oupled with the fact that she's now got 'clones' of two other students' reports in there, it seems rather suggestive to me." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 484 (Pa. Super. 2007). The court correctly held that the statement was non-actionable opinion because the professor was simply expressing his subjective impression of the evidence. *Id. Reardon* has no applicability here.

Defendant did not say, "The circumstances of the Central Park assault seemed rather suggestive to me." He said, "They pled guilty." A criminal plea is a historical fact, not a subjective feeling.

Defendant also cites *Krajewski*, a case in which a Philadelphia City Councilwoman sued a newspaper for defamation arising out of several unflattering editorials about her. *Krajewski v. Gusoff*, 53 A.3d 793, 798 (Pa. Super. 2012). The Court held that some of the challenged statements from the editorials, such as describing the plaintiff as a "greedy politician[]" and instructing readers to "call Joan Krajewski's City Hall office and instruct her not to rip you off" were non-actionable opinion. *Id.* at 800. Other statements, like that the plaintiff had taken "$300,000 ill-gotten gains" from a pension fund, were found to be actionable because they were "provably false." *Id.* *Krajewski* does not help Defendant; it only further demonstrates that provably false statements are actionable.

Defendant also argues that his statements must have been expressions of opinion because he added that "a lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five." Mot. at 10. According to Defendant, "[a]s a matter of practical language, people do not 'agree' with facts; they agree with opinions." *Id.* Defendant does not cite any cases for the startling proposition that a defamatory statement can be converted into non-actionable opinion simply by adding "a lot of people agree with me," and his position does not reflect Pennsylvania law. As in *Hoover*, Defendant is not relieved from liability if other people believe his statements are true or he heard them from other people. *See Hoover*, 461 F. Supp. at 1208. Nor is it accurate to say that as "a matter of practical language" one can only agree to an opinion. For example, it is a verifiable fact that Neil Armstrong landed on the moon on July 21, 1969, but while most people agree that the moon landing happened, some people still disagree.

In sum, Defendant's assertions that Plaintiffs pled guilty to a crime and that the crime involved killing a person are verifiably false statements of fact, not non-actionable opinions.

### iii.    Defendant's statements were not "rhetorical hyperbole" either.

Defendant also argues that his statements are not actionable because "'rhetorical hyperbole' is expected in political debate." Mot. at 14. This argument fails because "the fact that statements were made in a political context does not indiscriminately immunize every statement contained therein" and does not shield "provably false statements" from liability. *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 57 (D.D.C. 2021) (internal quotation marks omitted).

For example, in *Blankenship v. Trump*, Donald Trump, Jr. was sued for defamation by Don Blankenship, a Republican candidate for the United States Senate from West Virginia. 558 F. Supp. 3d 316, 321 (S.D.W. Va. 2021). Prior to running for office, Blankenship had been CEO of a coal company. *Id.* In 2010, Blankenship was charged with two felonies and a misdemeanor arising out of an explosion at one of his coal mines; he was convicted of the misdemeanor offense but found not guilty of the felony offenses. *Id.* Blankenship alleged that Donald Trump, Jr. posted a tweet urging West Virginia voters to reject Blankenship's candidacy in which he falsely called Blankenship "a felon." *Id.* at 323. Trump, Jr. moved to dismiss, arguing that his statement was merely "colorful rhetoric" and "hyperbolic language." *Id.* at 328. The court rejected this argument and held:

> Whether or not someone has committed a felony, and therefore may be identified as a felon, is a factual determination. The plaintiff alleges that he has not been convicted of a felony and that Trump, Jr.'s statement that he is a felon thus constitutes a false statement of fact. The court concludes that the reply tweet calling the plaintiff a felon is capable of a defamatory meaning.

14

*Id.* This case is on all fours with *Blankenship*. Whether or not Plaintiffs "pled guilty" to having "killed a person" is a factual determination capable of a defamatory meaning, not mere colorful rhetoric or hyperbolic language.

Likewise, in *US Dominion, Inc. v. Powell*, Sidney Powell and Rudolph Giuliani, two attorneys for Defendant Trump's 2020 presidential campaign, were sued by Dominion for defamation. *See Powell*, 554 F. Supp. at 50. Dominion is a corporation that contracts with state and local governments to supply voting machines. *Id.* Dominion alleged that the defendants made several false statements that Dominion had rigged its voting machines to manipulate votes. *Id.* at 51. The defendants moved to dismiss, arguing that their statements were non-actionable rhetorical hyperbole because they were made in the context of a "bitter and controversial" presidential election. *Id.* at 57. The court rejected this argument, holding:

> [T]here is no blanket immunity for statements that are "political" in nature: as the Court of Appeals has put it, the fact that statements were made in a "political 'context' does not indiscriminately immunize every statement contained therein." *Weyrich*, 235 F.3d at 626. It is true that courts recognize the value in some level of "imaginative expression" or "rhetorical hyperbole" in our public debate. *Milkovich*, 497 U.S. at 2, 110 S.Ct. 2695. But it is simply not the law that provably false statements cannot be actionable if made in the context of an election.

*Id.* at 57. Here, too, the context of a political debate does not shield Defendant from liability for making provably false statements.

Defendant cites three cases in which politicians used insulting language to express their disagreement with a political adversary. In *Huber*, a candidate said about his opponent, "All he cares about is getting elected to office and not the realistic needs of the people. He is the same person who cost over 500 people their jobs in the Beaver Valley." *Huber v. Palm*, 38 Pa. D. & C.3d 227, 230–31 (Pa. Com. Pl. 1985). In *Beverly Enterprises*, a union leader told an industry

representative, "You people at Beverly are all criminals" for "devoting [your] entire career to busting unions. . . . I know your kind. You're just part of that World War II generation that danced on the graves of Jews." *Beverly Enterprises, Inc. v. Trump,* 1 F. Supp. 2d 489, 492 (W.D. Pa. 1998), *aff'd*, 182 F.3d 183 (3d Cir. 1999). In *Melius*, the mayor of Freeport, New York said about a local land developer embroiled in a property dispute with the city that the developer was looking "'to extort money from you,' i.e., the residents of Freeport." *Melius v. Glacken*, 94 A.D.3d 959, 960 (N.Y. App. Div. 2012).

In all three cases, it is obvious from context that the speaker was using disparaging language to express their disapproval with a political opponent and not literally claiming that, for example, the developer was extorting money from the residents of Freeport or that the industrialist had committed war crimes during World War II. The cases are therefore inapposite. Plaintiffs were not running for office against Defendant, nor was Defendant voicing any political disagreement with them. An audience member would not have understood specific factual statements like that "they pled guilty" to having "killed a person" to be political rhetoric or symbolic language. This case is much more like *Blankenship* and *Dominion*, where specific, verifiably false statements that the plaintiff was a felon or had rigged voting machines were found actionable even when uttered in the heat of a political campaign.

### iv.    Defendant's substantial truth defense cannot be decided on a motion to dismiss.

Defendant next argues that even if his comments at the debate were statements of fact, they would still be non-actionable because they were "substantially true." Mot. at 11. Under Pennsylvania law, "proof of substantial truth must go to the 'gist' or 'sting' of the alleged defamatory matter; the test is whether the alleged libel as published would have a different effect on the mind of the reader from which the pleaded truth would have produced." *Eck v. Oley Valley*

*Sch. Dist.*, 431 F. Supp. 3d 607, 633 (E.D. Pa. 2019) (internal quotation marks omitted); *see also Rubin v. CBS Broad. Inc.*, 170 A.3d 560, 567 (Pa. Super. 2017) (same). According to Defendant, assault is substantially the same as murder, a recanted confession is substantially the same as a guilty plea, and these supposedly "minor inaccuracies" could not plausibly have had a different effect on the minds of debate watchers. Mot. at 11–14.

The Court need not even reach this issue because the question of whether a challenged statement is substantially true is "a matter for a jury" that is not appropriate for resolution on a motion to dismiss. *Eck*, 431 F. Supp. 3d at 633. Indeed, courts consistently deny motions to dismiss based on a substantial truth defense.[3] For example, in *Trump* v. *American Broadcasting Companies, Inc.*, Mr. Trump alleged that ABC anchor George Stephanopoulos defamed him during a broadcast in which Stephanopoulos stated that Trump had been found "liable for rape." *Trump v. Am. Broad. Companies, Inc.*, No. 24-21050-CIV, 2024 WL 3519177, at *1 (S.D. Fla. July 24, 2024). Mr. Trump alleged that he had been found liable for sexual abuse but not rape. *Id.* at *5. ABC moved to dismiss, arguing that the broadcast was substantially true. *Id.* Mr. Trump opposed the motion, writing in his opposition brief:

---

[3] *See, e.g.*, *Morgenstern v. Fox Television Stations of Philadelphia*, No. CIV.A. 08-0562, 2008 WL 4792503, at *9 (E.D. Pa. Oct. 31, 2008) ("[U]nder Federal Rule of Civil Procedure 12(b)(6), determination of the substantial truth of the [statements] at this stage is not appropriate."); *Fanelle v. LoJack Corp.,* 79 F.Supp.2d 558, 562 (E.D. Pa. 2000) ("While defendant's argument is compelling, the resolution of the substantial truth of defendant's [statement] is not appropriate on a motion to dismiss under Rule 12(b)(6)"); *RRZ Pub. Markets, Inc. v. Bond Buyer*, No. CIV. A. 94-1168, 1995 WL 20838, at *2 (E.D. Pa. Jan. 18, 1995) ("[U]nder Fed.R.Civ.P. 12(b)(6), resolution of the substantial truth of defendants' article is not appropriate."); *Ansley v. Wetzel*, No. 1:21-CV-528, 2022 WL 676275, at *6 (M.D. Pa. Mar. 7, 2022) ("[T]he resolution of the substantial truth of these [statements] is not appropriate on a Rule 12(b) motion to dismiss"); *Hotaling & Co., LLC v. Berry Sols. Inc.*, No. 20CV18718KSHCLW, 2022 WL 4550145, at *6 (D.N.J. Sept. 29, 2022) ("[Defendants] cannot rely on 'substantial truth' as a basis for dismissal").

17

> [ABC's] attempt to dispel the notion that 'rape' has a far more
> serious connotation than 'sexual assault' is unfounded, unsupported,
> and requires a fact-specific analysis not properly conducted at this
> stage of the proceedings. . . . Through the Motion, Defendants are
> improperly asking this Court to determine, at the motion to dismiss
> stage, what the 'stigma' or 'gist' associated with Stephanopoulos'
> statements *may or may not be.* The Court cannot make this
> determination at this stage "[b]ecause the trier of fact must consider
> the context of the publication in determining whether the gist or
> sting associated with it differs from the actual truth." *See Klayman*,
> 22 F. Supp. 3d at 1254 (S.D. Fla. 2014).

Opp'n to Mot. to Dismiss at 6, *Trump v. Am. Broad. Companies, Inc.*, No. 24-21050-CIV, 2024

WL 3626971 (S.D. Fla. July 24, 2014) (emphasis in original). The court agreed, holding that

dismissal on the basis of ABC's substantial truth defense would be inappropriate and that the issue

must be decided by a jury. *See Trump*, 2024 WL 3519177, at *9. Plaintiff Donald Trump correctly

stated the law of defamation; Defendant Donald Trump does not.

Even if it were proper for the Court to rule on the substantial truth of a statement at the

12(b)(6) stage, Defendant's argument would fail because his remarks at the debate were not

substantially true. As discussed above, Defendant's statements could plausibly be understood to

convey that Plaintiffs "pled guilty" to the charge that they "killed a person." The pleaded truth is

that Plaintiffs—who were between 14 and 16 years old at the time and unrepresented by counsel—

gave false confessions which they immediately recanted upon their release from police custody.

They then pled not guilty from the outset of their criminal cases and were subsequently exonerated

of all wrongdoing, including by conclusive DNA evidence and the confession of the true culprit.

They were never accused of killing anyone, and they certainly did not admit or plead guilty to

doing so.

It is at the very least plausible that the pleaded truth would have had a different effect on

the minds of viewers than did Defendant's false statements. To begin with, there is a meaningful

difference between assault and murder, both in the eyes of the law and of the general public. Murder is punished much more severely by the justice system than assault and being called a murderer "tends to blacken a person's reputation or expose him to public hatred" to a greater extent. *Green v. Mizner*, 692 A.2d 169, 172 (Pa. Super. 1997). As this Court has previously noted, "Pennsylvania courts have shown a willingness to interpret relatively mild statements as being capable of a defamatory meaning," such as calling someone a liar. *Glover v. Tacony Acad. Charter Sch.*, No. CV 18-56, 2018 WL 3105591, at *6 (E.D. Pa. June 25, 2018) (Beetlestone, J.) (quoting *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 399 (E.D. Pa. 2011)). Being called a killer is orders of magnitude more severe. Defendant does not cite any authorities that support his assertion that assault is substantially the same as murder in the eyes of the public. To the contrary, courts consistently allow defamation claims to proceed where the plaintiff was accused or convicted of a lesser crime than the defendant ascribed to him.[4]

There is also a vast difference between a recanted confession and a guilty plea. The phenomenon of false confessions is widespread and well-known. *See Reeves v. Fayette SCI*, 897 F.3d 154, 172 (3d Cir. 2018), *as amended* (July 25, 2018) (McKee, J., dissenting) (discussing prevalence of false confessions in cases where the criminal defendant was ultimately exonerated). In contrast to a confession, when an accused pleads guilty, they are no longer in the coercive setting of a police interrogation, they have had the opportunity to meet with counsel, and they have been

---

[4] *See Trump*, 2024 WL 3519177, at *9 (denying ABC's motion to dismiss after it allegedly stated that Trump was found "liable for rape" rather than liable for sexual abuse); *Blankenship*, 558 F. Supp. 3d at 321 (denying Trump, Jr.'s motion to dismiss after he allegedly stated that Don Blankenship was a "convicted felon" where conviction was for a misdemeanor); *Ansley*, 2022 WL 676275, at *6 (M.D. Pa. Mar. 7, 2022) (denying motion to dismiss claim that defendant falsely called plaintiff a "rapist" where plaintiff had a "history of sexual assault, harassment, and attempted rapes").

afforded all the procedural safeguards of a criminal trial—including a plea colloquy designed to ensure that the accused is acting knowingly, intelligently, and voluntarily. Thus, a jury could reasonably find that falsely stating Plaintiffs pled guilty "would have a different effect on the mind of the [viewer]" than the truth that Plaintiffs gave a recanted confession. *Eck*, 431 F. Supp. at 633. Defendant's motion attempts to minimize these distinctions, but accuracy is important when accusing individuals of serious crimes.[5] This is especially so because Defendant omitted reference to the fact that Plaintiffs were later exonerated and had their charges vacated—which, as discussed above, is itself actionable under Pennsylvania law.

The cases Defendant relies upon are a far cry from this case. In *Olivet University*, the defendant, Newsweek Magazine, reported that the plaintiff, Olivet University, had pleaded guilty to money laundering. *Olivet Univ. v. Newsweek Digital LLC*, No. 23 CIV. 5670 (NRB), 2024 WL 1892563, at *1 (S.D.N.Y. Apr. 30, 2024), *aff'd*, No. 24-1473-CV, 2024 WL 5001841 (2d Cir. Dec. 6, 2024). The pleaded truth was that (1) Olivet pleaded guilty to conspiracy to commit money laundering, and (2) as part of its plea allocution, Olivet admitted that its agents had committed money laundering on its behalf, which under New York law meant that Olivet was also "guilty of the offense." *Id.* at *4.  In other words, the plaintiff ***did plead guilty to a money laundering offense***, and as part of that same guilty plea, "expressly admitted to the factual predicates of the

---

[5] *See, e.g., McGarry v. CBS, Inc.,* No. CIV. A. 91-4638, 1991 WL 280247, at *1 (E.D. Pa. Dec. 23, 1991) (statement that an individual was "convicted" of theft was not substantially true where the individual was charged with theft and agreed to enter a pre-trial diversion program); *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir. 1994) (statement that an individual was "charged" was not substantially true when in fact he was administratively sanctioned); *Cate St. Cap. Inc. v. Indus. Intel. Inc.*, No. 1:14-CV-00200-JCN, 2015 WL 12564165, at *4 (D. Me. Oct. 28, 2015) (statement that an individual had been "convicted" of fraud was not substantially true where he had been found civilly liable).

substantive crime of money laundering." *Id.* Here, Plaintiffs never pleaded guilty to any crime and were never even accused of the crime Defendant ascribed to them.

Defendant's reliance on *Rouch* is also misplaced. In *Rouch*, the plaintiff sued a newspaper for reporting that plaintiff had been "charged" with the crime of sexual assault when in fact plaintiff had been arrested and booked for sexual assault but never formally charged. *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 218 (Mich. 1992). The case was not dismissed; it proceeded to trial and the jury found for the plaintiff. *See id.* The defendant then appealed the verdict to the Michigan Supreme Court, which concluded that the challenged statement was substantially true because the word "charge" when used "in a popular sense" is an "umbrella term" that encompasses arresting and booking a suspect and is a "synonym for accuse." *Id. Rouch* is inapposite because to "plead guilty" is not an umbrella term that encompasses all incriminating statements, nor is it synonymous with "confess." The popular usage of the term pleading guilty is the same as the legal one: it describes the defendant entering a plea of guilty in open court. Suspects who give an incriminating statement and then recant are not colloquially referred to as having "pled guilty." Moreover, in this case, none of the Plaintiffs ever confessed to having "killed a person," which adds an additional layer of falsehood that takes this case even further from the facts of *Rouch*.

One other point bears noting. The court in *Rouch* emphasized that it reached its conclusion "[a]fter painstaking review of the whole record." *Id.* at 220. The court relied on "both testimony and documents from the trial," including the plaintiff's own admission at trial that "the reference to the Plaintiff being arrested and being charged . . . were true," as well as contemporaneous police records that used the word "charged" to describe plaintiff's booking. *Id.* at 218. Thus, *Rouch*

further demonstrates that Defendant's substantial truth defense is a triable issue that cannot be resolved at the motion to dismiss stage.

In sum, Defendant is asking this Court to decide as a matter of law whether the audience of the September 10 debate: (1) would have viewed an accusation of assault as substantially the same as an accusation of murder, and (2) would have viewed giving a false confession as substantially the same as pleading guilty. Because these issues cannot be resolved at the 12(b)(6) stage, the Court should decline Defendant's invitation.

> **v.    Defendant has waived any challenge to Plaintiffs' defamation-by-implication claim.**

Plaintiffs' Complaint clearly alleges that Defendant's statements were defamatory in at least three independent respects: (1) his statement that Plaintiffs pled "not guilty" was false, (2) his statement that Plaintiffs "killed a person" was false, and (3) his omission of Plaintiffs' subsequent exoneration rendered his remarks false and misleading. Compl., ¶¶ 48–52. Yet Defendant's motion entirely fails to address Plaintiffs' third basis for their defamation claim. Any challenge to that freestanding portion of Plaintiffs' claim is therefore waived.[6]

> **B.    Plaintiffs have stated a claim for false light.**

> **1.    The Complaint satisfies each element of a false light claim.**

Under Pennsylvania law, a defendant is liable for false light invasion of privacy if he publishes a statement that "is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity." *Graboff v. Colleran Firm*, 744 F.3d 128,

---

[6] *See Baker v. Pennsylvania Econ. League, Inc. Ret. Income Plan*, 811 F. Supp. 2d 1136, 1144 (E.D. Pa. 2011) (refusing to consider arguments not raised in defendant's initial motion to dismiss); *United States v. Martin*, 454 F. Supp. 2d 278, 281 (E.D. Pa. 2006) ("The Court declines to address any issue raised for the first time in a reply brief"); *D'Alessandro v. Bugler Tobacco Co.*, No. CIV A 05-5051 JBS, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) ("The Court declines to consider the statute of limitations argument because it was not raised on the initial motion").

136 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.,* 543 A.2d 1181, 1188 (1988) (en banc)). Pennsylvania courts have "defined falsity broadly in [the] context" of false light claims. *Id.* "A plaintiff can establish falsity by showing that a defendant 'selectively printed or broadcast true statements or pictures in a manner which created a false impression.'" *Id.* (quoting *Larsen*, 543 A.2d at 1189). "Thus, even where a publication is literally true, 'discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in a false light entitles the grievant to recompense for the wrong committed." *Id.*

Because false light claims require only that the defendant created a false impression of plaintiff, rather than requiring any discrete false statements, even non-defamatory statements can be actionable under a false light theory. For example, Defendant relies on *Krajewski v. Gusoff* in his motion. Mot. at 9. As discussed above, that case involved a Philadelphia City Councilwoman suing a newspaper for publishing unflattering editorials about her. Some of the statements published about her, like that she was a "greedy politician[]" or that readers should "call Joan Krajewski's City Hall office and instruct her not to rip you off," were deemed non-actionable opinion, and the court affirmed dismissal of plaintiff's defamation claims based on those statements. *Krajewski*, 53 A.3d at 803 (Pa. Super. 2012). However, when it came to the false light claim, the court *vacated* the dismissal and found that plaintiff stated a claim because even true statements can combine to create a harmful false impression. *Id.* at 809 ("Proof of false light does not devolve on evidence that every single statement is itself false, but rather that the scenario depicted created a false impression, even if derived from true statements.").

Here, the Complaint sufficiently pleads that Defendant's statements were false, that Defendant knew they were false, and that they would be highly offensive to a reasonable person. Further, Defendant's decision to reference Plaintiffs' criminal proceedings while omitting

reference to their subsequent exoneration is separately actionable, because it amounts to "discrete presentation of information in a fashion that renders the publication susceptible to inferences casting one in a false light." *Graboff*, 744 F.3d at 136.

### 2.    Defendant's arguments do not justify dismissal.

Defendant's challenges to Plaintiffs' false light claim are largely the same as his challenges to the defamation claim, and they fail for the same reasons.[7]

Defendant makes only one argument that is unique to the false light claim: he argues that the claim should be dismissed because Plaintiffs did not allege that Defendant "had knowledge of or acted in reckless disregard as to the falsity of his statements," Mot. at 14, also known as the actual malice standard. Defendant's argument is unavailing. Actual malice can be established by showing that the defendant "has information which casts doubt as to the truth of the allegedly defamatory communication" or that he "purposefully avoided contradictory information due to [his] doubts as to the truth of his own statement." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 506 (E.D. Pa. 2010). "[A] party seeking to demonstrate actual malice need not rely solely on an admission from the mouth of the [defendant]." *Id.* at 505 (quoting *Herbert v. Lando,* 441 U.S. 153, 170 (1979). "Rather, a plaintiff may rely on objective circumstantial evidence in order to 'override defendants' protestations of good faith and honest belief' as to the truth of the statements." *Id.* at 506 (quoting *Schiavone Const. Co. v. Time, Inc.,* 847 F.2d 1069, 1090 (3d Cir.1988)).

Plaintiffs have adequately pleaded that Defendant acted with knowledge that his statements were false or with reckless disregard as to their falsity. The Complaint alleges that (1) Defendant has seen *The Central Park Five*, a documentary that describes the circumstances of the Central

---

[7] *See supra*, Section IV.A.3.i (discussing Defendant's alternative interpretation of the debate); Section IV.A.3.ii (discussing non-actionable opinion argument); Section IV.A.3.iii (discussing rhetorical hyperbole argument); Section IV.A.3.iv (discussing substantial truth argument).

Park assault case in detail; (2) Defendant followed Plaintiffs' prosecution and their lawsuit against the City of New York and wrote an editorial about Plaintiffs at the conclusion of their civil case; and (3) Defendant has been making disparaging public comments about Plaintiffs for over 30 years but never previously claimed that Plaintiffs pled guilty or that someone died during the assault. Compl., ¶¶ 66–85. A reasonable inference to draw from these facts is that Defendant has been highly interested in the Central Park assaults ever since they occurred and knows the basic details of the case. He is aware of sources that "cast[] doubt" on his statements at the debate (indeed, that refute his assertions entirely), but he either knowingly or recklessly disregarded this contradictory evidence when making his false comments. *Mzamane*, 693 F. Supp. 2d at 506.

In his motion, Defendant asks, "[W]hy would watching a privately-produced documentary prove the truth or falsity of any fact?" Mot. at 16.[8] Defendant's rhetorical question seems to imply that a speaker's awareness of secondary sources refuting his claims is not enough to establish actual malice—only personal, firsthand knowledge will do. But that is not the law. A defendant "cannot insure a favorable verdict by testifying that he published with a belief that the statements were true." *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 907 (Pa. 2007) (internal quotation marks omitted). The Complaint amply alleges that Defendant "has information which casts doubt as to the truth" of his statements at the debate, and nothing more is required to plead actual malice. *Mzamane*, 693 F. Supp. 2d at 506 (quoting *Schiavone*, 847 F.2d at 1090).

---

[8] The documentary was co-funded and aired by a public broadcaster, PBS. *About The Central Park Five*, PBS, *available at* https://www.pbs.org/kenburns/the-central-park-five/about (last visited Dec. 14, 2024).

**C.    Plaintiffs have stated a claim for intentional infliction of emotional distress.**

**1.    The Complaint satisfies each element of an IIED claim.**

To state a claim for intentional infliction of emotional distress, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 315 (E.D. Pa. 2021) (quoting *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997), *aff'd* 720 A.2d 745 (Pa. 1998)) (alterations in original). Pennsylvania follows the Second Restatement's formulation that the challenged conduct should be sufficiently extreme that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" *Doe v. Schneider*, 667 F. Supp. 2d 524, 533 (E.D. Pa. 2009) (quoting *Strickland v. University of Scranton,* 700 A.2d 979, 987 (Pa. Super. Ct.1997)).

"Pennsylvania courts have stressed that 'continuing malicious actions' are more likely to be deemed 'extreme and outrageous.'" *Smith*, 515 F. Supp. 3d at 318 (citing *John v. Philadelphia Pizza Team, Inc.*, 209 A.3d 380, 385 (Pa. Super. Ct. 2019)). In such cases, courts "examine[] whether the conduct was part of [a] continuous pattern of wrongful behavior that could support a claim for IIED if viewed collectively." *Id.* A pattern of wrongful conduct may state a claim for IIED even if no "single incident" would do so on its own, because it is "relevant that Plaintiff's emotional distress is linked to the long duration and persistency of [Defendant's] alleged misconduct." *Id.* And while the statute of limitations for IIED claims is two years, courts "have included harassing conduct that precedes the two-year limitations period in their analysis." *Id*. (collecting cases); *see also Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) ("[W]hen a

defendant's actions are part of a continuing pattern of conduct, the plaintiff's suit will be timely if at least one act evidencing this pattern falls within the limitations period.").

Defendant's thirty-year harassment campaign against Plaintiffs is extreme and outrageous. It began shortly after Plaintiffs were first arrested in May 1989. Defendant took out an advertisement in several New York City newspapers calling for Plaintiffs, who at the time were between 14 and 16 years old, to be executed. Compl., ¶ 23. Defendant wrote in that Ad:

> Mayor Koch has stated that hate and rancor should be removed from our hearts. I do not think so. I want to hate these muggers and murderers. They should be forced to suffer . . . I want to hate these murderers and I always will . . . I am not looking to psychoanalyze or understand them, I am looking to punish them . . . BRING BACK THE DEATH PENALTY AND BRING BACK OUR POLICE!

Compl., Ex. A. The Ad sparked widespread outcry and prompted Mayor Ed Koch to respond, "Nobody I know of in Western society believes that under any circumstances would you ever impose the death penalty on juveniles." Compl., ¶ 51.

Defendant never apologized for the Ad or acknowledged Plaintiffs' innocence, even after Plaintiffs were exonerated by DNA evidence and the confession of the true perpetrator. To the contrary, Defendant has continued to unleash vicious and false attacks against Plaintiffs in newspapers, on television, on social media, from the White House lawn, and now in a presidential debate watched by over 67 million Americans. Compl., ¶¶ 66–85. Throughout the years, Defendant has publicly said about Plaintiffs—five private citizens seeking to rebuild their lives and clear their names after years of wrongful incarceration—that they committed "horrific crimes . . . while in [the] park," that they are "Innocent of what-how many people did they mugg [sic]," that "these young men do not exactly have the pasts of angels," that they "brutalized [people] that night," that the City's decision to settle their civil lawsuit was a "disgrace"—and now, that Plaintiffs "pled guilty" to having "killed a person." *Id.* Each of these statements were published to Defendant's

legion of supporters. Defendant has never retracted or apologized for any of them. That is because, by Defendant's own admission, he "hate[s]" Plaintiffs and "always will," he wants them to "suffer," and he is "looking to punish them." Compl., Ex. A.

Waging a 30-year "personal vendetta" against five innocent men "could cause an ordinary citizen, upon hearing the facts, to exclaim, 'Outrageous!'" *RDO Foods Co. v. United Brands Int'l, Inc.*, 194 F. Supp. 2d 962, 974 (D. N.D. 2002). It goes "beyond all possible bounds of decency" and is "utterly intolerable in a civilized society." *Kornegay v. City of Philadelphia*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018). Accepting all well-pleaded allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Complaint states a claim for IIED.

### 2.    Defendant's arguments do not justify dismissal.

Defendant asserts in his motion that "Plaintiffs base their intentional infliction of emotional distress claim exclusively on President-elect Trump's alleged defamation at the debate." Mot. at 17. Not so. The Complaint makes clear that the IIED claim is based on "a continuing pattern of extreme and outrageous conduct dating back several years, thus constituting a continuing tort." Compl., ¶ 101. As explained above, where a defendant engages in a pattern of wrongful conduct, the Complaint will state an IIED claim so long as defendant's conduct "if viewed collectively" is extreme and outrageous, including "harassing conduct that precedes the two-year limitations period." *Smith*, 515 F. Supp. 3d at 318.

Defendant also argues that Plaintiffs' IIED claim is deficient because Plaintiffs have not "produced medically documented physical symptoms." Mot. at 17. Defendant is relying on a line of cases tracing back to *Kazatsky v. King David Memorial Park, Inc.*, in which the Pennsylvania Supreme Court affirmed the trial court's decision to grant compulsory nonsuit on an IIED claim because the plaintiffs failed to introduce competent medical evidence at trial to support their claims

of emotional distress.  527 A.2d 988, 995 (Pa. 1987). "However, most federal district courts in this circuit have declined to require specific allegations of medical evidence at the motion to dismiss stage, and there is nothing in the text of *Kazatsky* itself that suggests the court intended to create a heightened pleading requirement." *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 684 (E.D. Pa. 2018) (collecting cases). The Court should apply federal pleading standards to conclude that Plaintiffs have adequately stated a claim.

> **D.**    **The Court need not address Pennsylvania's anti-SLAPP statute.**

Defendant spills much ink discussing the applicability of Pennsylvania's newly enacted anti-SLAPP statute, apparently because Defendant intends to seek attorney's fees if dismissal is granted. But there is no reason for the Court to address the anti-SLAPP issue when ruling on the instant motion and good reasons not to do so.

*First*, Defendant does not actually seek attorney's fees or any other relief under the anti-SLAPP statute; Defendant seeks only an order granting his motion to dismiss. *See* ECF No. 26–3 (Proposed Order). Defendant states that if he prevails, he intends to file a "separately noticed motion" for attorney's fees. Mot. at 19. So there is nothing to decide now. *See Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1233 (M.D. Fla. 2017) (declining to rule on applicability of state anti-SLAPP statute raised in a motion to dismiss because "[c]urrently, [defendant] does not appear to ask for any relief under the anti-SLAPP statute."); *see also* Fed. R. Civ. P. 54(d)(2) (outlining procedure for requesting attorney's fees).

*Second*, Pennsylvania's anti-SLAPP statute applies where the plaintiff "fails to . . . state a cause of action upon which relief can be granted." 42 Pa. C.S. § 8340.15. Here, Plaintiffs' Complaint states a cause of action upon which relief can be granted on each of its three claims.

*Third*, while the Third Circuit has not yet spoken on this issue, most sister circuits that have addressed the applicability of state anti-SLAPP statutes have concluded these statutes do not apply in federal court because they "conflict[] with the Federal Rules." *Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231, 238–9 (D.C. Cir. 2021).[9] This is true even where the state anti-SLAPP statute "mirrors the standards imposed by [the Federal Rules]." *Id.*

**E.     Should the Court find that any of Plaintiff's claims are legally insufficient, Plaintiffs respectfully request leave to amend.**

The "Federal Rules require that 'leave [to amend] shall be freely given when justice so requires." *Debar v. FirstEnergy Corp.*, No. 24CV5164, 2024 WL 5008504, at *4 (E.D. Pa. Dec. 6, 2024) (Beetlestone, J.) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Should the Court find that the Complaint is deficient in any respect, Plaintiffs respectfully request leave to amend.

**V.     CONCLUSION**

Defendant's motion should be denied.

Dated: December 19, 2024                    Respectfully Submitted,

                                By:      */s/ Shanin Specter*
                                         Shanin Specter, Esquire (No. 40928)
                                         Alex Van Dyke, Esquire (No. 334456)
                                         KLINE & SPECTER, P.C.
                                         1525 Locust Street
                                         Philadelphia, PA 19102
                                         (215) 772-1000
                                         shanin.specter@klinespecter.com
                                         alex.vandyke@klinespecter.com
                                         *Lead Counsel for All Plaintiffs*

---

[9] *See also Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018); *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 553 F. Supp. 3d 211, 221 (D.N.J. 2021).

Jane Fisher, Esquire, *pro hac vice*
David Fisher, Esquire, *pro hac vice*
FISHER & BYRIALSEN, PLLC
99 Park Avenue
New York, NY 10016
(303) 256-6345
jane@fblaw.org
david@fblaw.org
*Co-Counsel for Plaintiff Wise*

Hollis Whitson, Esquire, *pro hac vice*
SAMLER & WHITSON, P.C.
1600 Stout St. Suite 1400
Denver, CO 80202
(303) 670-0575
hollis@samlerandwhitson.com
*Co-Counsel for Plaintiff Wise*

Jonathan C. Moore, Esquire, *pro hac vice*
Marc Cannan, Esquire, *pro hac vice*
BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue
New York, NY 10016
(212) 490-0400
jmoore@blhny.com
mcannan@blhny.com
*Co-Counsel for Plaintiffs Salaam, Santana, Richardson & Brown*