UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSEF SALAAM, et al.,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>DONALD J. TRUMP,<br><br>*Defendant.* | Case No. 2:24-cv-05560-WB |

**DEFENDANT DONALD J. TRUMP'S REPLY IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs' opposition relies on incorrect or incomplete statements of law, misrepresentations of President-elect Trump's arguments, and requires reviewing the at issue statements out of context for Plaintiffs to prevail. The core question before the Court is whether the following exchange, in its entirety, is reasonably capable of a defamatory interpretation:

**Harris**: "Let's remember, this is the same individual [Trump] who took out a full-page ad in the New York Times calling for the execution of five young Black and Latino boys who were innocent, The Central Park Five. Took out a full-page ad calling for their execution. … ."

**Trump**: "… They come up with things with things like she just said, going back many, many years, when a lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five. They admitted--they said they pled guilty. And I said, well if they pled guilty, they badly hurt a person, killed a person ultimately. And if they pled guilty--then they pled we're not guilty. But this is a person that has to stretch back years, forty, fifty years ago, because there is nothing now. … ."

*See* ECF No. 1 ¶46 (incorporating related video exchange).

Plaintiffs ask the Court to eschew this context and instead view the challenged statements "they pled guilty" and "[they] killed a person ultimately" in isolation, without the context of Vice President Harris's unrefuted innocence claims, without President-elect Trump's clarification that Plaintiffs ultimately "pled we're not guilty," and without President-elect Trump's bookending statements demonstrating that he was referring to the long past circumstances of the 1989 ad. When viewed in context, as the law requires, the remarks cannot be reasonably interpreted as defamatory. Plaintiffs do not adequately plead any of their causes of action, and this case should be dismissed in its entirety.

## ARGUMENT

**A. The challenged statements are not defamatory in their full context.**

Plaintiffs only provide the Court half of the story when they suggest that this Court need only determine that the challenged statements at issue are "capable of a defamatory meaning." ECF No. 27 at 6 (citing *Rapid Cirs., Inc. v. Sun Nat. Bank*, No. CIV.A. 10-6401, 2011 WL 1666919, at *12 (E.D. Pa. May 3, 2011)). Not so. The challenged statements must be capable of a defamatory interpretation by a "reasonable listener" when understood in their "full context." *Rose v. Dowd*, 265 F. Supp. 3d 525, 533 (E.D. Pa. 2017); *Livingston v. Murray*, 612 A.2d 443, 446 n.3 (Pa. Super. 1992). And when the complained of statements are reviewed under the appropriate legal standard, Plaintiffs' arguments flail.

Complementing their cropped version of the legal standard, Plaintiffs rely on a cropped version of President-elect Trump's statements and argue the phrases "pled guilty" and "killed a person" in isolation are reasonably capable of a defamatory interpretation. ECF No. 27 at 11. But these statements were not freestanding utterances. They arose in the context of a larger colloquy in which Vice President Harris accused President-elect Trump taking out "a full-page ad in the New York Times calling for the execution of five young Black and Latino boys who were innocent, The Central Park Five." *See* ECF No. 1 ¶46. In direct response to this attack regarding the 1989 ad, President-elect Trump responded with several phrases that showed his statements were directly in reference to his reasoning for the 1989 ad. First, President-elect Trump noted that Vice President Harris had to go back "many, many years" to find material to attack him. *Id*. Second, he used the phrase "well, I

2

said if …," an indication that he was harkening back to prior reasoning rather than making present claims. Finally, he closed his statements by saying that Vice President Harris had "to stretch back years, forty, fifty years ago because there is nothing now," again reiterating that his comments related to matters long past.

A "reasonable listener" hearing the statements in their full context would never come away with the impression that President-elect Trump was making a present assertion that Plaintiffs "pled guilty" and "killed a person." Further, he did not dispute Vice-President Harris's claims of innocence, and, in fact, followed up his own statement that they "pled guilty" with a qualifier that they then pled "not guilty." No reasonable listener would interpret the statements as Plaintiffs suggest.

Based on President-elect Trump's decision not to challenge the innocence claims and instead defend his motives for taking out the 1989 ad by clarifying that Plaintiffs had, at the time of the ad, admitted to a horrific crime only to retract later,[1] a reasonable hearer would come away with the non-defamatory understanding that Plaintiffs, though they initially admitted their guilt, ultimately pled not guilty and were innocent. Plaintiffs' defamation claim fails.

## B. Plaintiffs' complaint did not properly plead or give President-elect Trump notice of a defamation by implication claim.

Plaintiffs claim that their "Complaint separately states a claim under a defamation-by-implication theory" and that President-elect Trump has "waived any challenge to [this] defamation by implication claim" by supposedly failing to challenge

---

[1] Plaintiffs acknowledge that their retraction of their initial confessions to the Central Park Assaults only came after the ad's publication.  ECF No. 27 at 10.

3

this "freestanding portion" of their claims in his Motion to Dismiss. ECF No. 27 at 7, 22. The basis for this newly raised claim is that President-elect Trump supposedly omitted key facts in his statements about Plaintiffs at the debate, specifically a detailed history of how and why their sentences were vacated and how their lawsuit against the City of New York ended in a large settlement. ECF No. 27 at 8–9. Plaintiffs allege these "omissions" in a single paragraph of their Complaint (ECF No. 1 ¶ 52), but their sole defamation count (Count I) does not mention the omissions as a basis for relief. *See* ECF No. 1 ¶¶ 86–93. Far from a "freestanding portion" of their claims, Plaintiffs apparently rely on the broad language in Count I to include this defamation by implication claim within its sweep.

Plaintiffs thus contradict themselves: either their defamation by implication was included within Count I, and is thereby covered by President-elect Trump's arguments in his Motion to Dismiss for dismissing that Count; or it was not included within Count I and is not covered by the previous arguments, but should be dismissed/stricken under Rule 8(a) because Plaintiffs failed to plead it in a separate count thus giving President-elect Trump fair notice of the claim. *See Metro. Grp. Prop. & Cas. Ins. Co. v. Hack*, 312 F. Supp. 3d 439, 444 (M.D. Pa. 2018). Plaintiffs cannot have their cake and eat it too. Further, "[i]t is the duty of the court in all [defamation by implication] cases to determine whether the language used … could fairly and reasonably be construed to have the meaning imputed in the innuendo." *Livingston*, 612 A.2d at 449. But Plaintiffs' complaint does not put President-elect Trump or this Court on notice of what the alleged innuendo is.

Yet even if Plaintiffs had given notice of this claim, it fails for the same reasons as their defamation claim. *See supra* at 1–3; ECF No. 26 at II(B). Even with the supposed omissions, a reasonable hearer would not conclude that President-elect Trump was making a present claim that Plaintiffs pled guilty or committed murder.

Lastly, the cases on which Plaintiffs rely regarding omissions about a criminal defendant's post-conviction appeals and exoneration are inapt. This is not a situation where the speaker claimed there was a criminal conviction without the context that the conviction was overturned.[2] President-elect Trump never said that Plaintiffs had been convicted or found guilty. He stated that they pled guilty, followed immediately by saying they pled not guilty. There was no ambiguity.

### C. Plaintiffs misstate the law and President-elect Trump's arguments related to substantial truth.

In opposing President-elect Trump's defense that his challenged statements were substantially true, Plaintiffs misstate the law, mischaracterize President-elect Trump's arguments, and incorrectly frame the issue. Contrary to Plaintiffs' protestations, it is proper for the court to resolve substantial truth defenses at the motion to dismiss stage when, as here, it can do so without going beyond the pleadings. *See Monge v. Univ. of Pennsylvania*, No. CV 22-2942, 2023 WL 3571935, at *9 (E.D. Pa. May 19, 2023) (dismissing a defamation claim with prejudice because the challenged statements were all "either at least substantially true or [] pure

---

[2] *See Purcell v. Westinghouse Broad. Co.*, 191 A.2d 662, 666 (Pa. 1963); *Karuza v. Chance*, No. 34964–3–I, 1996 WL 180267, at *2 (Wash. Ct. App. Apr. 15, 1996); *Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 610 (E.D. Va. 2005); *Martin-Trigona v. Kupcinet*, No. 87 C 3347, 1988 WL 93945, at *5 (N.D. Ill. Sept. 2, 1988).

5

opinions"). It is only inappropriate to resolve a substantial truth defense at this stage when doing so would "take[] the Court beyond the pleadings" or otherwise require the Court not to accept the plaintiff's allegations as true. *See Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558, 562 (E.D. Pa. 2000); *Morgenstern v. Fox Television Stations of Philadelphia*, No. CIV.A. 08-0562, 2008 WL 4792503, at *9 (E.D. Pa. Oct. 31, 2008). Here, there is no obstacle to the Court resolving the substantial truth issue because the Court need not go beyond Plaintiffs' pleadings to find in President-elect Trump's favor: even if Plaintiffs' allegations are true, President-elect Trump's challenged statements would not "have a different effect on the mind of the [listener] from that which the pleaded truth would have produced." *Morgenstern*, 2008 WL 4792503, at *9 (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 497 (1991)).

The first disputed statement is that Plaintiffs "pled guilty" to the assaults before recanting and pleading not guilty; Plaintiffs' pleaded truth is that they initially confessed to the attacks before recanting and pleading not guilty. ECF No. 1 ¶¶ 20, 44, 49. The second disputed statement is that Plaintiffs admitted to beating a victim so badly that "they ultimately killed a person;" as opposed to the pleaded truth that victim, Patricia Meili, was left "virtually dead" and in a coma, with her subsequent survival considered "a miracle." *Id.* ¶¶ 44, 50; *The Central Park Five* at 0:20:52-0:21:16; 0:53:47-0:54:06; 1:15:32-1:15:35 (PBS 2012).

Plaintiffs mischaracterize President-elect Trump as claiming that a recanted confession is substantially the same as a guilty plea and that simple assault is substantially the same as murder. ECF No. 27 at 17. These apples-to-oranges

6

comparisons are Plaintiffs' own invention. The proper comparison is whether, in the mind of an average listener, an initial guilty plea that is then recanted and followed by a not guilty plea is substantially the same as an initial confession that is then recanted and followed by a not guilty plea. The answer is clearly "yes," as they would amount to the same thing to a layperson: an initial admission of guilt that is then withdrawn without legal effect. Plaintiffs argue that the formality and legal effect of a guilty plea makes it markedly different from a confession, but that argument does not adhere when the guilty plea in question would have no legal effect because it was withdrawn and replaced by a not guilty plea. As well, courts have consistently found that a layperson's colloquial misstatements about the details of criminal law terminology can support a defense of substantial truth.[3]

As to the attack on Ms. Meili, the proper comparison is whether, in the mind of a listener, an accused's initial admission to a beating that ultimately left a victim dead would be substantially the same as an initial admission to a beating that left a victim "virtually dead." Here too, there would not be a "different effect" on the listener's mind between the two statements because, in either case, the listener would understand the accused to have admitted to a vicious, murderous beating before recanting. The Court can and should decide this matter based on the pleadings and determine that both statements were substantially true.

//

---

[3] See *Olivet Univ. v. Newsweek Digital LLC*, No. 23 CIV. 5670 (NRB), 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024); *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 215 (Mich. 1992).

7

### D. Plaintiffs misstate the elements for IIED and fail to support their claim.

"The Court need not consider whether Defendant's conduct was 'extreme and outrageous' because [Plaintiffs have] failed to plead an essential element of the tort of intentional infliction of emotional distress: physical injury. Because [Plaintiffs have] not pled physical injury, [their] claim for intentional infliction of emotional distress [must] be dismissed." *Rudas v. Nationwide Mut. Ins. Co.*, No. CIV. A. 96-5987, 1997 WL 11302, at *6 (E.D. Pa. Jan. 10, 1997). Whether Plaintiffs must provide medical evidence of physical injury at the pleading stage is irrelevant: they have not even *alleged* the required physical injury necessary to survive this Motion.

Additionally, Plaintiffs arguments about the supposed "outrageousness" of President-elect Trump's conduct are thin, to put it charitably. First, they fail to address that defamation generally falls below the extraordinarily high-bar required for establishing "outrageous" conduct. *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583-84 (3d Cir. 2016) (defamatory assertion that a plaintiff was involved in a sex scandal was not "extreme and outrageous" enough to be one of "the most egregious of situations" like "mishandling a corpse" or "having sexual contact with young children"). Second, the supposed harassment campaign that Plaintiffs rely on to bootstrap the "outrageous" element consists of a handful of remarks over 35 years: 1) the ad from 1989 (which Plaintiffs admit was published after they had confessed but before they had recanted, *see* ECF No. 27 at 10), 2) a set of Twitter posts from 2013 disagreeing with the narrative in Burns' *The Central Park Five* documentary, 3) a 2014 newspaper editorial disagreeing with the $41 million settlement Plaintiffs

8

received from the City of New York, and 4) the remarks at the September 10, 2024, presidential debate (which were not defamatory and did not assert that Plaintiffs were guilty, as discussed *supra* at 1-3).  Plaintiffs present no legal argument for how this conduct constitutes one of "the most egregious of situations" or possibly compares to abuse of a corpse or a child, relying instead on rhetorical flourish to simply declare it "Outrageous!"  *See* ECF No. 27 at 28.

### E. Plaintiffs misstate the law on the applicability of Pennsylvania's anti-SLAPP law to this matter.

While there is a circuit split regarding anti-SLAPP statutes' applicability when those statutes conflict with the federal rules,[4] there is no debate that the *Erie* doctrine requires federal courts to apply substantive provisions of state law when they do not conflict with the federal rules.  Plaintiffs mislead this Court when claiming that *Tah v. Global Witness Publ'g, Inc*, 991 F.3d 231, 239 (D.C. Cir. 2021) suggests that state anti-SLAPP statutes do *not* apply even when they "mirror[] the standards imposed by [the Federal Rules]."  ECF No. 27 at 30.  *Tah* says no such thing.  *Tah*'s "mirror" language is a direct quote from *Competitive Enter. Institute v. Mann*, 150 A.3d, 1213, 1238 n. 32 (D.C. Cir. 2016), where the court held that the "D.C. Anti-SLAPP Act's likelihood of success standard [] simply mirror[ed] the standards imposed by Federal Rule 56."  The court noted this pronouncement would "no doubt factor into future

---

[4] *Compare La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) (holding California's anti-SLAPP statute did not apply because it conflicted with the federal rules), *with U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding California's anti-SLAPP statute applies in federal court because to fail to apply California's law would "run squarely against the 'twin aims' of the *Erie* doctrine").

9

analysis" regarding the Act's applicability in federal courts. Thus, the court implied that provisions of D.C.'s Anti-SLAPP Act *would* apply if they were in harmony with the Federal Rules. *Id.* President-elect Trump is unaware of any instance, and Plaintiffs have failed to cite any, where a court has refused to apply a state's anti-SLAPP in the absence of a conflict with the Federal Rules.

Pennsylvania's anti-SLAPP statute grants movants immunity and attorneys' fees for causes of action based on "protected public expression" dismissed for failure to "state a cause of action upon which relief can be granted." 42 PA.C.S. § 8320.1, §8340.15. Plaintiffs do not contest that the speech at issue in this lawsuit stems from protected public expression or that the anti-SLAPP statute incorporates the same dismissal standard as the federal rules. Thus, the anti-SLAPP statute does not conflict with the federal rules and this Court should grant President-elect Trump immunity and attorneys' fees for any cause of action dismissed.

## CONCLUSION

For these reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Dated:  January 8, 2025

Respectfully submitted,

By: /s/ Karin M. Sweigart
Karin M. Sweigart (PA No: 247462)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: 415-433-1700
Facsimile: 415-520-6593
ksweigart@dhillonlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

Dated:  January 8, 2025

By: /s/ Karin M. Sweigart
Karin M. Sweigart