IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSEF SALAAM, RAYMOND SANTANA, KEVIN RICHARDSON, ANTRON BROWN AND KOREY WISE, **Plaintiffs,** | CIVIL ACTION |
| v. | NO. 24-5560 |
| DONALD J. TRUMP, **Defendant.** | |

## MEMORANDUM OPINION

During the 2024 Presidential Election cycle, then-candidate and now-President, Defendant Donald J. Trump, faced then-candidate and then-Vice President Kamala Harris in a televised debate (the "Debate") hosted by the National Constitution Center in Philadelphia. At the Debate, Defendant made certain comments about the "Central Park Five," a name which for decades has been used to refer to Plaintiffs Yusef Salaam, Raymond Santana, Kevin Richardson, Antron Brown, and Korey Wise. Based on those comments and several others that Defendant has made about Plaintiffs over the years, Plaintiffs brought this lawsuit alleging defamation, false light, and intentional infliction of emotional distress ("IIED")—all under Pennsylvania law. Defendant now moves to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.      FACTUAL BACKGROUND

In analyzing a motion to dismiss, the Court must take the facts as alleged in Plaintiffs' Complaint as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

1

### A. Plaintiffs' Convictions and Exonerations

Although the instant case was born out of comments made at the Debate, the story spans nearly thirty-five years. In April of 1989, a string of violent crimes occurred in New York City's Central Park. One woman, Patricia Meili, was assaulted and raped, and two men, David Lewis and John Loughlin, were assaulted in a different portion of the park, all three while jogging. Plaintiffs, teenagers at the time, were each interrogated by law enforcement in connection with the crimes.

Initially, Plaintiffs denied any connection with the assaults and rape. Yet after hours of "coercive interrogation," and without an attorney present, four Plaintiffs—Santana, Richardson, Brown, and Wise—eventually confessed to both the assault and rape of Meili and the assault of Lewis and Loughlin. Plaintiff Salaam never confessed. Still, the police took extensive notes during his interrogation, which purportedly implicated him in the crimes as well.

Plaintiffs quickly recanted their confessions, but the criminal process had begun. Plaintiffs were indicted and charged with attempted murder, rape, sodomy, assault, robbery, sexual abuse, and riot. Each of them pleaded not guilty and maintained their innocence throughout trial and for the years that followed. Nevertheless, by the end of 1990, each Plaintiff had been convicted of at least some of the charges brought against him.

About twelve years later, in 2002, one Matias Reyes confessed that it had been him, not any of the Plaintiffs, who had raped and assaulted Meili. The Manhattan District Attorney's Office reopened its investigation into the assaults, and, given Reyes' confession as well as DNA evidence, all Plaintiffs' convictions were vacated and the indictments dismissed. Over the years, the media attached to the Plaintiffs the moniker, the "Central Park Five." The Plaintiffs now refer to themselves as "The Exonerated Five."

### B. Defendant's Pre-Debate Comments About Plaintiffs[1]

After Plaintiffs were named as suspects in the 1989 investigation, but before they were indicted, Defendant took out a full-page advertisement in a handful of New York City newspapers. The ad did not identify Plaintiffs by name, but the parties do not dispute that the ad was about them. Its headline read: "BRING BACK THE DEATH PENALTY. BRING BACK OUR POLICE!" In the body of the ad, Defendant commented, in part:

> Mayor Koch has stated that hate and rancor should be removed from our hearts. I do not think so. I want to hate these muggers and murderers. They should be forced to suffer and, when they kill, they should be executed for their crimes. They must serve as examples so that others will think long and hard before committing a crime or an act of violence. Yes, Mayor Koch, I want to hate these murderers and I always will. I am not looking to psychoanalyze or understand them. I am looking to punish them.

In 2013, over a decade after Plaintiffs were exonerated, Defendant tweeted his thoughts on a film documenting their convictions and exonerations. In those tweets, Defendant described the documentary as a "one sided piece of garbage that didn't explain the.horrific [sic] crimes of these young men while in park [sic]." A few months later, Defendant was asked via Twitter (now, X): "How do you feel that the central park 5 were innocent." Defendant responded: "Innocent of what—how many people did they mugg [sic]?"

A year after the exchange, Plaintiffs settled a civil lawsuit against the City of New York for their wrongful convictions. The settlement prompted Defendant to pen an editorial in the

---

[1] Defendant argues that any comments he made about the Central Park Five before the Debate cannot be considered, because they are barred by the relevant statute of limitations. 42 Pa. Cons. Stat. § 5523(1) (one-year statute of limitations for defamation and false light); *id.* § 5524 (two-year statute of limitations for IIED).

While Defendant is correct that Plaintiffs' defamation and false light claims cannot be premised on comments made outside of the statute of limitations for those claims, Plaintiffs may, however, look to those comments to establish actual malice. And, as laid out more fulsomely below, his earlier comments may be considered in analyzing Plaintiffs' claim for IIED.

New York Daily News, calling it a "disgrace;" stating that Plaintiffs did "not exactly have the pasts of angels;" and asking "[w]hat about the other people who were brutalized that night, in addition to the jogger?" According to the Complaint, Defendant has since made numerous public statements regarding the Central Park assaults, the criminal case, the trials, the exoneration and the settlement with the City.

In 2016, Defendant was elected to his first term as President of the United States. In 2019, a reporter asked him: "The Central Park Five, they've been exonerated, there have been movies and videos . . . . You came out with a full-page ad saying they should die, they should have the death penalty." Defendant replied:

> Why do you bring that question up now? It's an interesting time to bring it up. You have people on both sides of that. They admitted their guilt. If you look at Linda Fairstein[2] and if you look at some of the prosecutors, they think that the City should never have settled that case. So we'll leave it at that.

### C. The 2024 Presidential Debate

Fast forward another five years to Defendant's 2024 Presidential campaign. During the portion of the Debate concerning "race and politics," Harris commented, "[l]et's remember, this is the same individual [referring to Defendant] who took out a full-page ad in The New York Times calling for the execution of five young Black and Latino boys who were innocent, the Central Park Five. Took out a full-page ad calling for their execution." About sixty seconds later, after some back and forth between Harris and the Debate's moderators, Defendant said:

> This is the most divisive presidency in the history of our country. There's never been anything like it. They're destroying our country. And they come up with things like what she just said going back many, many years when a lot of people including Mayor Bloomberg agreed with me on the Central Park Five. They admitted—they said, they pled guilty. And I said,

---

[2] Farstein was one of the prosecutors who handled the criminal cases against Plaintiffs.

4

>well, if they pled guilty they badly hurt a person, killed a person ultimately. And if they pled guilty—then they pled we're not guilty. But this is a person that has to stretch back years, 40, 50 years ago because there's nothing now.

The Defendant, in his briefs, urges the Court to contextualize the statement as a response to Harris's statement sixty seconds before and to interpret the statement as his recollections of why he placed the 1989 ad. Before addressing that point, however, as an initial matter it is necessary to determine exactly on what portions of the statement Plaintiffs premise their claims. As conceded by the Plaintiffs at oral argument, the following sentences do not refer to Plaintiffs, say nothing about Plaintiffs and, thus, cannot serve as a basis for their claims:

>"This is the most divisive presidency in the history of our country. There's never been anything like it. They're destroying our country."

>"And they come up with things like what she just said going back many, many years when a lot of people including Mayor Bloomberg agreed with me on the Central Park Five."

>"But this is a person that has to stretch back years, 40, 50 years ago because there's nothing now."

Accordingly, the following words form the nub of Plaintiffs' concerns: "They admitted—they said, they pled guilty. And I said, well, if they pled guilty, they badly hurt a person, killed a person ultimately. And if they pled guilty—then they pled we're not guilty." These are the comments that spurred the instant lawsuit. As Plaintiffs interpret them, Defendant's comments assert three things. First, that Plaintiffs "pled guilty." Second, that Plaintiffs "badly hurt a person." And, finally, that they "killed a person ultimately." Today, the Court must determine whether these statements support claims for defamation, false light, and IIED when viewed through the lens of the standard that the Court must adopt in reviewing a Motion to Dismiss

5

pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "*in the light most favorable to the plaintiff*," with the question being "*whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief*." *Fowler*, 578 F.3d at 210 (internal quotation omitted) (emphases added). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11.

---

[3] As a threshold matter, Defendant argues that he is "immune" and, thus, entitled to attorney's fees under the Uniform Public Expression Protection Act, otherwise known as Pennsylvania's Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") Statute, 42 Pa. Cons. Stat. § 8340.11, *et seq.*

The Anti-SLAPP Statute renders a party "immune from civil liability for a cause of action based on protected public expression if . . . (1) the party asserting the cause of action based on protected public expression fails to . . . (ii) state a cause of action upon which relief can be granted." *Id.* § 8340.15. The language of Federal Rule of Civil Procedure 12(b)(6)—the Rule pursuant to which Defendant now moves—is almost identical. It provides that, upon motion, a district court must dismiss a plaintiff's complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At oral argument, Defendant conceded that these standards are the same. Thus, the question before the Court is whether Plaintiffs have failed to state a claim upon which relief can be granted. Because the analysis does not change, regardless of whether the Court proceeds under the rubric of the Anti-SLAPP statute or under Rule 12(b)(6), there is no need to address at this juncture whether the Anti-SLAPP statute applies in federal court.

### III.    DISCUSSION

#### A.  Defamation

To state a claim for defamation in Pennsylvania, a plaintiff must allege: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.  *Pace v. Baker-White*, 432 F. Supp.3d 495, 508 (E.D. Pa. 2020) (citing 42 Pa. Cons. Stat. § 8343(a)).

Defendant argues that Plaintiffs have failed to adequately plead the first element of a defamation claim, *i.e.*, that the statement in question was defamatory in character.[4] 42 Pa. Cons. Stat. § 8343(a)(1).  First, he submits that his statements were statements of opinion—not assertions of fact—and therefore are not capable of a defamatory meaning, because the general rule is that "opinion[s]" cannot "be . . . capable of a defamatory meaning under Pennsylvania law." *Mzamane v. Winfrey*, 693 F. Supp.2d 442, 477 (E.D. Pa. 2010) (internal quotation omitted); *Pace*, 432 F. Supp.3d at 512 (quoting *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1267 (Pa. Super. 2005)).  Second, he disputes that his statements at the Debate were of a defamatory character, because they did not "'tend[] to harm the'" Plaintiffs' "'reputation . . . as to lower

---

[4] Throughout his briefing, Defendant characterizes his argument that his statements were not defamatory in character as not having a "defamatory sting."  At oral argument, his counsel represented that his opinion and defamatory character arguments also implicate the fourth element of a defamation claim—that "the recipient" of the communication understood "its defamatory meaning." 42 Pa. Cons. Stat. § 8343(a)(4).  But that question cannot be determined on a Motion to Dismiss, because "determin[ing] if the defamatory meaning was understood by the recipient," is a question that "must proceed to a jury." *Pace*, 432 F. Supp.3d at 509.  To the extent that Defendant's arguments pertaining to "sting" really speak to the first element of a defamation claim, they will be evaluated as such herein.

Regarding the other elements of defamation, Defendant does not challenge that they are adequately pleaded by Plaintiffs.

[them] in the estimation of the community.'" *Krajewski v. Gusoff*, 53 A.3d 793, 802 (Pa. Super. 2012) (quoting *Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. 1995)).

Defendant next presents an affirmative defense; he argues that his statements were substantially true, which, if correct, defeats Plaintiffs' defamation claim. 42 Pa. Cons. Stat. § 8343(b)(1). Turning now to each of those arguments, which will be addressed *seriatim.*

### i.  Opinion & Defamatory Character

Defendant's first two arguments—that his statement was an opinion and lacked defamatory character—inform one another, so they will be considered together. When evaluating a defamation claim, "it is for the court to determine, in the first instance, whether the statement of which the plaintiff complain[s] is capable of a defamatory meaning." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923 (3d Cir. 1990). At the outset, two questions require answers: "(1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character." *Fraternal Ord. of Police v. Crucifucks*, 1996 WL 426709, at *4 (E.D. Pa. July 29, 1996) (citations omitted). The first question focuses on interpreting Defendant's statement, and the second asks whether such an interpretation is defamatory.

Regarding the first question, a plaintiff need not establish that a statement's alleged defamatory meaning is the only possible interpretation, merely that the alleged defamatory meaning is a reasonable one. *Pace*, 432 F. Supp.3d at 509 ("Even where there is a plausible innocent interpretation, if there is an alternative defamatory interpretation, the issue must proceed to a jury to determine if the defamatory meaning was understood by the recipient." (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1345 (Pa. Super. 1987), *app. denied*, 548 A.2d 256 (Pa. 1988); *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90 (3d Cir. 2013))). Essentially, the

8

first question is whether—colloquially speaking—the man on the Broad Street Line[5] could reasonably understand Defendant's statements to mean what Plaintiffs' say they mean. *Id.*

This first question is where Defendant's opinion arguments come into play. In interpreting an allegedly defamatory statement, the general rule is that "[o]nly statements of fact, not expressions of opinion, can support an action for defamation." *Moore*, 889 A.2d at 1267. Whether a given statement is an opinion or fact is a question of law to be decided by the Court. *Kuwait & Gulf Link Transp. Co. v. Doe*, 216 A.3d 1074, 1085 (Pa. Super. 2019). Pennsylvania courts "distinguish[] a statement of fact from a statement of opinion by whether [the statement] can be 'objectively determined.'" *Meyers v. Certified Guar. Co., LLC*, 221 A.3d 662, 670 (Pa. Super. 1970) (citing Restatement (Second) of Torts, § 566 cmt. a (Am. L. Inst. 1977)). But the bar of using an opinion to support a defamation claim is not absolute; even if a statement is construed as an opinion, it can still be defamatory "if it 'contain[ed] a [demonstrably] false factual connotation.'" *Id.* at 670 n.10 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)) (alterations in original).

The second question, the defamatory-in-character inquiry, focuses on "the effect [the statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987) (quotations omitted). A statement is defamatory in character if "it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Maier*, 671 A.2d at 704; *see also* Restatement (Second) of Torts § 559 (Am. L. Inst. 1977). The statement in question must "be

---

[5] *See, e.g., The Man on the Clapham omnibus*, Merriam-Webster, https://www.merriam-webster.com/dictionary/the%20man%20on%20the%20Clapham%20omnibus (last visited April 2, 2025) (defining the phrase to mean "the ordinary and average person").

construed as a whole, and each word must be read in the context of all the other words." *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. 2010) (citations omitted).

In Defendant's view, the only reasonable understanding of his on-stage comments is that they explained his motivations in taking out the 1989 ad: once Plaintiffs "pled guilty—then they pled we're not guilty," he was motivated to take out the ad calling for their execution. If his explanation is taken as true then, he argues, his statements are not actionable because they are pure opinion, and, further, they lack defamatory character, because, in context, they do not assert anything about Plaintiffs.[6]

But the Court does not look to Defendant's interpretation of his statement on a motion to dismiss. Plaintiffs' interpretation is what steers the analysis. Thus, the first question that a Court must address is "whether the communication was reasonably capable of conveying *the particular meaning ascribed to it by the plaintiff*." *Fraternal Order*, 1996 WL 426709, at *4 ((emphasis added)); *see also* Restatement (Second) of Torts § 614(1) & cmt. b (Am. L. Inst. 1977); *Pace*, 432 F. Supp.3d at 509 (noting that on a motion to dismiss, Plaintiff's interpretation must be reasonable).

Plaintiffs' interpretation of the Defendant's comments is that they asserted three key propositions: the first is that Plaintiffs pleaded guilty, the second is that Plaintiffs badly hurt someone, and the third is that Plaintiffs killed someone. Construing Defendant's comments as a

---

[6] In one sentence of his brief, Defendant also states that the "rhetorical hyperbole" one expects to hear at a political debate somehow changes the defamation analysis and cites to a few cases in a footnote that purport to support his argument. A "passing reference" to an argument, such as that made "in a footnote," need not be considered. *Leccese v. Allstate Prop. and Cas. Ins. Co.*, 630 F. Supp.3d 628, 635 n.2 (E.D. Pa. 2022) (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)). And in any event, "the fact that statements were made in a political context does not indiscriminately immunize every statement contained therein" and does not shield "provably false statements" from liability. *US Dominion, Inc. v. Powell*, 554 F. Supp.3d 42, 57 (D.D.C. 2021) (quotation and citation omitted); *see also Blankenship v. Trump*, 558 F. Supp.3d 316, 328 (S.D.W. Va. 2021) (rejecting Donald Trump, Jr.'s argument that falsely calling a candidate for Senate "a felon" was merely "colorful rhetoric" and "hyperbolic language").

10

whole, and in the light most favorable to Plaintiffs, as a court must at this stage, *Fowler*, 578 F.3d at 210, such a reading is reasonable.[7]

And, Defendant's assertions—that Plaintiffs pleaded guilty and that Plaintiffs killed someone—can be "objectively determined" to be false, so Defendant's statement must be construed as one of fact, not opinion.[8] *Meyers*, 221 A.3d at 670 (internal quotations and citations omitted); *see also Vivian v. Blank Rome, LLP*, 318 A.3d 890, 900 (Pa. Super. 2024) ("'A statement of fact can be verified as true or false, whereas an expression of opinion *only* conveys a subjective belief of the speaker.'" (emphasis added) (quoting *Meyers*, 221 A.3d at 670)). In fact, none of them pleaded guilty and none of them were charged with killing anyone.

Given that Defendant's communications were reasonably capable of conveying the particular meaning ascribed to them by the plaintiff, the next question is "whether that meaning is defamatory in character." *Pace*, 432 F. Supp.2d at 510. On that point, Pennsylvania law is straightforward: "Statements imputing the commission of an indictable offense are capable of defamatory meaning as a matter of law." *Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d 1072, 1078 (3d Cir. 1985) (citing *Baird v. Dun & Bradstreet*, 285 A.2d 166, 171 (Pa.

---

[7] At oral argument, Defendant's counsel argued that *Thomas Merton Ctr. v. Rockwell Intern. Corp*, 442 A.2d 213 (Pa. 1981), a case not cited in Defendant's briefing, supports his position that the context surrounding Defendant's statements warrants a conclusion that they are not defamatory. But *Thomas Merton* is distinguishable. There, the plaintiff had been mentioned in an article published by the Associated Press. *Id.* at 215. But the article itself had next-to-nothing to do with the plaintiff, and so the court held that the one stray comment about the plaintiff, which alone may have been defamatory, could not be plucked out of context to support a defamation claim. *Id.* at 216. Here, Defendant cannot reasonably—and does not attempt to—argue that his statement had nothing to do with Plaintiffs.

[8] Defendant argues, however, that because he added the phrase, "a lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five," before his factual assertions, his statement—read as a whole—must be an opinion rather than an assertion of fact. As Defendant sees it, "[a]s a matter of practical language, people do not 'agree' with facts; they agree with opinions." But even assuming *arguendo* that Defendant's statement looks more like an opinion than a statement of fact, simply because he stated that others agree with him, his argument must still fail, because "if the [Defendant] state[d] the facts upon which he base[d] his opinion," and "if those facts [were] *either incorrect or incomplete*," then "the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." *Meyers*, 221 A.3d at 671 (quoting *Milkovich*, 497 U.S. at 18-19). A "statement" is still "defamatory if it 'contain[ed] a [demonstrably] false factual connotation.'" *Id.* at 670 n. 10 (quoting *Milkovich*, 497 U.S. at 21) (alterations in original).

11

1971)).

### ii. *Substantial-Truth Defense*

Defendant next argues that his Motion to Dismiss must be granted because the "statements were 'substantially true.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (citing 42 Pa. Cons. Stat. § 8343(b)(1)). "Truth is an affirmative defense under Pennsylvania law." *Tucker v. Fischbein*, 237 F.3d 275, 287 (3d Cir. 2001). When an affirmative defense is raised, as it is here, on a Motion to Dismiss, only those matters that are "apparent on the face of the complaint" may be considered in evaluating whether the statements are substantially true. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)); *see also Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886-87 (3d Cir. 1997) (holding that the face-of-the-complaint rule applies to all affirmative defenses).

In support of his substantial-truth argument, Defendant equates Santana, Richardson, Brown, and Wises' confessions during their interrogation with pleading guilty. This argument, of course, regardless of its merit, cannot apply to Salaam who neither confessed nor pleaded guilty.

It cannot be gainsaid that there is a difference between confessing to a crime and pleading guilty to one. Specifically, when a criminal "defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *U.S. v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Because pleading guilty is a "serious[] . . . matter, the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must . . . 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely

12

consequences" waive certain Constitutional rights. *Id.* at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970); citing *Boykin*, 395 U.S. at 242). As such, courts usually must hold an in-person hearing to determine that a criminal defendant's plea is voluntary, knowing, and intelligent. *See, e.g.*, Fed. R. Crim. P. 11; N.Y. Crim. Proc. Law. § 220.50 (McKinney 2021). And, after a court accepts a guilty plea, defendants, as a general rule, cannot walk it back and subsequently plead not guilty. *See, e.g.*, Fed. R. Crim. P. 11.

On the other hand, when a criminal defendant confesses during interrogation, that confession does not have conclusive legal effect. In fact, because mid-interrogation admissions of guilt often pose a risk that the defendant confessed due to coercive interrogation practices, such a confession may not even be admissible in court, depending on the circumstances of the interrogation. *See generally Miranda v. Arizona*, 384 U.S. 436 (1966).

As to the issue of whether pleading guilty and admitting to a crime are so substantially similar as to insulate Defendant from liability, *Purcell v. Westinghouse Broad. Co.*, 191 A.2d 662 (Pa. 1963), is instructive. In that case, Purcell, who had been charged with violating a towing ordinance, was convicted by a Magistrate, but he appealed, won, and his conviction was overturned. *Id.* at 664. During the pendency of his appeal, however, a radio station publicized his conviction, sensationalizing the story of the crimes he purportedly committed. *Id.* at 665-66. When Purcell sued the radio station for defamation, the defendant argued that its sensational publication of the Purcell's conviction was substantially true—and to a certain extent, the broadcast was literally true, for no court had yet to overturn Purcell's conviction at the time it aired its story. *Id.* at 664-65. The Supreme Court of Pennsylvania rejected that argument, finding that "[t]he stark unbudgeable fact remains that Purcell did appeal and that appeal stayed all punitive proceedings. It did more than that, it nullified for the period of appellate pendency

the effect of everything which had been presented by the Commonwealth, so that Purcell stood before the world as unoffending as one who had never been accused." *Id.* at 670. As such, the broadcast was liable for its defamatory publication. *Id.* at 667. Here, Plaintiffs were not just in the process of being exonerated, their name had been cleared for over twenty years, so Defendant cannot argue that stating that they pleaded guilty to crimes is substantially true, when the truth is that Plaintiffs are not guilty at all of those crimes.

Defendant cites, for the proposition that "courts at both the federal and state level have consistently found that" when a defendant incorrectly uses legal terminology—especially regarding criminal law—those statements may nonetheless be substantially true, two cases: *Olivet Univ v. Newsweek Digital LLC*, 2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024) (unpublished), and *Rouch v. Enquirer & News of Battel Creek Michigan*, 487 N.W.2d 205, 218 (Mich. 1992). Neither carry any weight here (they are out of jurisdiction and non-precedential).[9]

And even if they did, they are distinguishable. In *Olivet*, the defendant published an article stating that the plaintiff pleaded guilty to money laundering, when in fact, the plaintiff pleaded guilty to *conspiracy* to commit money laundering. *Olivet*, 2024 WL 1892563, at *4. The district court determined that the defendant's statement could not support a defamation claim because the article was substantially true, "the effect on the average reader is simply that

---

[9] At oral argument, Defendant's counsel referenced a few nonbinding cases, which, she argued, stand for the same proposition that *Olivet* and *Rouch* do, as Defendant reads them: given that criminal terminology is highly technical and easy to mistake, Defendant's statements were substantially true. But the cases that Defendant's counsel mentioned at oral argument were cited in Defendant's briefing for a different proposition. Like *Purcell*, the mentioned cases determined that a defendant may have defamed a plaintiff when a defendant publicized a conviction without subsequently mentioning that said conviction had been "legally voided." *Karuza v. Chance*, 1996 WL 180267, at *3 (Wash. App. 1996); *see also Wiest v. E-Fense, Inc.*, 356 F. Supp.2d 604, 609-10 (E.D. Va. 2005), *Martin-Trigona v. Kupcinet*, 1988 WL 93495, at *6 (N.D. Ill. Sept. 2, 1988). In Defendant's briefing, he argued that these cases are factually distinguishable from this one: "This is not a situation where the speaker claimed there was a criminal conviction without the context that the conviction was overturned." But according to Plaintiffs' reasonable reading of Defendant's statements, that is exactly the case here, so for the same reason that *Purcell* cuts against Defendant's substantial truth arguments, those cases do, too.

Olivet had pleaded guilty to *some* crime relating to money laundering." *Id.* at *5 n.10.  But here, "the 'gist' . . . of the defamation" is different.  *Dunlap v. Philadelphia Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. 1982).  In *Olivet*, the district court's point was that the plaintiff there *had* pleaded guilty to a criminal offense and had never disputed that they had committed such an offense.  Here, unlike in *Olivet*, it is simply not true that Plaintiffs committed the crimes charged, let alone that they pleaded guilty to them, or that someone was killed.  *Cf. Olivet*, 2024 WL 1892563, at *5 & n.10.

The second case cited by Defendant for that proposition is *Rouch*.  There, the defendant reported that plaintiff had been "charged" with sexual assault, when the plaintiff had been arrested, but not charged.  The case went to trial, the verdict was appealed to the Court of Appeals, and then the Michigan Supreme Court.  Thus, the question of whether the report was "substantially true" occurred long after discovery had closed, after "painstaking review of the whole record," based on "testimony and documents from trial."  *Rouch*, 487 N.W.2d at 218, 220. Similarly, Third Circuit precedent requires development of the whole record here, when Defendant's affirmative defense—that his statement was true—is not "apparent on the face of the complaint."  *Schmidt*, 770 F.3d at 249.  Therefore, the affirmative defense of substantial t truth is not viable as a defense, at least at this Motion to Dismiss.[10]

*       *       *

For the reasons set forth above, Defendant's Motion to Dismiss shall be denied as to

---

[10] Defendant also suggests that because one of the victims of the 1989 attack, Meilli, was beaten to near-death, his statement that someone was "killed . . . ultimately" was substantially true.  In Defendant's view, there is no material difference between her near-death experience and someone being "killed . . . ultimately."  Unorthodox as that parallelism may be, whether the "gist" of Defendant's statement was substantially true because it incorrectly stated that Meilli was killed ultimately rather than beaten to near-death "raise[s] factual issues inappropriate for resolution on a motion to dismiss."  *Trump v. Am. Broad Companies, Inc.*, 742 F. Supp.3d 1168, 1180 (S.D. Fla. July 24, 2024).

Plaintiffs' defamation claim.[11]

### B. False Light

In Pennsylvania, a party is subject to liability for false light if they publicize "a matter concerning another that places the other before the public in a false light," and if "the false light in which the other was placed would be highly offensive to a reasonable person." *Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898, 905 (Pa. Super. 2016) (quoting Restatement (Second) of Torts § 652E (Am. L. Inst. 1977)). "The required standard of fault in a false light claim is . . . actual malice." *Rubin v. CBS Broadcasting Inc.*, 170 A.3d 560, 568 n.9 (Pa. Super. 2017).

Defendant argues that Plaintiffs failed to sufficiently allege that Defendant acted with actual malice.[12] To plausibly plead actual malice, a plaintiff must plead facts supporting the conclusion that "the defendant acted with knowledge of the falsity of the statement or in reckless disregard as to truth or falsity." *Krajewski*, 53 A.3d at 807-08 (citing *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967)).

Plaintiffs have done so here. They allege the following: in 2013, Defendant tweeted about his experience watching a documentary detailing Plaintiffs' coerced admission of guilt, subsequent not-guilty plea, conviction, and exoneration; in 2014, Defendant wrote an editorial in

---

[11] In their brief, Plaintiffs maintain that their Complaint includes a defamation-by-implication theory. But, while the Complaint does contain some passing references to legal terms that inform this theory, to wit the words "innuendos and implications", they do not articulate what defamatory meaning they think is implied by Defendant's statements. *Menkowitz v. Peerless Publications, Inc.*, 176 A.3d 968, 982 (Pa. Super. 2017) ("The legal test to be applied to determine whether a statement is defamatory by implication is whether the challenged language can fairly and reasonably be construed to imply the defamatory meaning *alleged by a plaintiff*." (emphasis added) (internal quotations omitted)), *vacated and remanded on other grounds*, 211 A.3d 797 (Pa. 2019). Given this lack, Plaintiff's defamation-by-implication theory will be dismissed without prejudice. A "dismissal without prejudice only 'indicates,' as a general matter, that there has been no adjudication on the merits of the claim." *ITT Corp. v. Intelnet Intern.*, 366 F.3d 205, 214 n.17 (3d Cir. 2004).

[12] In his briefing, Defendant primarily argued that Plaintiffs' false light claim must be dismissed for the same reasons he argued their defamation claim must be dismissed. Those arguments were rejected above, and the same analysis holds true for Plaintiffs' false light claim. *Graboff*, 744 F.3d at 137 ("Pennsylvania inferior courts consistently apply the same analysis to both types of claims when the causes of action are based on the same set of underlying facts." (citing *Krajewski*, 53 A.3d at 809)).

the New York Daily News responding to Plaintiffs' civil settlement with the City of New York; and, in 2019, Defendant did not assert that Plaintiffs pleaded guilty, when directly asked his thoughts on Plaintiffs. Further, at oral argument, Defendant's counsel conceded that Defendant is closely familiar with Plaintiffs' not-guilty plea, conviction, and subsequent exoneration, such that he knows that Plaintiffs did not plead guilty or hurt anyone. Thus, it can be plausibly inferred that Defendant had sufficient knowledge of Plaintiffs' wrongful conviction and exoneration to have understood that Plaintiffs did not plead guilty, nobody died as a result of the crimes that day in Central Park, and Plaintiffs are indeed not guilty.

Because Plaintiffs have plausibly alleged actual malice, Defendant's Motion to Dismiss shall be denied as to Plaintiffs' false light claim.

### C. Intentional Infliction of Emotional Distress

To state a claim for IIED under Pennsylvania law, Plaintiffs must plausibly allege: (1) extreme and outrageous conduct by Defendant; (2) which is intentional or reckless; and, (3) causes severe emotional distress. *Gilbert v. Feld*, 788 F. Supp. 854, 862 (E.D. Pa. 1992) (citation omitted). The first element requires Plaintiffs to point to some behavior from Defendant that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citations and quotations omitted). Only the most egregious behavior will clear that high bar. *See Rinehimer v. Luzerne Cnty. Cmty. Coll.*, 539 A.2d 1298, 1305 (Pa. Super. 1988). Examples of behavior sufficiently egregious to support an IIED claim include: "(1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press

17

false medical records diagnosing the plaintiff with a fatal disease." *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp.2d 739, 756 (M.D. Pa. 2009) (citing *Hoy*, 720 A.2d at 754). But "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" are not enough. *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)).

### i. Outrageous Conduct

Generally, one defamatory statement cannot support a claim for IIED. *Jones v. Johnson & Johnson*, 1995 WL 549042, at *2 (E.D. Pa. Sept. 13, 1995) ("[F]alse accusations and defamation in our society cannot be viewed as outrageous, atrocious and utterly intolerable conduct. If it were, virtually every defamation claim would be accompanied by one of infliction of emotional distress."). But—as Plaintiffs note—"Pennsylvania courts have stressed that 'continuing malicious actions' are more likely to be deemed 'extreme and outrageous.'" *Smith v. RB Distribution, Inc.*, 515 F. Supp.3d 311, 318 (E.D. Pa. 2021) (citing *John v. Philadelphia Pizza Team, Inc.*, 209 A.3d 380, 385 (Pa. Super. 2019)). When a plaintiff predicates their IIED claim on a defendant's continuing malicious actions, courts consider "conduct that precedes the two-year limitations period" in their analysis, *id.* at 316, so Defendant's statements long before the 2024 Debate come into play.

Plaintiffs argue that, since 1989, Defendant has engaged in a "continuing malicious" harassment campaign. As alleged, Defendant's purported harassment campaign consisted of: (1) Defendant taking out the 1989 ad calling for Plaintiffs' execution; (2) Defendant's two tweets about Plaintiffs in 2013; (3) an editorial Defendant wrote about Plaintiffs' settlement with the City of New York in 2014; (4) a response to a question about Plaintiffs that was asked by a journalist in 2019; and, (5) Defendant's comments at the Debate in 2024.

Whether these facts rise to the level of outrageousness necessary to support an IIED claim need not be answered at present, however, because Plaintiffs' IIED allegations are deficient in another respect.

### ii. *Physical Harm*

In his briefing, Defendant argues that Plaintiffs have not plausibly alleged that they suffered from physical harm, seemingly in part because they have not included medical evidence of such harm in their Complaint. At oral argument, Defendant's counsel clarified that the argument was only that Plaintiffs failed to allege physical harm; medical evidence of such harm at the motion to dismiss stage is not necessary.

Although "most federal district courts in this circuit have declined to require specific allegations of medical evidence at the motion to dismiss stage," *Kornegey v. City of Philadelphia*, 299 F. Supp.3d 675, 684 (E.D. Pa. 2018) (collecting cases), "in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury." *Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. 1994); *see also Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. 1993); *Kelly v. Resource Housing of America, Inc.*, 615 A.2d 423, 426 (Pa. Super. 1992); *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1222-23 (Pa. Super. 2004).

Plaintiffs have not alleged that they suffered any physical harm in their Complaint. The only allegation about harm is that, as a result of Defendant's comments, they have suffered "severe emotional distress and reputational damage." That is not sufficient to substantiate an IIED claim, and so the claim must be dismissed. *Id.*; *see also Rudas v. Nationwide Mut. Ins. Co.*, 1997 WL 11302, at *6 (E.D. Pa. Jan. 10, 1997) ("Because plaintiff has not pled physical injury, her claim for intentional infliction of emotional distress will be dismissed.") (collecting cases).

IV.     CONCLUSION

Plaintiffs request that, should any of their claims be dismissed, they be given leave to amend.  The Federal Rules require that "leave [to amend] be freely given when justice so requires."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing Fed. R. Civ. P. 15(a)).  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  *Id.*  No such grounds are present here.  Thus, Plaintiffs' defamation claim, to the extent that it is based on a defamation-by-implication theory, and their IIED claim will be dismissed without prejudice, thus allowing Plaintiffs leave to amend their Complaint with respect to that theory and that claim.

An appropriate order follows.

                                                **BY THE COURT:**

                                                **S/ WENDY BEETLESTONE**

                                                _____

                                                **WENDY BEETLESTONE, J.**