# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| YUSEF SALAAM, et al., | Case No. 2:24-cv-05560-WB |
| *Plaintiffs*, | **MOTION TO DISMISS** |
| *v.* | **(42 Pa.C.S. § 8340.11 *et seq.*)** |
| DONALD J. TRUMP, | |
| *Defendant*. | |

## DEFENDANT DONALD J. TRUMP'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT .......................................................................................................................3

   I.   UPEPA Applies to this Case.......................................................................................3

      A.   State Substantive Law Applies in Diversity Cases under the *Erie* Doctrine ...........................................................................................................4

      B.   This Case is a Diversity Case.............................................................................4

      C.   Pennsylvania Substantive Law Applies in this Case.......................................4

      D.   UPEPA is a Substantive Pennsylvania State Law ............................................5

         1.   No conflict exists between the UPEPA and Federal Procedural Rules. ...................5

            a.   There is no conflict between UPEPA's grant of civil immunity and federal procedural rules.........................................................................6

            b.   There is no conflict between UPEPA's attorney fees and cost shifting provisions and the federal rules. ................................................7

            c.   There is no conflict between UPEPA's right to interlocutory appeal and federal procedural rules.........................................................7

         2.   UPEPA is outcome determinative and failure to apply UPEPA would encourage forum-shopping and create inequitable administration of the law...........................................................................................................9

         3.   No countervailing federal interests prevent this Court from applying UPEPA......................................................................................................10

   II.   All Plaintiffs' Claims Should be Dismissed under UPEPA. .........................................11

      A.   UPEPA Provides Special Protection From Suit for Protected Public Expression ........................................................................................................11

      B.   All Allegations in this Case Stem from President Trump's Protected Public Expression ...........................................................................................11

      C.   UPEPA Immunizes President Trump from Civil Liability for Plaintiffs' IIED Claim Based on the Court's April 10 Order. ........................................12

      D.   Plaintiffs' Amended Complaint Again Fails To State a Claim for IIED. .......13

      E.   Plaintiffs' Amended Complaint Fails To State A Claim For Defamation. .....15

      F.   Plaintiffs' Amended Complaint Fails To State A Claim For False Light.......18

CONCLUSION..................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Arkansas Educ. Television Comm'n v. Forbes,*
 523 U.S. 666 (1998)................................................................................................11

*Baker v. Lafayette Coll.,*
 516 Pa. 291 (1987)........................................................................................... 15, 18

*Bowley v. City of Uniontown Police Dep't,*
 404 F.3d 783 (3d Cir. 2005) ...............................................................................11

*Byrd v. Blue Ridge Rural Elec. Coop., Inc.,*
 356 U.S. 525 (1958) ............................................................................................. 10

*Chamberlain v. Giampapa,*
 210 F.3d 154 (3d Cir. 2000) ........................................................................ 4, 5, 9, 10

*Cheney v. Daily News L.P.,*
 654 Fed.Appx. 578 (3d Cir. 2016) ..................................................................... 13

*Clark v. Twp. of Falls,*
 890 F.2d 611 (3d Cir. 1989) ............................................................................... 14

*Cohen v. Beneficial Industrial Loan Corp.,*
 337 U.S. 541 (1949)............................................................................................... 8

*Connick v. Myers,*
 461 U.S. 138 (1983)..............................................................................................11

*Corabi v. Curtis Publ'g Co.,*
 441 Pa. 432 (1971)............................................................................................... 15

*Cox v. Keystone Carbon Co.,*
 861 F.2d 390 (3d Cir. 1988) ............................................................................... 13

*Erie R.R. v. Tompkins,*
 304 U.S. 64 (1938).......................................................................................... 1, 2, 3

*Fanelle v. LoJack Corp.,*
 79 F.Supp.2d 558 (E.D. Pa. 2000) ..................................................................... 17

*Fenico v. City of Philadelphia,*
 No. 20CV3336,
 2024 WL 4591798 (E.D. Pa. Oct. 28, 2024)......................................................11

*Fla. Star v. B. J. F.*,
    491 U.S. 524 (1989) ..................................................................................... 11

*Gasperini v. Center for Humanities, Inc.*,
    518 U.S. 415 (1996) ..................................................................................... 5

*Gillespie v. United States Steel Corp.*,
    379 U.S. 148 (1964) .................................................................................. 7, 8

*Giuffe v. Bissell*,
    31 F.3d 1241 (3d Cir. 1994) ........................................................................ 8

*Graboff v. Colleran Firm*,
    744 F. 3d 128 (2014) ............................................................................ 18, 19

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ..................................................................................... 9

*Hill v. Borough of Doylestown*,
    2015 WL 1874225 (E.D. Pa. Apr. 23, 2015) ............................................. 14

*Hoelzle v. Vensure Emp. Servs.*,
    2022 WL 3588025 (E.D. Pa. Aug. 22, 2022) .............................................. 7

*Hoy v. Angelone*,
    720 A.2d 745 (Pa. 1998) ............................................................................ 13

*In re City of Philadelphia Litigation*,
    49 F.3d 945 (3d Cir. 1995) ........................................................................ 8

*Jakes v. Youngblood*,
    2025 WL 1208278 (W.D. Pa. April 25, 2025) ........................................... 6

*Jordan v. Pennsylvania State Univ.*,
    276 A.3d 751 (Pa. 2022) ............................................................................ 13

*King v. National R.R. Passenger Corporation*,
    2024 WL 665335 (E.D. Pa. February 16, 2024) ........................................ 6

*Krajewski v. Gusoff*,
    53 A.3d 793 (2012) ..................................................................................... 19

*Langer v. Kiser*,
    57 F.4th 1085 (9th Cir. 2023) ..................................................................... 7

*Larsen v. Philadelphia Newspapers, Inc.*,
    375 Pa. Super. 66 (1988) ........................................................................... 18

*Leon v. Hanoch*,
2025 WL 62806 (E.D. Pa. January 8, 2025) ............................................................... 7

*Liggon-Redding v. Estate of Sugarman*,
659 F.3d 258 (3d Cir. 2011) ....................................................................................... 4

*Manfred v. National R.R. Passenger Corp.*,
106 F.Supp.3d 678 (W.D. Pa. 2015) .......................................................................... 6

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) .................................................................................................. 17

*Menkowitz v. Peerless Publications, Inc.*,
176 A.3d 968 (2017) ................................................................................................. 15

*Monge v. Univ. of Pennsylvania*,
No. CV 22-2942,
2023 WL 3571935 (E.D. Pa. May 19, 2023) ............................................................ 17

*Morgenstern v. Fox Television Stations of Philadelphia*,
No. CIV.A. 08-0562,
2008 WL 4792503 (E.D. Pa. Oct. 31, 2008) ............................................................ 17

*Motheral v. Burkhart*,
400 Pa. Super. 408, 583 A.2d 1180 (1990) .............................................................. 14

*Neff v. General Motors Corp.*,
163 F.R.D. 478 (E.D. Pa. November 7, 1995) ........................................................... 7

*Northon v. Rule*,
637 F.3d 937 (9th Cir. 2011) ...................................................................................... 7

*Olivet Univ. v. Newsweek Digital LLC*,
No. 23 CIV. 5670 (NRB),
2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024) .......................................................... 18

*Paramount Aviation Corp. v. Agusta*,
178 F.3d 132 (3d Cir. 1999) ..................................................................................... 10

*Rouch v. Enquirer & News of Battle Creek Michigan*,
487 N.W.2d 205 (Mich. 1992) ................................................................................. 18

*Ruder v. Pequea Valley Sch. Dist.*,
790 F. Supp. 2d 377 (E.D. Pa. 2011) ....................................................................... 13

*San Diego v. Roe*,
543 U.S. 77 (2004) .................................................................................................... 11

*Schmigel v. Uchal*,
    800 F.3d 113 (3d Cir. 2015) ................................................................................ 9

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................................................ 10

*Smith v. American Red Cross*,
    No. CIV.A. 93-6732,
    1994 WL 22688 (E.D. Pa. Jan. 27, 1994) ............................................................ 6

*Snyder v. Phelps*,
    131 S. Ct. 1207 (2011) ......................................................................................11

*Stack v. Boyle*,
    342 U.S. 1 (1952) .............................................................................................. 8

*Thomas Merton Center v. Rockwell Int'l Corporation*,
    497 Pa. 460 (1981)
    *cert. denied* 457 U.S. 1134 (1982) .................................................................. 15

*Tucker v. Fischbein*,
    237 F.3d 275 (3d Cir. 2001) ............................................................................ 15

**Statutes**

42 Pa. Cons. Stat. § 5523(1) ................................................................................ 12

42 Pa.C.S. § 8340.12 ........................................................................................ 10

42 Pa.C.S. § 8340.13(3) .....................................................................................11

42 Pa.C.S. § 8340.17 .......................................................................................... 2

42 Pa.C.S. § 8340.17 ........................................................................................ 10

42 Pa.C.S. § 8340.18 .......................................................................................... 2

42 Pa.C.S. § 8340.18 .......................................................................................... 9

Pa. C.S.A. § 5524 ............................................................................................. 12

**Other Authorities**

Pa. H. Legis. Journal, 207th Gen. Assemb., Reg. Sess. 1846 (Oct. 4, 2023) ................ 12

## INTRODUCTION

Plaintiffs sue President Donald Trump for statements made during a September 2024 presidential debate where he responded to Vice President Harris's accusation that he placed a 1989 newspaper ad concerning the Central Park Five Case to target innocent Black and Latino youths with the death penalty. In his response, President Trump discussed his decades-old opinion, which was made after Plaintiffs' confessions to that crime but before their exonerations.[1] Even though the Plaintiffs recanted their inculpatory statements, they were later convicted for the crime based largely on those statements and imprisoned until someone else confessed. In response to Vice President Harris's accusation, President Trump provided necessary historical context to explain his thoughts behind the 1989 statement. President Trump's responsive explanation for his decades-old statement did not constitute new defamatory statements about the Plaintiffs.

The Plaintiffs' allegations should be dismissed under Pennsylvania's Uniform Public Expression Protection Act. 42 Pa.C.S. §§ 8340.11–8340.14, § 8340.15(1)(ii), § 8340.17–18 ("UPEPA").[2] This case comes before this Court under diversity jurisdiction. Amend. Compl. ¶ 13; 28 U.S.C. § 1332(a). Under the *Erie* Doctrine, Pennsylvania's substantive law applies unless it conflicts with federal procedural rules or there is an overriding countervailing federal priority. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) ("*Erie*"). Applying state law becomes more urgent under the *Erie* Doctrine when failure to apply substantive state law would result in forum-shopping or differing results depending on whether the case is brought in state or federal court. *Id.*

---

[1] The Complaint is not precise as to the timing of the Plaintiffs' recantations.

[2] As used in this brief, UPEPA refers to the substantive UPEPA code sections already enacted (42 Pa.C.S. §§ 8340.11–8340.14, § 8340.15(1)(ii), § 8340.17–18), not the procedural UPEPA provisions still awaiting implementation by the Pennsylvania Supreme Court.

UPEPA grants civil immunity from suit for protected public expression when lawsuits are based on protected speech and the non-moving party fails to state a claim upon which relief may be granted. *Id.* Here, all allegations in the Amended Complaint are solely based on President Trump's protected speech about public policy during a televised presidential debate, Amend. Compl. ¶ 1, and Plaintiffs' claims fail as a matter of law.

While Plaintiffs' claims could and should be dismissed under the identical dismissal standards of both Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and UPEPA,[3] UPEPA provides distinct substantive relief in the form of immunity from civil liability, mandatory attorney fees, costs, and litigation expenses, and an immediate right to appeal. 42 Pa.C.S. §§ 8340.15, 8340.17, 8340.18. In its April 10 Order, this Court treated President Trump's motion under UPEPA as a Rule 12(b)(6) motion and dismissed Plaintiffs' Intentional Infliction of Emotional Distress (IIED) claim from their original Complaint but not Plaintiffs' Defamation and False Light claims. April 10 Order at 20. The Court did not determine whether UPEPA applied or apply it. President Trump therefore moves that this Court apply UPEPA to find that he is immune from civil liability for Plaintiffs' IIED claim and apply UPEPA to Plaintiffs' Defamation and False Light claims.

## BACKGROUND

Plaintiffs bring claims for defamation, false light, and IIED against Defendant President Trump arising from his statements regarding the "Central Park Five" during a Presidential Debate with Vice President Harris. Amend. Compl. ¶¶ 42–46. The "Central Park Five" case was a highly publicized controversy from 1989 involving the assault and rape of a jogger in Central Park. *Id.* ¶ 16. Days after the attack, immediately after Plaintiffs confessed to being involved, President Trump

---

[3] This Court previously stated that the dismissal standards of § 8340.15(1)(ii) and Rule 12(b)(6) are identical. Dkt. 37 ("April 10 Order") at n.3.

took out a newspaper ad ("Ad") calling for the death penalty for those responsible (he did not name the Plaintiffs). *Id.* ¶ 25. The Plaintiffs later recanted their confessions and were eventually convicted. Then, over ten years later, they were exonerated after a different perpetrator confessed to the crime. *Id.* ¶ 39.

At a September 10, 2024, Presidential debate, Vice President Harris referenced President Trump's 1989 ad:

> Let's remember, this is the same individual [President Trump] who took out a full-page ad in the New York Times calling for the execution of five young Black and Latino boys who were innocent, The Central Park Five.

Amend. Compl. ¶ 46.

President Trump responded to Vice President Harris's accusation that the Ad stemmed from racist motives, stating his factual understanding of the Central Park assaults at the time he took out the ad thirty-five years prior:

> … They come up with things like she [Vice President Harris] just said, going back many, many years, when a lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five. They [Plaintiffs] admitted—they said they pled guilty. And I said, well if they pled guilty, they badly hurt a person, killed a person ultimately. And if they pled guilty—then they pled we're not guilty. But this is a person [Vice President Harris] that has to stretch back years, forty, fifty years ago, because there is nothing now.

Amend. Compl. ¶46.

## ARGUMENT

### I.    UPEPA Applies to this Case

Because this case is a diversity case arising from alleged actions in Pennsylvania, the substantive law of Pennsylvania applies so long as it does not conflict with federal procedural rules. *Erie* at 64. UPEPA does not conflict with federal rules, meets the twin aims of the *Erie* doctrine, and there is no countervailing federal priority that would prevent its application. This

Court should apply UPEPA to the Complaint's allegations and immunize President Trump from civil liability.

### A.  State Substantive Law Applies in Diversity Cases under the *Erie* Doctrine

Under the *Erie* doctrine "[a] federal court sitting in diversity must apply state substantive law and federal procedural law." *Liggon-Redding v. Estate of Sugarman* 659 F.3d 258, 262 (3d Cir. 2011) (citing *Erie*). "This substantive/procedural dichotomy of the *Erie* rule must be applied with the objective that in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court will be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Chamberlain v. Giampapa*, 210 F.3d 154, 158–59 (3d Cir. 2000) (cleaned up).

### B.  This Case is a Diversity Case

The Amended Complaint acknowledges that "[t]his Court has subject matter jurisdiction because the Plaintiffs and the Defendant are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." Amend. Compl. ¶ 13 (citing 28 U.S.C. § 1332(a), the federal diversity jurisdiction statute).

### C.  Pennsylvania Substantive Law Applies in this Case

The Amended Complaint alleges that President Trump's statements at issue in this case, upon which all of the allegations are based, were made by him in Philadelphia, Pennsylvania, Amend. Compl. ¶ 1, and that "a substantial part of the events or omissions giving rise to the claim occurred in" the Eastern District of Pennsylvania. *Id*., ¶ 14. The Amended Complaint itself asserts claims that are exclusively based on Pennsylvania common law. *Id*., ¶¶ 103–141.

### D.  UPEPA is a Substantive Pennsylvania State Law

The Third Circuit has set out a three-part test to determine whether a state law is substantive or procedural. *Id.* First, a court must determine whether there is a direct collision between a federal rule and the state law; if there is a direct conflict, the federal rule applies. *Id.* If there is no "direct collision," then the court determines "whether the state law is outcome-determinative and whether failure to apply the state law would frustrate the twin aims of the Erie Rule to discourage forum shopping and avoid inequitable administration of the law." Finally, the court must consider "whether any countervailing federal interests prevent the state law from being applied in federal court." *Id.*  UPEPA decisively satisfies all three of these factors, establishing that UPEPA is a substantive state law.

### 1.  No conflict exists between the UPEPA and Federal Procedural Rules.

When applying the *Erie* doctrine, a "direct collision" between a federal and state rule means that the federal rule is sufficiently broad to control the issue before the court leaving no room for the operation of state law. *Chamberlain*, 201 F.3d at 159. "Although the Rules should be given their plain meaning and are not to be construed narrowly in order to avoid a direct conflict, a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits." *Id.* (cleaned up). "Federal courts have interpreted the Federal Rules, however, with sensitivity to important state interests and regulatory policies." *Id.* (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 at n. 7 (1996)).

Here, there is no conflict between federal procedural rules and UPEPA provisions regarding immunity from suit, attorney fee and cost shifting, and the right to interlocutory appeal.

### a. There is no conflict between UPEPA's grant of civil immunity and federal procedural rules.

UPEPA, at 42 Pa.C.S. § 8340.15(1)(ii), mirrors the dismissal standard outlined in Rule 12(b)(6): failure to state a cause of action upon which relief can be granted.[4] This Court already noted that "these standards are the same." April 10 Order 6 at n. 3. If two rules are the same, they do not conflict.

Moreover, federal courts regularly grant defendants immunity from suit based on substantive state laws without deeming there to be a conflict with federal rules. *See, e.g., King v. National R.R. Passenger Corporation*, 2024 WL 665335 (E.D. Pa. February 16, 2024) (applying statute providing civil immunity for railroads, 42 Pa.C.S. § 8339.1, in federal diversity action); *Manfred v. National R.R. Passenger Corp.*, 106 F.Supp.3d 678, 682 (W.D. Pa. 2015) (same); *Smith v. American Red Cross*, No. CIV.A. 93-6732, 1994 WL 22688, at *2 (E.D. Pa. Jan. 27, 1994) (applying state statute providing civil immunity based on diseases contracted from transplanted bodily fluid and tissue, 42 Pa.C.S. § 8333, in federal court).

Just as federal courts in Pennsylvania have applied state law to immunize railroads and organ transplants from civil liability, there is no conflict between UPEPA's civil immunity for free speech and federal procedural rules.

---

[4] To date, the only other federal court to examine the application of UPEPA to a federal diversity action held that there was a conflict between the application of 42 Pa.C.S. § 8340.15(1)(i) and the federal rules, but this case is distinguishable. The defendant in that action did not utilize the standard under F.R.C.P. 12(b)(6) included in 42 Pa.C.S. § 8340.15(1)(ii), and instead sought to require the introduction of evidence. *Jakes v. Youngblood*, 2025 WL 1208278 *4 (W.D. Pa. April 25, 2025). The court held that the requested application of the law conflicted with the federal rules because it "essentially supplants the Rule 12(b)(6) motion to dismiss standard with the Rule 56 summary judgment standard." *Id.* President Trump solely seeks to utilize the standards under F.R.C.P. 12(b)(6), thus, as this Court already noted in its April 10 Order at n. 3, there is no conflict.

**b.      There is no conflict between UPEPA's attorney fees and cost shifting provisions and the federal rules.**

State law fee and cost shifting provisions like UPEPA's, 42 Pa.C.S. § 8340.18, are regularly applied in federal courts, including by this Court earlier this year.  *See, e.g., Leon v. Hanoch*, 2025 WL 62806 (E.D. Pa. January 8, 2025) (applying the cost shifting provisions of 42 Pa. Cons. Stat. § 8340.2(a)(1)–(b) while sitting in diversity); (*Hoelzle v. Vensure Emp. Servs.*, 2022 WL 3588025, at **5–6 (E.D. Pa. Aug. 22, 2022) (awarding fees under the Pennsylvania Wage Payment and Collection Law); *Neff v. General Motors Corp.*, 163 F.R.D. 478, 482 (E.D. Pa. November 7, 1995) (noting application of fees provisions under the Pennsylvania Unfair Trade Practices and Consumer Protection Law); *see also, Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the *Erie* doctrine."). There is no conflict with fee and cost shifting provisions and the federal rules; they are substantive laws that should be applied in diversity cases under the *Erie* doctrine.

**c.      There is no conflict between UPEPA's right to interlocutory appeal and federal procedural rules.**

Finally, there is no conflict between UPEPA provisions granting the right to interlocutory appeal, 42 Pa.C.S. § 8340.17, and the collateral order doctrine.[5] "Although 28 U.S.C. § 1291 vests the courts of appeals with jurisdiction over appeals only from final decisions of the district courts, a decision final within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152 (1964) (cleaned

---

[5] California's anti-SLAPP provides immediate appeal of anti-SLAPP denials but not through immunity as Pennsylvania law does. However, courts sitting in diversity and applying California anti-SLAPP nevertheless have stated that there is no conflict with California's immediate right to appeal and the federal rules. *See Langer v. Kiser*, 57 F.4th 1085, 1104 (9th Cir. 2023) ("The denial of an anti-SLAPP motion is an immediately appealable final decision pursuant to the collateral order doctrine.").

up). "[A] decision of a district court is appealable if it falls within 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" One "major characteristic" of a "collateral order" is that "unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all." *Id.* (quoting *Stack v. Boyle*, 342 U.S. 1, 12 (1952)). This is one such order.

Immunity is not merely a "defense to liability." *Giuffe v. Bissell*, 31 F.3d 1241, 1245 (3d Cir. 1994). It is "an entitlement not to stand trial or face the other burdens of litigation," a right which would be "effectively lost if a case is erroneously permitted to go to trial" *In re City of Philadelphia Litigation* 49 F.3d 945, 956 (3d Cir. 1995). This right to not have to face trial and the burdens of litigation for one's protected public expression is exactly what the Pennsylvania legislature intended UEPA to establish. 42 Pa.C.S. § 8340.12 (stating UPEPA was passed due to the "disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression" that have "forced [litigants] to defend against meritless claims.").

There is no conflict between UPEPA's immediate right to appeal and the federal rules because a denial of immunity under UPEPA meets the criteria for a collateral order. Under the collateral order doctrine, a court order may be appealed before the case is concluded if it conclusively determines and important and severable question, and that decision is effectively unappealable after a final judgement is rendered. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). Similarly, an immunity right under UPEPA is collateral to the action and if its denial is not reviewed before the proceeding terminates, its value is lost and the right is effectively nullified. Therefore, there is no conflict between UPEPA's immediate appeal right and federal rules.

\*        \*        \*        \*

Accordingly, UPEPA satisfies all three factors established by the Third Circuit for determining when a state law is substantive law.

### 2. UPEPA is outcome determinative and failure to apply UPEPA would encourage forum-shopping and create inequitable administration of the law.

The objective of the *Erie* rule is that "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in federal court [will] be substantially the same, so far as the legal rules determine the outcome of the litigation, as it would be if tried in a State court." *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015) (quoting *Chamberlain*, 210 F.3d at 158).  A provision of state law is outcome determinative when its application or non-application would significantly impact the result of the litigation. *Id.* When a federal court sitting in diversity is faced with a question of whether to apply state law, the court should ask:

> [W]hether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would likely cause a plaintiff to choose the federal court.

*Hanna v. Plumer*, 380 U.S. 460, 468 at n. 9 (1965).

If this Court does not apply UPEPA, the outcome in this case will be different than if this case had been filed in state court. In a state court applying UPEPA, since the allegations of the complaint arise from protected speech, dismissal of Plaintiffs' IIED claim would trigger an automatic grant of immunity for that cause of action, 42 Pa.C.S. § 8340.18, and an award of fees and costs, 42 Pa.C.S. § 8340.18 ("If the party is immune . . . the court shall award the party attorney fees, court costs and expenses of litigation …"). Any denials of immunity would be immediately

appealable, 42 Pa.C.S. § 8340.17. If this Court does not apply UPEPA, it would incentivize plaintiffs to file lawsuits based on protected public expression in federal court rather than Pennsylvania state court to gain a significant and outcome determinative legal advantage. This defeats the twin aims of the *Erie* doctrine.

### 3. No countervailing federal interests prevent this Court from applying UPEPA.

Notwithstanding the "twin aims" of the *Erie* doctrine, if a "strong countervailing federal interest dictates application of the federal rule, the federal rule controls." *Chamberlain*, 210 F.3d at 159. Some examples of "countervailing interests" deemed controlling over state law include interests in class certification, *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), interests in a right to a jury trial, *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525 (1958), and interests in the preclusive effect of prior federal decisions, *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999). Here, there is no countervailing federal interest that would override Pennsylvania's stated public policy interest in curbing the "disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression" and encouraging "continued public participation in matters of public significance." 42 Pa.C.S. § 8340.12.

\* \* \* \*

Because this Court is sitting in diversity, it must apply state substantive law that does not conflict with federal procedural rules. UPEPA is a substantive Pennsylvania law that does not conflict with federal procedural rules or other federal interests, and it should be applied here to avoid forum-shopping and disparate outcomes between state and federal actions applying the same law. This Court should therefore allow President Trump to avail himself of UPEPA's protections.

## II.    All Plaintiffs' Claims Should be Dismissed under UPEPA.

UPEPA requires dismissal for any cause of action stemming from protected public expression which fails to state a claim upon which relief can be granted. 42 Pa.C.S. § 8340.15. All Plaintiffs claims arise from protected public expression and do not allege facts sufficient to support a claim.

### A.   UPEPA Provides Special Protection From Suit for Protected Public Expression

UPEPA provides immunity from civil liability for any claim based on "protected public expression." 42 Pa. C.S. §§ 8340.15; 8340.13(3). Protected public expression includes speech on matters of public concern. *Id.* "Speech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,'" *Snyder v. Phelps,* 562 U.S. 443, 453 (2011) (citing *Connick v. Myers,* 461 U.S. 138, 146 (1983)), "or when it 'is a subject of general interest and of value and concern to the public.'" *Id.* (citing *San Diego v. Roe,* 543 U.S. 77, 83–84 (2004)). Speech involving policing, crime, and punishment is a "subject of general interest and of value and concern to the public." *Fenico v. City of Philadelphia,* No. 20CV3336, 2024 WL 4591798, at *10 (E.D. Pa. Oct. 28, 2024); *see also, Bowley v. City of Uniontown Police Dep't,* 404 F.3d 783, 787-88 (3d Cir. 2005) ("[T]he commission and investigation of violent crimes ... are matters of 'paramount public import.'") (quoting *Fla. Star v. B. J. F.,* 491 U.S. 524, 536-37 (1989)); *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 693 (1998) (discussing a televised debate, holding that the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office").

### B.  All Allegations in this Case Stem from President Trump's Protected Public Expression

Plaintiffs have sued President Trump *solely* for one statement made during one presidential debate segment called "race and politics in this country" Compl. ¶¶ 1, 42.  The context of the

statement was, therefore, a forum exclusively designed to help the public learn more about President Trump and Vice President Harris in order to inform their votes in a forthcoming election and, further, the statements were emphatically in connection with a part of that debate about a serious and significant public concern – "race and politics."[6] This amply meets UPEPA's threshold for protected speech under 42 Pa.C.S. § 8340.13.

### C. UPEPA Immunizes President Trump from Civil Liability for Plaintiffs' IIED Claim Based on the Court's April 10 Order.

UPEPA grants immunity from suit to defendants when plaintiffs fail to state a claim upon which relief may be granted for a cause of action arising from protected public expression. In its April 10 Order, this Court dismissed Plaintiffs' IIED cause of action for failure to state a claim upon which relief can be granted under Federal Rule 12(b)6), and the speech upon which Plaintiffs' claim was based was protected speech. April 10 Order at 20. Thus, UPEPA immunizes President Trump from civil suit for Plaintiffs IIED claim based on that Order.

UPEPA's legislative history underscores that this swift and certain remedy was exactly what the state intended. Representative Klunk emphasized that Act 72 is meant "to ensure Pennsylvanians are protected from frivolous lawsuits intended to silence free speech, saving defendants from incurring unnecessary legal fees simply for speaking out on important public issues." Pa. H. Legis. Journal, 207th Gen. Assemb., Reg. Sess. 1846 (Oct. 4, 2023) (statement of Rep. Klunk). Under UPEPA, Plaintiffs cannot reassert their IIED claim by amendment for another bite at the apple after it was dismissed under Rule 12(b)(6), because that would directly contravene this stated legislative purpose, undermine statutory immunity, and place unwarranted burdens upon

---

[6] Pennsylvania has a one-year statute of limitations for defamation and false light claims and a two-year statute of limitations for intentional infliction of emotional distress claims. 42 Pa. Cons. Stat. § 5523(1); Pa. C.S.A. § 5524. To the extent Plaintiffs seek recovery based on statements published between 1989 and 2019, Compl. ¶¶ 24, 51, 66-68, those claims are barred and fail as a matter of law.

protected speech. This Court should therefore determine that President Trump has civil immunity from Plaintiffs' IIED claims under 42 Pa.C.S. § 8340.15.

### D.  Plaintiffs' Amended Complaint Again Fails To State a Claim for IIED.

Plaintiffs' Amended Complaint still fails to allege "extreme and outrageous" conduct required for an IIED claim under Pennsylvania law. To establish an intentional infliction of emotional distress claim ("IIED") in Pennsylvania, a plaintiff must show that a defendant's conduct was: (1) extreme or outrageous; (2) intentional or reckless; (3) caused emotional distress; and (4) the distress must be severe. *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 397 (E.D. Pa. 2011); *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (Pa. 2022). The Third Circuit has emphasized that the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *see also Hoy v. Angelone*, 720 A.2d 745, 753–54 (Pa. 1998). "[I]t is for the court to determine if the defendant's conduct is so extreme as to permit recovery." *Cox*, 861 F.2d at 395. "Pennsylvania courts have been chary to declare conduct 'outrageous' to permit recovery for intentional infliction of emotional distress and have allowed recovery 'only in limited circumstances where the conduct has been clearly outrageous.'" *Id.* Here, the Amended Complaint contains no additional statements made which could rise to this level.

Courts have consistently found that defamation generally cannot constitute the type of "extreme or outrageous" conduct necessary to support a claim for intentional infliction emotional distress; it is generally reserved for gross and heinous actions, not speech. *Cheney v. Daily News L.P.*, 654 Fed.Appx. 578, 583-84 (3d Cir. 2016) (holding that a defamation claim did "not rise to the level of 'extreme and outrageous' because "Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse,

reckless diagnosis of a fatal disease, and having sexual contact with young children"); *Motheral v. Burkhart*, 400 Pa. Super. 408, 426, 583 A.2d 1180, 1190 (1990) (dismissing claim for intentional infliction of emotional distress based on making knowingly false accusations of criminal conduct to a police officer because such conduct is not "extreme" or "outrageous"); *Clark v. Twp. of Falls*, 890 F.2d 611, 623-624 (3d Cir. 1989) (reversing district court's denial of a motion for judgment as a matter of law by defendant employer accused of falsely investigating the plaintiff and publishing investigatory files against him).

President Trump's statements are not of the outrageous nature that would meet Pennsylvania's high burden. Over the last thirty-five years, Plaintiffs' Amended Complaint points to a handful of statements by President Trump alleging various things about the crimes for which Plaintiffs were tried, other related crimes, and Plaintiffs eventual exoneration. Amend. Compl. ¶¶ 1, 42.

Relating to the specific debate statements at issue in this suit, President Trump was responding to his political opponent's criticism of his 1989 ad in which she falsely and outrageously accused him of wanting innocent young Black and Latino boys to be executed. Defending the reason behind one's statement decades ago when someone accuses you, based on that statement, of desiring murder on the basis of race is not "beyond all possible bounds of decency" or "utterly intolerable." *Hill v. Borough of Doylestown*, 2015 WL 1874225, at *5 (E.D. Pa. Apr. 23, 2015). *Id.* Even if President Trump were not already immune, Plaintiffs have not met their burden.

14

### E. Plaintiffs' Amended Complaint Fails To State A Claim For Defamation.[7]

Under Pennsylvania law, a statement is defamatory only if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001) (citation omitted). However, statements must be viewed **in their full context** to determine their defamatory capability. *Baker v. Lafayette Coll.*, 516 Pa. 291, 296 (1987) (in determining "whether the communication complained of can be construed to have the defamatory meaning ascribed to it by the complaining party" the court "**must view the statements in context**") (emphasis added); *Thomas Merton Center v. Rockwell Int'l Corporation,* 497 Pa. 460, 465 (1981) *cert. denied* 457 U.S. 1134 (1982) ("[W]e **must consider the full context** of the article to determine 'the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'") (emphasis added) (quoting *Corabi v. Curtis Publ'g Co.*, 441 Pa. 432, 447 (1971)). A statement defames by implication when the challenged language can fairly and reasonably be construed to imply the defamatory meaning alleged by the plaintiff. *Menkowitz v. Peerless Publications, Inc.*, 176 A.3d 968 (2017).

Plaintiffs complain that President Trump's statements were either present allegations that Plaintiffs pled guilty, hurt someone badly, and killed someone ultimately, or statements implying

---

[7] In President Trump's first Motion to Dismiss, he moved the Court to dismiss Plaintiffs' defamation and false light claims under the UPEPA. President Trump acknowledges that in its April 10 Order, the Court deemed the motion to be one under Rule 12(b)(6), held that Plaintiffs' Defamation and False Light allegations stated a claim, and therefore denied the motion. However, the Court did not determine whether UPEPA applied or apply it to these claims. In the instant motion, President Trump reasserts his request to apply UPEPA because its application remains an undecided issue. Accordingly, President Trump raises arguments against the defamation and false light claims again here for the sake of making a complete UPEPA argument and to preserve the matter for appeal, if necessary. All arguments in President Trump's Motion to Dismiss the original Complaint are incorporated herein by reference. President Trump understands that the Court may treat its prior decision that the Complaint states claims upon which relief may be granted as the law of the case.

the same. Amend. Compl. ¶ 44. As alleged in the Complaint, Vice President Harris attacked President Trump for statements he made in a 1989 Ad about the Plaintiffs. Compl. ¶ 42. Vice President Harris criticized President Trump for his statement that the perpetrators of a brutal sexual assault of a person in New York's Central Park should receive the death penalty. *Id.* Consistent with the topic of "race and politics," Vice President Harris focused on the fact that the Plaintiffs were "young Black and Latino boys" and stated Plaintiffs were innocent. *Id.* Taken together, Vice President Harris's was falsely suggesting that President Trump was supposedly *at the time of his earlier statement* calling for the "execution" of "innocent" and "young Black and Latino boys."

President Trump responded to the accusation by giving an account of his own thinking and motivation for the 1989 Ad. Amend Compl. ¶¶ 42–46. President Trump prefaced his statements by noting that Vice President Harris was referring to something he said "going back many, many years." *Id.* Referring to when he placed the Ad—shortly after the assault, in light of the recent confessions,[8] and years before Plaintiffs were exonerated—President Trump stated his opinion that "a lot of people" agreed with him that the perpetrators of the crimes at issue, then believed to be the Plaintiffs based on their confessions, deserved the death penalty. *Id.* He then used qualifying language—"And I said, well"—suggesting that was recounting his past thoughts. *Id.* ¶ 44. Finally, he concluded by stating that Vice President Harris had to "stretch back years, forty, fifty years ago" to attack his motivations in 1989 "because there is nothing now." *Id*. ¶ 46. The full context of President Trump's statements clearly show he was reflecting on his past opinion about the application of the death penalty expressed in the 1989 Ad, a matter of significant public concern

---

[8] According to the Complaint, "Plaintiffs agreed to provide written and videotaped statements in which they falsely admitted to having been present during the assaults." Amend Compl. ¶ 20. Plaintiff Salaam did not videotape a confession, but "the police detectives allegedly took notes of his responses during his hours-long interrogation, in which Plaintiff Salaam also purportedly admitted to having been present during the assaults." *Id*. ¶ 21.

and government policy, responding to Vice President Harris's criticism for that exact statement of opinion, and not making a new and present statement of truth or any related implication of such about the Plaintiffs.

Further, it is an undisputed fact acknowledged in the Complaint that the Plaintiffs, when questioned about the crime, confessed to some degree, even if only to say the were present or aided the assault. *Id.*, ¶¶ 20–21, 53. That the President, responding in the moment to a race-baiting question about something he published 35 years earlier, said "They admitted – they said, they pled guilty . . . then they pled we're not guilty," instead of saying "they confessed and then they recanted their confession" is a distinction without a difference that does not constitute defamation.

It is proper for the court to resolve substantial truth defenses at the motion to dismiss stage when, as here, it can do so without going beyond the pleadings. *See Monge v. Univ. of Pennsylvania*, No. CV 22-2942, 2023 WL 3571935, at *9 (E.D. Pa. May 19, 2023) (dismissing a defamation claim with prejudice because the challenged statements were all "either at least substantially true or [] pure opinions"). It is only inappropriate to resolve a substantial truth defense at this stage when doing so would "take[] the Court beyond the pleadings" or otherwise require the Court not to accept the plaintiff's allegations as true. *See Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558, 562 (E.D. Pa. 2000); *Morgenstern v. Fox Television Stations of Philadelphia*, No. CIV.A. 08-0562, 2008 WL 4792503, at *9 (E.D. Pa. Oct. 31, 2008). Here, there is no obstacle to the Court resolving the substantial truth issue because the Court need not go beyond Plaintiffs' pleadings to find in President-elect Trump's favor: even if Plaintiffs' allegations are true, President-elect Trump's challenged statements would not "have a different effect on the mind of the [listener] from that which the pleaded truth would have produced." *Morgenstern*, 2008 WL 4792503, at *9 (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 497 (1991)).

The statement that Plaintiffs pleaded guilty was, for a layman, substantially true. In the mind of an average listener, an initial guilty plea that is then recanted and followed by a not guilty plea is substantially the same as an initial confession that is then recanted and followed by a not guilty plea. They would amount to the same thing to a layperson: an initial admission of guilt that is then withdrawn without legal effect. As well, courts have consistently found that a layperson's colloquial misstatements about the details of criminal law terminology can support a defense of substantial truth. See *Olivet Univ. v. Newsweek Digital LLC*, No. 23 CIV. 5670 (NRB), 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024); *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 215 (Mich. 1992).

In sum, President Trump solely addressed his statements at the debate to his personal recollection of why he expressed the opinion in the Ad three decades before. His memory of the reasons for stating his opinion in 2024, made in response to Vice President Harris's criticism, would not be understood by a reasonable listener to be an assertion that Plaintiffs are presently guilty of a thirty-five-year-old crime for which they have been formally exonerated. That is, that his remarks at the debate were not a present assertion of any wrongdoing by Plaintiffs that would "blacken [Plaintiffs'] reputation" or "expose [them] to public hatred, contempt, or ridicule." *Baker*, 516 Pa. at 296. Plaintiffs thus fail to state a cause of action for defamation.

### F.  Plaintiffs' Amended Complaint Fails To State A Claim For False Light.

Under Pennsylvania law, a false light claim requires the plaintiff to establish that the defendant published material "that 'is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity." *Graboff v. Colleran Firm*, 744 F. 3d 128, 136 (2014) (quoting *Larsen v. Philadelphia Newspapers, Inc.*, 375 Pa. Super. 66, 81 (1988)). "It is only when there is such a major misrepresentation of [a plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable

man in his position, that there is a cause of action for [false light]." *Krajewski v. Gusoff*, 53 A.3d 793, 807 (2012). Pennsylvania courts "apply the same analysis to both types of claims when the causes of action are based on the same set of underlying facts," including looking to a challenged statement's full context when evaluating its falsity. *Graboff*, 744 F.3d at 137 (citing *Krajewski*, 53 A.3d at 809).

Here, President Trump's challenged remarks cannot support a claim for false light because they contain no misrepresentations about Plaintiffs: President Trump's remarks were representations about *his own* thinking, understanding, and motives thirty-five years ago when he took out the ad, not representations about what Plaintiffs did or did not do. Amend. Compl. ¶ 42.

As stated above regarding Plaintiffs' defamation claim, the full context of President Trump's remarks makes clear that he was explaining his own factual impressions related to taking out the ad in 1989 and clarifying his thinking at that time to defend himself against Vice President Harris's accusation that he had acted with racist intentions. *Id.* When viewed in context, Plaintiffs' false light claim fails as President Trump's remarks do not misrepresent Plaintiffs in any way because they were not *about* Plaintiffs; they were about President Trump's past thinking when he took out the ad in 1989, long before their exonerations. *Id.*

## CONCLUSION

For the above reasons, Defendant Donald J. Trump asks the Court to grant him immunity under 42 Pa.C.S. § 8340.15.

Dated: May 15, 2025                              Respectfully submitted,

                                                By:  /s/ Karin M. Sweigart
                                                Karin M. Sweigart (PA No: 247462)
                                                DHILLON LAW GROUP INC.
                                                177 Post Street, Suite 700
                                                San Francisco, CA 94108
                                                Telephone: 415-433-1700
                                                Facsimile: 415-520-6593
                                                ksweigart@dhillonlaw.com
                                                *Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

Dated: May 15, 2025

                                                By:  /s/ Karin M. Sweigart