**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

YUSEF SALAAM,
ANTRON BROWN,
KEVIN RICHARDSON,
RAYMOND SANTANA, and
KOREY WISE,

                Plaintiffs,

      v.

DONALD J. TRUMP,

              Defendant.

Case No. 2:24-cv-05560-WB

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.    Introduction ............................................................................................................. 1

II.   Factual and Procedural Background.......................................................................... 2

III.  Legal Standard.......................................................................................................... 4

IV.   Argument .................................................................................................................. 5

      A.    The Court has already resolved most of the issues raised in Defendant's motion, and Defendant does not give any reason for the Court to reconsider its prior rulings. ............................................................................................................. 5

      B.    The Amended Complaint also states a defamation claim under a defamation-by-implication theory. ................................................................................................ 6

      C.    The Amended Complaint states a claim for intentional infliction of emotional distress under Pennsylvania law........................................................................... 8

            1.    The Amended Complaint alleges that Defendant's conduct was extreme and outrageous. ............................................................................................... 8

            2.    The Court's April 10 Order does not bar Plaintiffs' IIED claim. .............. 12

      D.    The Court need not address the applicability of UPEPA in federal court............ 13

      E.    Defendant is angling for an unwarranted interlocutory appeal............................. 17

      F.    Should the Court find that any of Plaintiffs' claims are legally insufficient, Plaintiffs respectfully request leave to amend. .................................................... 18

V.    Conclusion............................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) ......................................... 16

*Am. C.L. Union v. Mukasey,* 534 F.3d 181 (3d Cir. 2008) ....................................................... 5, 14

*Anderson v. Comm'r*, 698 F.3d 160, (3d Cir. 2012) ..................................................................... 5

*Arizona Premium Fin. Co. v. Keystone Surplus Lines*, No. 05-CV-5910-LDD, 2008 WL 11514962 (E.D. Pa. Jan. 11, 2008) ............................................................................................ 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 4

*Baker v. Pennsylvania Econ. League, Inc. Ret. Income Plan*, 811 F. Supp. 2d 1136 (E.D. Pa. 2011) ............................................................................................................................................. 8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................................... 5

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) ..................................... 16

*Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000) ........................................................... 15

*Cheney v. Daily News L.P.*, 654 F. App'x 578 (3d Cir. 2016) .................................................... 11

*Clark v. Twp. of Falls*, 890 F.2d 611 (3d Cir. 1989) ................................................................... 11

*Coomer v. Make Your Life Epic LLC*, 98 F.4th 1320 (10th Cir. 2024) ....................................... 15

*Corr. Med. Care, Inc. v. Gray*, No. CIV.A. 07-2840, 2008 WL 248977 (E.D. Pa. Jan. 30, 2008).. 9

*Cowell v. Palmer Twp.,* 263 F.3d 286 (3d Cir. 2001) .................................................................... 9

*D'Alessandro v. Bugler Tobacco Co.*, No. CIV A 05-5051 JBS, 2007 WL 130798 (D.N.J. Jan. 12, 2007) ............................................................................................................................................. 8

*Doe v. Schneider*, 667 F. Supp. 2d 524 (E.D. Pa. 2009) ............................................................... 9

*Dong-A Ilbo v. Lim*, No. CV 08-2399, 2009 WL 10685313 (E.D. Pa. Aug. 24, 2009) ................. 4

*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 448 A.2d 6 (1982) ..................... 6

*Entravision Commc'ns Corp. v. Belalcazar*, 99 S.W.3d 393 (Tex. App. 2003) ........................... 6

*Ernst v. Carrigan*, 814 F.3d 116 (2d Cir. 2016) ......................................................................... 14

*Fanelle v. Lojack Corp.*, No. CIV.A. 99-4292, 2000 WL 1801270 (E.D. Pa. Dec. 7, 2000).......... 6

*Garcia v. Puccio*, No. 108964/02, 2003 WL 25594218 (N.Y. Sup. Ct. Jan. 6, 2003).................... 6

*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) .............................................................. 13

*Hoy v. Angelone*, 691 A.2d 476 (Pa. Super. 1997), *aff'd* 720 A.2d 745 (Pa. 1998)........................ 8

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .................................... 18

*ITT Corp. v. Intelnet Intern.*, 366 F.3d 205, 214 n.17 (3d Cir. 2004)........................................... 12

*Jakes v. Youngblood*, No. 2:24-CV-1608, 2025 WL 1208276 (W.D. Pa. April 25, 2025) ............ 15

*John v. Philadelphia Pizza Team, Inc.*, 209 A.3d 380 (Pa. Super. 2019) ...................................9, 11

*Karuza v. Chance*, No. 34964–3–I, 1996 WL 180267 (Wash. Ct. App. Apr. 15, 1996) ................ 6

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) ............................................................... 16

*LaMon v. Butler*, 722 P.2d 1373 (Wash. Ct. App. 1986), *aff'd*, 770 P.2d 1027 (Wash. 1989)........ 6

*Lane v. Cole*, 88 F. Supp. 2d 402 (E.D. Pa. 2000) ............................................................. 9

*Martin v. Griffin*, No. CV 990586133S, 2000 WL 872464 (Conn. Super. Ct. June 13, 2000)....... 6

*Martin-Trigona v. Kupcinet*, No. 87 C 3347, 1988 WL 93945 (N.D. Ill. Sept. 2, 1988)............... 6

*McClease v. R.R. Donnelley & Sons Co.,* F. Supp. 2d 695 (E.D. Pa. 2002) ................................11

*Motheral v. Burkhart*, 583 A.2d 1180 (1990).........................................................................11

*Nationwide Mut. Ins. Co. v. Fid. & Cas. Co. of N. Y.*, 286 F.2d 91 (3d Cir. 1961)...................... 14

*Paucek v. Shaulis*, No. CV 24-9807, 2025 WL 1298457 (D.N.J. May 6, 2025) ........................ 15

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)........................................................ 5

*Purcell v. Westinghouse Broad. Co.*, 191 A.2d 662 (Pa. 1963)..................................................... 6

*Rightmyer v. Philly Pregnancy Ctr., P.C.*, No. CV 23-1925, 2024 WL 897983 (E.D. Pa. Mar. 1,
2024)............................................................................................................................... 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)........................ 15

*Smith v. Kershentsef*, 843 F. App'x 447 (3d Cir. 2021) ............................................................. 12

*Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311 (E.D. Pa. 2021) ...................................8, 9, 11

*Strickland v. University of Scranton,* 700 A.2d 979 (Pa. Super. 1997)......................................... 9

*Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231 (D.C. Cir. 2021) .........................................16, 17

*United States v. Martin*, 454 F. Supp. 2d 278 (E.D. Pa. 2006) ................................................... 8

*Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604 (E.D. Va. 2005)..................................................... 6

## Statutes

42 Pa.C.S. § 8340.17.............................................................................................................. 17

42 Pa.C.S. §§ 8340.11-18 ...................................................................................................... 13

## Rules

Fed. R. Civ. P. 12(a)(4) ............................................................................................................ 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 4

Fed. R. Civ. P. 15.................................................................................................................... 13

Fed. R. Civ. P. 54(b) ............................................................................................................... 14

## I.    Introduction

On April 10, 2025, the Court denied Defendant Donald J. Trump's motion to dismiss with respect to Plaintiffs' defamation and false light claims. The Court dismissed Plaintiffs' defamation-by-implication theory without prejudice because the Complaint did not specifically identify the defamatory implication created by Defendant Trump's statements. The Court dismissed Plaintiffs' claim for intentional infliction of emotional distress ("IIED") without prejudice because Plaintiffs did not allege physical injuries caused by their emotional distress. On May 1, 2025, Plaintiffs filed their Amended Complaint, which addresses both of these pleading issues.

Defendant has now filed another motion to dismiss that repeats the arguments made in Defendant's first motion. In his motion, Defendant acknowledges that the Court has already decided most of the issues in Plaintiffs' favor and that the Court "may treat its prior decision that the Complaint states claims upon which relief may be granted as the law of the case." Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Mot.") at 15, n. 7, ECF No. 42-1. This concession disposes of virtually all of Defendant's motion.

In view of Defendant's concessions, the issue left for the Court to decide is whether Plaintiffs have alleged "extreme and outrageous conduct" by the Defendant that is sufficient to overcome a Rule 12(b)(6) motion with respect to Plaintiffs' IIED claim. As set forth below, the Amended Complaint describes a decades-long harassment campaign by which Defendant purposefully spread a litany of vicious lies about Plaintiffs, who are five innocent men attempting to rebuild their lives after years of wrongful incarceration. Defendant has publicly admitted that his conduct toward Plaintiffs is meant to foment public "hate and rancor" toward them. Defendant had admitted that his statements are intended to benefit Defendant's personal brand and political prospects at Plaintiffs' expense. These allegations, describing a public vendetta by one of the most

powerful men in the world against five vulnerable individuals, suffice to state a prima facie claim of IIED under Pennsylvania law.

## II.    Factual and Procedural Background

On April 19, 1989, a series of assaults occurred in Central Park, New York City. *See* Am. Compl., ¶¶ 16-17, ECF No. 40. Plaintiffs, who were between 14 and 16 years old at the time, were arrested and subjected to hours of coercive interrogation, under duress and with no attorney present. *Id.*, ¶¶ 18-19. Four Plaintiffs eventually gave false statements purporting to admit to having participated in the assaults. *Id.*, ¶¶ 20-21.

Just days after the assaults took place, Defendant Donald J. Trump placed an advertisement in four New York City newspapers calling for the boys to be executed. *Id.*, ¶ 24. The advertisement read in part:

> Mayor Koch has stated that hate and rancor should be removed from our hearts. I do not think so. I want to hate these muggers and murderers. They should be forced to suffer . . . I want to hate these murderers and I always will . . . I am not looking to psychoanalyze or understand them, I am looking to punish them . . . BRING BACK THE DEATH PENALTY AND BRING BACK OUR POLICE!

Am. Compl., Ex. A, ECF No. 40–1. The Ad prompted then-Mayor Ed Koch to respond: "Nobody I know of in Western society believes that under any circumstances would you ever impose the death penalty on juveniles." Am. Compl., ¶ 52.

Shortly after being released from police custody, Plaintiffs recanted their false confessions. *Id.*, ¶ 23. Plaintiffs all pled not guilty from the outset of their criminal cases, but they were each convicted of various crimes based on their previous confessions and spent years in prison. *Id.*, ¶¶ 27-31. Plaintiffs never admitted to, never were accused of, nor were charged with killing anyone, and none of the victims of the Central Park assaults died. *Id.*, ¶¶ 5, 50.

Thirteen years later, in 2002, the true perpetrator Matias Reyes came forward and confessed. *Id.*, ¶¶ 32. Reyes provided the police with new information that only the true culprit would know. *Id.*, ¶ 33. New DNA tests were then conducted that conclusively exonerated Plaintiffs. *Id.*, ¶ 33. The Manhattan District Attorney's Office recommended that Plaintiffs' convictions be vacated, and on December 19, 2002, New York Supreme Court Justice Charles J. Tejada vacated the convictions, formally exonerating Plaintiffs. *Id.*, ¶¶ 39. Plaintiffs subsequently brought suit against the City of New York for its wrongful conduct toward them, and the City eventually agreed to settle the suit, which Mayor De Blasio described as a "moral obligation to right this injustice." *Id.*, ¶ 40.

Despite Plaintiffs' exoneration, Defendant has waged a public, decades-long campaign of harassment and intimidation against them. He has publicly spread falsehoods and hateful rhetoric about the five men. *Id.*, ¶¶ 67-101. In Defendant's own words, his harassment campaign is intended to foment "hate and rancor" against Plaintiffs and to help Defendant's personal brand and political prospects by currying favor with people who are "tired of politically correct." *Id.*, ¶¶ 72–73.

This harassment campaign culminated at the September 10, 2024 presidential debate between Defendant and Vice President Kamala Harris, which took place at the Constitution Center in Philadelphia, Pennsylvania. *Id.*, ¶ 2, 41. The debate was watched by over 67 million Americans. *Id.*, ¶¶ 41. At the debate, Vice President Harris said the following:

> Let's remember, this is the same individual [Trump] who took out a full-page ad in The New York Times calling for the execution of five young Black and Latino boys who were innocent, the Central Park Five. Took out a full-page ad calling for their execution.

*Id.*, ¶ 42.

Defendant responded:

> They come up with things like what she just said going back many,
> many years when a lot of people including Mayor Bloomberg agreed
> with me on the Central Park Five. They admitted – they said, they
> pled guilty. And I said, well, if they pled guilty they badly hurt a
> person, killed a person ultimately. And if they pled guilty – then they
> pled we're not guilty."

*Id.*, ¶ 44.

Defendant's conduct has caused Plaintiffs severe emotional distress, physical injuries, and
reputational harm. *Id.*, ¶¶ 127-130, 132-141. Plaintiffs bring claims against Defendant for
defamation, false light, and intentional infliction of emotional distress. *Id.*, ¶¶ 103-141.

## III.    Legal Standard

Defendant purports to bring his motion to dismiss under Pennsylvania's Uniform Public
Expression Protection Act ("UPEPA"). However, in federal court, motions to dismiss are governed
by Federal Rule of Civil Procedure 12. Defendant concedes that the Rule 12(b)(6) standard applies
to his motion. Mot. at 6, n. 4 ("President Trump solely seeks to utilize the standards under F.R.C.P.
12(b)(6)").[1]

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a
claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion to
dismiss tests the sufficiency of a complaint." *Dong-A Ilbo v. Lim*, No. CV 08-2399, 2009 WL
10685313, at *1 (E.D. Pa. Aug. 24, 2009). To survive a 12(b)(6) motion, a complaint need only
"contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its
face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

---

[1]Defendant impliedly concedes that his motion functions as a Rule 12(b)(6) motion. In particular,
Defendant failed to answer the Amended Complaint by the May 15 deadline and instead filed the
instant motion. Only a Rule 12 motion alters the time period for filing an answer, suggesting that
Defendant proceeded under the Rule 12 rubric. *See* Fed. R. Civ. P. 12(a)(4) (noting that "serving a
motion under this rule alters" the period of time for filing an answer).

U.S. 544, 570 (2007)). In ruling on the motion, the Court is "required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

## IV. Argument

### A. The Court has already resolved most of the issues raised in Defendant's motion, and Defendant does not give any reason for the Court to reconsider its prior rulings.

The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Anderson v. Comm'r*, 698 F.3d 160, 166 (3d Cir. 2012). A court generally will "reconsider issues that [it] previously resolved" only if "extraordinary circumstances" are present, such as "(1) there has been an intervening change in the law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error or a manifest injustice." *Am. C.L. Union v. Mukasey,* 534 F.3d 181, 188 (3d Cir. 2008).

Here, except with respect to Plaintiffs' IIED claim, this Court has ruled on and rejected the arguments raised in Defendant's motion. *See generally* Mem. Op., ECF No. 37. Among other things, the Court has ruled that Plaintiffs' defamation and false light claims are legally sufficient and that Defendant's non-actionable opinion and substantial truth defenses do not warrant dismissal. *Id.* at 7–16. Defendant does not offer any reason why the Court should revisit its prior rulings. Defendant concedes that "the Court may treat its prior decision that the Complaint states claims upon which relief may be granted as the law of the case." Mot. at 15, n. 7.

Accordingly, the Court should (again) deny Defendant's motion with respect to the defamation and false light claims for the reasons set forth in Plaintiffs' opposition to Defendant's first motion to dismiss, ECF No. 27, and the Court's April 10 opinion, ECF No. 37.

**B.    The Amended Complaint also states a defamation claim under a defamation-by-implication theory.**

Pennsylvania law recognizes that a defamation claim may arise in a factual setting where statements are literally true but the statements provide a false and defamatory implication. *See Dunlap v. Philadelphia Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. 1982) ("[T]he literal accuracy of separate statements will not render a communication 'true' where, as here, the implication of the communication as a whole was false."); *see also Fanelle v. Lojack Corp.*, No. CIV.A. 99-4292, 2000 WL 1801270, at *3 (E.D. Pa. Dec. 7, 2000) (same). Publicizing statements regarding an individual's criminal proceedings while omitting exculpatory facts is actionable under a defamation-by-implication theory. *See Purcell v. Westinghouse Broad. Co.*, 191 A.2d 662, 670 (Pa. 1963) (holding that it was defamatory to publish an article about the plaintiff's criminal case without noting that plaintiff had appealed); *Fanelle*, 2000 WL 1801270, at *1 (holding that plaintiff stated a defamation claim where an advertisement publicized his arrest without noting that he was eventually found "not guilty of all charges arising out of the arrest.").[2]

---

[2] *See also Karuza v. Chance*, No. 34964–3–I, 1996 WL 180267, at *2 (Wash. Ct. App. Apr. 15, 1996) ("A true statement can also be defamatory if it has been legally voided"); *Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 610 (E.D. Va. 2005) ("It is a misleading half-truth to say that a person was convicted of a [crime] without including the fact that his conviction was overturned on appeal"); *Garcia v. Puccio*, No. 108964/02, 2003 WL 25594218, at 10 (N.Y. Sup. Ct. Jan. 6, 2003) (holding that reporting on a criminal accusation without mentioning "that the accusation was ultimately found to be baseless and expunged" is defamatory); *Martin-Trigona v. Kupcinet*, No. 87 C 3347, 1988 WL 93945, at *5 (N.D. Ill. Sept. 2, 1988) (holding that a statement that an individual was "convicted" of a crime was actionable because the conviction had been expunged); *LaMon v. Butler*, 722 P.2d 1373, 1377 (Wash. Ct. App. 1986), *aff'd*, 770 P.2d 1027 (Wash. 1989) (en banc) (holding the same and noting "falsity in this case lies not in what was said but in what was left unsaid."); *Entravision Commc'ns Corp. v. Belalcazar*, 99 S.W.3d 393, 398 (Tex. App. 2003) (holding that reporting on a civil lawsuit without mentioning that it had been dismissed can be defamatory); *Martin v. Griffin*, No. CV 990586133S, 2000 WL 872464, at *18 (Conn. Super. Ct. June 13, 2000) (holding that discussing a felony conviction coupled with "omission to mention the reversal of the conviction" can be defamatory).

Here, Defendant's statements at the debate were directly defamatory because he falsely stated that Plaintiffs "pled guilty" to the Central Park assaults, and indeed that they "pled guilty" to having "killed a person." Am. Compl. ¶ 44, 113. But Defendant's statements at the debate are also actionable under a defamation-by-implication rubric in that Defendant omitted key details while discussing Plaintiffs' criminal proceedings—including, among other things, that Plaintiffs have been conclusively exonerated and their convictions have all been vacated. *Id.* ¶ 114.

The Court previously dismissed Plaintiffs' allegations concerning defamation-by-implication without prejudice on the grounds that the Complaint did not specifically identify the allegedly defamatory implication created by omitting the facts of Plaintiffs' exoneration. *See* Mem. Op. at 16, n. 11. The Amended Complaint addresses this issue. It alleges that Defendant "conveyed the false and defamatory implication that Plaintiffs committed [the Central Park assaults] and that they have not been completely exonerated by the Manhattan District Attorney's office and the courts" because Defendant publicized "that Plaintiffs had been prosecuted in relation with the Central Park assaults while omitting crucial and exculpatory facts." *See* Am. Compl., ¶¶ 114–125.

Defendant does not directly challenge Plaintiffs' claim for defamation under the rubric of defamation-by-implication. His only passing reference to this theory is as follows: "The full context of President Trump's statement clearly shows he was reflecting on his past opinion . . . and not making a new and present statement of truth or *any related implication* of such about the Plaintiffs." Mot. at 16–17 (emphasis added). The Court already has rejected the argument that Defendant is entitled to dismissal because his statements were non-actionable opinion. Mem. Op.

at 11 ("Defendant's statement must be construed as one of fact, not opinion."). Thus, Defendant's argument fails for the reasons set forth in the Court's April 10 opinion.[3]

### C.    The Amended Complaint states a claim for intentional infliction of emotional distress under Pennsylvania law.

To state a claim for intentional infliction of emotional distress under Pennsylvania law, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 315 (E.D. Pa. 2021) (quoting *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997), *aff'd* 720 A.2d 745 (Pa. 1998)) (alterations in original).

The Court previously dismissed Plaintiffs' IIED claim without prejudice because Plaintiffs had not alleged physical injuries resulting from their emotional distress. The Amended Complaint addresses this issue by alleging physical injuries suffered by each Plaintiff. Am. Compl., ¶¶ 136–141. Defendant's motion does not challenge that Plaintiffs have now adequately addressed the issue that resulted in the dismissal. Defendant argues that Plaintiffs have not alleged extreme and outrageous conduct and that the prior dismissal bars Plaintiffs from reasserting their IIED claim. Both arguments are unavailing.

### 1.    The Amended Complaint alleges that Defendant's conduct was extreme and outrageous.

Conduct is sufficiently extreme and outrageous to state a claim for IIED under Pennsylvania law where "the recitation of the facts to an average member of the community would

---

[3] Defendant has waived the opportunity to assert other arguments for dismissal of Plaintiffs' claim for defamation under the rubric of defamation-by-implication by failing to raise them in his motion. *See Baker v. Pennsylvania Econ. League, Inc. Ret. Income Plan*, 811 F. Supp. 2d 1136, 1144 (E.D. Pa. 2011) (refusing to consider arguments not raised in defendant's initial motion to dismiss); *United States v. Martin*, 454 F. Supp. 2d 278, 281 (E.D. Pa. 2006) ("The Court declines to address any issue raised for the first time in a reply brief"); *D'Alessandro v. Bugler Tobacco Co.*, No. CIV A 05-5051 JBS, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) ("The Court declines to consider the statute of limitations argument because it was not raised on the initial motion").

arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" *Doe v. Schneider*, 667 F. Supp. 2d 524, 533 (E.D. Pa. 2009) (quoting *Strickland v. University of Scranton,* 700 A.2d 979, 987 (Pa. Super. 1997)). "Pennsylvania courts have stressed that 'continuing malicious actions' are more likely to be deemed 'extreme and outrageous.'" *Smith*, 515 F. Supp. 3d at 318 (citing *John v. Philadelphia Pizza Team, Inc.*, 209 A.3d 380, 385 (Pa. Super. 2019)). In such cases, courts "examine[] whether the conduct was part of [a] continuous pattern of wrongful behavior that could support a claim for IIED if viewed collectively." *Id.* A pattern of wrongful conduct may state a claim for IIED even if no "single incident" would do so on its own, because it is "relevant that Plaintiff's emotional distress is linked to the long duration and persistency of [Defendant's] alleged misconduct." *Id.*; *see also Corr. Med. Care, Inc. v. Gray*, No. CIV.A. 07-2840, 2008 WL 248977, at *13 (E.D. Pa. Jan. 30, 2008).

While the statute of limitations for IIED claims is two years, courts "have included harassing conduct that precedes the two-year limitations period in their analysis." *Id.* (collecting cases); *see also Cowell v. Palmer Twp.,* 263 F.3d 286, 292 (3d Cir. 2001) ("[W]hen a defendant's actions are part of a continuing pattern of conduct, the Plaintiff's suit will be timely if at least one act evidencing this pattern falls within the limitations period.").

"Where reasonable persons may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability." *Motheral v. Burkhart*, 583 A.2d 1180, 1188 (Pa. Super. 1990); *see also Rightmyer v. Philly Pregnancy Ctr., P.C.*, No. CV 23-1925, 2024 WL 897983, at *4 (E.D. Pa. Mar. 1, 2024) ("Whether the conduct of either defendant was sufficiently extreme and atrocious . . . is better answered at the summary judgment stage.") (quoting *Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000)).

Against this backdrop, Plaintiffs have adequately pled that Defendant's conduct was extreme and outrageous for purposes of stating a cognizable IIED claim under Pennsylvania law. The Amended Complaint alleges that Defendant has waged a personal vendetta against Plaintiffs for over thirty years. This harassment campaign began shortly after Plaintiffs were first arrested in May 1989. Defendant took out an advertisement in several New York City newspapers calling for Plaintiffs, who at the time were between 14 and 16 years old, to be executed. Am. Compl., ¶ 24. Defendant wrote in that Ad:

> Mayor Koch has stated that hate and rancor should be removed from our hearts. I do not think so. I want to hate these muggers and murderers. They should be forced to suffer . . . I want to hate these murderers and I always will . . . I am not looking to psychoanalyze or understand them, I am looking to punish them . . . BRING BACK THE DEATH PENALTY AND BRING BACK OUR POLICE!

Am. Compl., Ex. A. The Ad sparked widespread outcry and prompted Mayor Ed Koch to respond, "Nobody I know of in Western society believes that under any circumstances would you ever impose the death penalty on juveniles." Am. Compl., ¶ 52.

Defendant never apologized for the Ad. He never acknowledged Plaintiffs' innocence, even after Plaintiffs were exonerated by DNA evidence and the confession of the true perpetrator. Instead, Defendant has continued to unleash vicious and false attacks against Plaintiffs in newspapers, on television, on social media, from the White House lawn, and now in a presidential debate watched by over 67 million Americans. Am. Compl., ¶¶ 67-102. Throughout the years, Defendant has publicly said about Plaintiffs—five private citizens seeking to rebuild their lives and clear their names after years of wrongful incarceration—that they committed "horrific crimes . . . while in [the] park," that they are "Innocent of what-how many people did they mugg [sic]," that "these young men do not exactly have the pasts of angels," that they "brutalized [people] that night," that the City's decision to settle their civil lawsuit was a "disgrace," that they threw the

victim "off a building – thrown off a building on top of everything else," and now, that Plaintiffs "pled guilty" to having "killed a person." *Id.* Defendant published these statements knowing that they would be read and absorbed by many people. He timed them to maximize the harm done to Plaintiffs. *Id.*, ¶¶ 84-93.

Indeed, Defendant has publicly admitted that his conduct is intended to foment "hate and rancor" toward Plaintiffs. *Id.*, ¶ 72. Defendant has admitted that he makes his hateful and false statements to benefit himself politically—because by bullying and harassing five vulnerable individuals, Defendant appeals to "people [who] are tired of politically correct." *Id.*, ¶ 73. Defendant has gloated about the tens of thousands of letters he says he has received from individuals who embrace his hateful rhetoric toward Plaintiffs. *Id.*, ¶ 76.

In his motion, Defendant argues that making false and defamatory statements can never rise to the level of IIED. The cases on which Defendant relies involved a single allegedly false accusation. *See Cheney v. Daily News L.P.*, 654 F. App'x 578, 583 (3d Cir. 2016) (single article accusing a firefighter of being involved in a sex scandal did not rise to the level of IIED); *Motheral v. Burkhart*, 583 A.2d 1180, 1182 (1990) (single accusation that the plaintiff had threatened to kill his ex-wife did not rise to the level of IIED); *Clark v. Twp. of Falls*, 890 F.2d 611, 624 (3d Cir. 1989) (publicly revealing an investigation into alleged police misconduct by the plaintiff did not rise to the level of IIED). The contrasting facts of those cases underscore the sufficiency of Plaintiffs' allegations. Here, Plaintiffs' claim is not based on a single accusation; it is based on a concerted, decades-long harassment campaign. This distinction is crucial because "Pennsylvania courts have stressed that 'continuing malicious actions' are more likely to be deemed 'extreme and outrageous.'" *Smith*, 515 F. Supp. 3d at 318 (citing *John*, 209 A.3d at 385). For example, in *McClease v. R.R. Donnelley & Sons Co.*, the plaintiff was an African American employee who

11

alleged that he had been subjected to repeated "racial epithets and harassment" while at work. 226 F. Supp. 2d 695, 703 (E.D. Pa. 2002). The defendant, his employer, argued that racial epithets are not extreme and outrageous enough to give rise to an IIED claim. The court rejected that argument, holding that while a single hurtful comment is unlikely to state an IIED claim given the "brevity of the encounter," plaintiff's claim survived dismissal because it was based on a "pattern of malicious conduct." *Id.*

The allegations of this case include Defendant's public confessions of ill will and animus. The allegations also describe the obvious power imbalance between the parties and the repetitive nature of Defendant's conduct. Especially when the allegations are viewed in the light most favorable to the non-moving parties, the Amended Complaint states a prime facie claim for IIED under Pennsylvania law.

### 2.    The Court's April 10 Order does not bar Plaintiffs' IIED claim.

Defendant argues that because the Court previously dismissed Plaintiffs' IIED claim without prejudice, Plaintiffs are now barred from asserting the claim. This argument has no merit. A prior dismissal without prejudice does not prevent Plaintiffs from reasserting their IIED claim because, as the Court noted, a dismissal without prejudice is not an adjudication on the merits. Mem. Op. at 16, n. 11 (citing *ITT Corp. v. Intelnet Intern.*, 366 F.3d 205, 214 n.17 (3d Cir. 2004); *see also Smith v. Kershentsef*, 843 F. App'x 447, 450 (3d Cir. 2021) ("[A] dismissal without prejudice is not a final decision because the plaintiff may refile the complaint.").

Defendant cites no case, rule or statute to support his contention that Plaintiffs' IIED claim is now barred under circumstances where the Court dismissed the claim without prejudice with leave to file an amended complaint. Instead, Defendant bases this argument on a statement from Pennsylvania Representative Kate Klunk that Pennsylvania's Uniform Public Expression Protection Act is meant "to ensure Pennsylvanians are protected from frivolous lawsuits intended

to silence free speech, saving defendants from incurring unnecessary legal fees simply for speaking out on important public issues." Pa. H. Legis. Journal, 207th Gen. Assemb., Reg. Sess. 1846 (Oct. 4, 2023). This statement is non-responsive to the Court's order, which dismissed the IIED claim <u>without</u> prejudice. A dismissal without prejudice is not an adjudication on the merits. A dismissal without prejudice is not a determination that the lawsuit is "frivolous," which is all Representative Klunk was discussing in the quoted statement. Nor would the purpose of the statute be served by shutting the courthouse doors to meritorious claims based only on a pleading issue that has now been addressed. Such a reading of the statute would conflict with the liberal amendment policy enshrined in Rule 15. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("Rule 15(a) embodies the federal courts' policy of liberal pleading amendment by ensuring that an inadvertent error in, or omission from, an original pleading will not preclude a party from securing relief on the merits of his claim."). Defendant's argument fails accordingly.

### D.    The Court need not address the applicability of UPEPA in federal court.

As in his first motion to dismiss, Defendant devotes much of his brief to discussing the applicability in federal court of Pennsylvania's Public Expression Protection Act, codified at 42 Pa.C.S. §§ 8340.11-18 (the "UPEPA"). The Court declined to reach this issue in ruling on Defendant's first motion to dismiss. The Court should do the same here for multiple reasons.

*First*, the Court already has ruled that it is unnecessary to determine the applicability of UPEPA to resolve Defendant's motion. In its April 10 opinion, the Court noted that Defendant "conceded" at oral argument that Rule 12(b)(6) and UPEPA involve the same standard for dismissal of a complaint; hence "there is no need to address at this juncture whether the Anti-SLAPP statute applies in federal court." Mem. Op. at 3. The Court's reasoning applies equally to the instant motion where Defendant himself concedes that he "solely seeks to utilize the standards

under F.R.C.P. 12(b)(6)." Mot. at 6, n. 4. At best, Defendant seeks reconsideration through the vehicle of reasserting the "request to apply UPEPA." *Id.* at 15, n. 5. But Defendant does not argue the existence of "extraordinary circumstances" that would warrant revisiting the Court's decision. Defendant does not argue an intervening change in the law or new evidence. He does not argue clear error. *Am. C.L. Union,* 534 F.3d at 188. Defendant even acknowledges that the Court may treat its prior decision "as the law of the case." Mot. at 15, n.5. So the Court's initial ruling remains the operative ruling.

    *Second*, UPEPA's attorney's fee and interlocutory appeal provisions are unrelated to the instant motion and unripe for resolution. The only relief Defendant presently seeks is the dismissal of Plaintiffs' Amended Complaint. *See* Def.'s Mot. to Dismiss, Proposed Order, ECF No. 41-2. The Court should confine its analysis to those dismissal questions, especially where "[f]ederal courts are not authorized to give advisory opinions" and there is no reason for this Court to issue "an opinion advising what the law would be upon a hypothetical state of facts." *Nationwide Mut. Ins. Co. v. Fid. & Cas. Co. of N. Y.*, 286 F.2d 91, 92 (3d Cir. 1961). The unavailability of either attorney's fees or interlocutory appeal is underscored by Fed. R. Civ. P. 54(b), which provides for attorney's fees only be sought after the entry of judgment. *See Arizona Premium Fin. Co. v. Keystone Surplus Lines*, No. 05-CV-5910-LDD, 2008 WL 11514962, at *1 (E.D. Pa. Jan. 11, 2008) (holding that "Motion for Attorney Fees . . . [was] premature because this Court never entered a final judgment."). Here, there is no entry of judgment where the Court has <u>denied</u> Defendant's motion. Hence there is no final order from which appeal could be taken. There is no basis for an interlocutory appeal under the collateral order doctrine either. *See, e.g.*, *Ernst v. Carrigan*, 814 F.3d 116, 122 (2d Cir. 2016) (holding that "orders passing on the merits of an anti-SLAPP motion do not fall within the collateral order doctrine" and are not immediately appealable); *Coomer v. Make*

*Your Life Epic LLC*, 98 F.4th 1320, 1325 (10th Cir. 2024) (same); *Paucek v. Shaulis*, No. CV 24-9807, 2025 WL 1298457, at *9 (D.N.J. May 6, 2025) (same).

*Third*, Defendant misplaces his reliance on the "immunity" provision set forth in Section 8340.15. Under Section 8340.15(a) a person is "immune from civil liability for a cause of action based on protected public expression" if the party asserting the cause of action fails to "establish a prima facie case as to each essential element of the cause of action" or "state a cause of action upon which relief can be granted." 42 Pa.C.S. § 8340.15(a). In addition, Section 8340.15(b), provides that a defendant is immune from civil liability if "[t]here is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part." 42 Pa.C.S. § 8340.15(b). As an initial matter, it is well established that federal courts should not apply a state rule that "attempts to answer the same question" as a valid federal rule. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). Further, these standards are different and broader than the standard set forth in the Rules of Civil Procedure. As the Third Circuit also has explained, "[w]here a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the exclusion of a conflicting state rule so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution." *Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000). Given the primacy of Rule 12(b)(6) at this stage of litigation, the Court should not apply UPEPA or even reach any decision about the applicability of UPEPA.

*Fourth*, UPEPA does not apply to this case in any event. For example, a district judge based in Pittsburgh recently addressed the applicability of UPEPA in federal court. *Jakes v. Youngblood*, No. 2:24-CV-1608, 2025 WL 1208276 (W.D. Pa. April 25, 2025). There, the defendant had brought

a motion to dismiss purportedly under Section 8340.15. While deciding the motion, Judge William

Stickman explained that Section 8340.15 "is a procedural rule, not a substantive law" because it

"creates a mechanism for a defendant to resolve a case pre-trial, much like Federal Rules of Civil

Procedure 12 and 56." *Id.* Judge Stickman also focused on Section 8340.15(b), which, invoking a

standard akin to summary judgment, provides that a defendant is immune from civil liability if

"[t]here is no genuine issue as to any material fact, and the person against whom the cause of action

based on protected public expression has been asserted is entitled to judgment as a matter of law

in whole or in part." 42 Pa.C.S. § 8340.15(b). Judge Stickman reasoned that Section 8340

"supplants the Rule 12(b)(6) motion to dismiss standard" by imposing additional avenues for

dismissal more akin to "the Rule 56 summary judgment standard." *Id.* Judge Stickman concluded

that Section 8340.15 does not apply in federal court as to the standard for evaluating a plaintiffs'

claims and likewise held that UPEPA's attorney's fees provision also does not apply in federal

court because it would require a finding that the defendant is immune under Section 8340.15. *Id.*

The reasoning in *Jakes* accorded with D.C. Circuit, Second Circuit, and Eleventh Circuit

decisions that anti-SLAPP motions cannot be brought in federal court because the Federal Rules

set forth the exclusive mechanism for challenging a complaint. *See Carbone v. Cable News

Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018) (explaining that the Federal Rules of Civil

Procedure are "sufficiently broad . . . to control the issue before the court, thereby leaving no room

for the operation of the motion-to-strike procedure") (internal quotation marks omitted); *Abbas v.

Foreign Policy Grp., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015) (same); *Tah v. Glob. Witness

Publ'g, Inc.*, 991 F.3d 231 (D.C. Cir. 2021) (same); *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir.

2020) (same).

16

Of course, the decisions referenced above do not bind this Court. But they are well-reasoned and provide a useful frame of reference. As the cases make clear, Rule 12(b)(6) provides the governing law for assessing whether Plaintiffs have asserted a cognizable cause of action at this preliminary stage. This is especially true where UPEPA incorporates standards akin to summary judgment into the context of a motion to dismiss. *See Tah*, 991 F.3d at 238 (finding that D.C.'s anti-SLAPP statute did not apply in federal court even when the court otherwise found that the complaint was subject to dismissal under Rule 12(b)(6)). In the end, the Court should decline to reach Defendant's argument concerning UPEPA's application. If the Court must decide, it should decide that UPEPA does not apply at all.

*Fifth,* Defendant's policy arguments are misplaced. Defendant notes that the stated purpose of UPEPA is to combat the filing of "meritless" lawsuits "brought primarily to chill the valid exercise of protected public expression." 42 Pa.C.S. § 8340.12. Here, this Court has ruled that Plaintiffs have stated cognizable claims for defamation and false light. Stated plainly, the case is not meritless. UPEPA contemplates that such a case move deeper into the litigation process. The case ought not be dismissed based on defense characterizations that are at odds with the Court's own ruling.

### E.    Defendant is angling for an unwarranted interlocutory appeal.

Defendant's fixation with UPEPA reflects an apparent intent to appeal the Court's ruling under Section 8340.17. Under this provision, "[a]n order granting, denying or otherwise determining immunity under this subchapter is immediately appealable under section 702 (relating to interlocutory orders)." 42 Pa.C.S. § 8340.17. Given the primacy of the Federal Rules of Civil Procedure, the Court can and should deny Defendant's motion without deciding on the applicability of UPEPA or making any determination with respect to "immunity" as defined by the

17

statute. The Court declined to reach such decisions when ruling on Defendant's first motion to dismiss. It should decline here as well, especially because any effort to appeal would not only be procedurally improper but also add needless expense and delay to this litigation. Accordingly, Plaintiffs respectfully request that the Court make clear in its opinion and its order that it is not "granting, denying or otherwise determining immunity under UPEPA." Plaintiffs have included language to that effect in their proposed order.

> **F.      Should the Court find that any of Plaintiffs' claims are legally insufficient, Plaintiffs respectfully request leave to amend.**

The federal rules require that leave to amend shall be freely given when justice so requires. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Should the Court find that the Amended Complaint is deficient in any respect, Plaintiffs respectfully request leave to file a second amended complaint.

## V.      Conclusion

Defendant's motion should be denied.

Dated: May 23, 2025                              Respectfully Submitted,


                                     By:        */s/ Shanin Specter*
                                                Shanin Specter, Esquire (No. 40928)
                                                Charles L. Becker, Esquire (No. 81910)
                                                Alex Van Dyke, Esquire (No. 334456)
                                                KLINE & SPECTER, P.C.
                                                1525 Locust Street
                                                Philadelphia, PA 19102
                                                (215) 772-1000
                                                shanin.specter@klinespecter.com
                                                alex.vandyke@klinespecter.com
                                                charles.becker@klinespecter.com
                                                *Lead Counsel for All Plaintiffs*

Jane Fisher, Esquire, *pro hac vice*
David Fisher, Esquire, *pro hac vice*
FISHER & BYRIALSEN, PLLC
99 Park Avenue
New York, NY 10016
(303) 256-6345
jane@fblaw.org
david@fblaw.org
*Co-Counsel for Plaintiff Wise*

Hollis Whitson, Esquire, *pro hac vice*
SAMLER & WHITSON, P.C.
1600 Stout St. Suite 1400
Denver, CO 80202
(303) 670-0575
hollis@samlerandwhitson.com
*Co-Counsel for Plaintiff Wise*

Jonathan C. Moore, Esquire, *pro hac vice*
Marc Cannan, Esquire, *pro hac vice*
BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue
New York, NY 10016
(212) 490-0400
jmoore@blhny.com
mcannan@blhny.com
*Co-Counsel for Plaintiffs Salaam, Santana,*
*Richardson & Brown*

19