UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSEF SALAAM, et al.,<br><br>        *Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>        *Defendant*. | Case No. 2:24-cv-05560-WB |

**DEFENDANT DONALD J. TRUMP'S REPLY IN SUPPORT OF HIS
MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs' Opposition fails to overcome the defects in their Amended Complaint and, with inconsequential development, reiterates theories the Court has already found legally deficient. The cornerstone of Plaintiffs' Opposition is a fundamental misreading of *Erie* that permits Plaintiffs to evade meaningful engagement with the substantive protections of the Pennsylvania Uniform Public Expression Protection Act ("UPEPA"), 42 Pa.C.S. §§ 8340.11–8340.14, 8340.15(1)(ii), 8340.17–18, as raised by President Trump ("Defendant") in his Motion to Dismiss. A proper application of *Erie* requires this Court to assess Defendant's asserted defenses in light of UPEPA. But Plaintiffs would have this Court ignore the legal basis of President Trump's motion and forego this assessment in favor of addressing the sufficiency of their claims under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

To accept Plaintiffs' view of the case would run afoul of *Erie*'s core mandate, thereby causing error. Instead, this Court should fulfill its obligation to undertake *Erie*'s exacting analysis when sitting in diversity. Defendant's Motion raises substantive questions, which, under *Erie*, are rightly answered by substantive state law that does not conflict with the Federal Rules. As substantive law, UPEPA should apply in federal court in a diversity case. Therefore, UPEPA should apply in this case.

Under UPEPA's framework, Plaintiffs' Amended Complaint does not meet the applicable standard. Plaintiffs do not seriously contend with the majority of Defendant's substantive arguments, and their position that the amended forms of their defamation-by-implication and intentional infliction of emotional distress ("IIED") claims fall short of stating a claim.

Therefore, Plaintiffs' Amended Complaint should be dismissed pursuant to UPEPA.

**ARGUMENT**

**I.      Defendant's Motion Should Be Viewed Under the Framework Supplied by UPEPA.**

Defendant explicitly brings his Motion to Dismiss under UPEPA. In their Opposition, Plaintiffs do not contest this point. Opp'n at 4. Rather, Plaintiffs argue that this Court should view Defendant's Motion not as a motion to dismiss brought under Pennsylvania law, but instead as a motion to dismiss brought under Rule 12(b)(6). *Id.* This maneuver underlines a question that this Court has yet to answer squarely: In weighing a motion to dismiss pursuant to UPEPA while sitting in diversity, should the Court apply the Pennsylvania state law framework for dismissal in UPEPA or the federal rule for dismissal under Rule 12(b)(6)? In his Motion, Defendant offered this Court a thorough analysis of this question, concluding that this Court should apply the former in weighing his Motion to Dismiss. Mot. at 3–10.

In light of the space limitations imposed by this Court, Defendant does not intend to rehash the fundamentals of *Erie* here. Nor need he, as Plaintiffs do nothing in their Opposition to suggest that Defendant's presentation of *Erie* was imprecise. Rather, Plaintiffs take the position that the *Erie* doctrine, as applied to this litigation, produces a different result. Specifically, Plaintiffs argue: (A) the highlighted provisions of UPEPA are not substantive law for the purposes of an *Erie* analysis because they conflict with the Federal Rules, Opp'n at 14–15; and (B) as an "anti-SLAPP" law that conflicts with the Federal Rules, UPEPA should not apply in federal court, *id.* at 15–17. Accordingly, Plaintiffs argue, UPEPA should not apply here.

Plaintiffs' contentions are legally unsound. At bottom, their position reflects a fundamental misunderstanding of both *Erie* and UPEPA. Contrary to Plaintiffs' view, UPEPA explicitly contains substantive clauses in the form of its immunity, fee-shifting, and interlocutory appeal provisions (collectively, the "UPEPA Provisions"). Additionally, Plaintiffs' position that UPEPA cannot apply in federal court is without merit. Therefore, UPEPA is best viewed as substantive law, and *Erie*

2

and its progeny oblige this Court to apply UPEPA instead of Rule 12(b)(6) here.

### A. UPEPA Is Rightly Viewed as Substantive Law.

The Third Circuit "appl[ies] a three-part test to decide whether a state law or rule is substantive or procedural for *Erie* purposes." *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015). Plaintiffs implicitly concede that the test's second and third prongs are satisfied here. *See Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 522 (W.D. Pa. 2021) (citing cases for the proposition that the omission of a contrary view in an opposing brief constitutes a concession). Accordingly, the following discussion will focus exclusively on *Schmigel*'s first prong.

Under *Schmigel*'s first prong, a state law is potentially substantive so long as there is no "direct collision between a federal rule and the state law or rule that the court is being urged to apply." 800 F.3d at 119. None of the UPEPA Provisions conflict with a federal rule.

*First*, UPEPA provides immunity against a "cause of action based on protected public expression." 42 Pa.C.S. § 8340.15. "This immunity does not conflict with any federal procedural rule and, in fact, attaches based on standards that mirror the Federal Rules." ECF No. 33 at 7 (the "ACLU Brief").

*Second*, UPEPA's fee-shifting provision does not conflict with the Federal Rules. Indeed, district courts in the Third Circuit have routinely applied similar fee-shifting provisions that appear in other Pennsylvania statutes. Mot. at 7 (citing cases); ACLU Brief at 8 (citing cases).

*Third*, UPEPA's provision recognizing an immediate right to appeal an order that grants, denies, or otherwise determines immunity under UPEPA does not conflict with the Federal Rules. Under the collateral order doctrine, an interlocutory order may be immediately appealed if the order conclusively determines an important and separable question and if that decision is effectively unappealable after a final judgment is entered. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). As discussed in the Defendant's Motion, a defendant's immunity from

3

liability is an important and separable question that cannot be effectively appealed after the close of proceedings. Mot. at 8.

Plaintiffs' arguments to the contrary are unavailing.

Concerning immunity, Plaintiffs assert that "[w]here a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the exclusion of a conflicting state rule," subject to certain qualifications that are not at issue here. Opp'n at 15 (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000)). Plaintiffs thus prove Defendant's point. The state and federal rules here are in harmony, and Rule 12(b)(6) does not answer the same question Defendant posed here: whether he is entitled to immunity under UPEPA due to Plaintiffs' failure to state a claim for relief.

With respect to UPEPA's fee-shifting and interlocutory appeal provisions, Plaintiffs do not squarely contend that these provisions conflict with the Federal Rules. Opp'n at 14–15. Instead, Plaintiffs mute their discussion of the fee-shifting provision in favor of addressing whether UPEPA's interlocutory appeal provision fits within the boundaries of the collateral order doctrine. *Id.* In support of their contention that it does not, Plaintiffs rely exclusively on two out-of-circuit opinions, *Ernst v. Carrigan*, 814 F.3d 116 (2d Cir. 2016), and *Coomer v. Make Your Life Epic LLC*, 98 F.4th 1320 (10th Cir. 2024), and one unpublished opinion from the District of New Jersey, *Paucek v. Shaulis*, No. CV 24-9807, 2025 WL 1298457 (D.N.J. May 6, 2025).

Plaintiffs' reliance on these cases is perplexing, at best. As Amici note, "the mere reference to a law as an 'anti-SLAPP statute' is meaningless for the *Erie* analysis." ACLU Brief at 9. Plaintiffs have demonstrated the merit of that proposition.

In each of the cases cited by Plaintiffs, the court discussed a state statute that did not directly provide for a grant of immunity. Indeed, the Second and Tenth Circuits went to great lengths to

4

emphasize that the statutes at issue did <u>not</u> grant immunity. *See Ernst*, 814 F.3d at 121–22; *Coomer*, 98 F.4th at 1325. And to the extent the District of New Jersey engaged with the issue, it premised its discussion on the notion that the "unique text and structure" of each state's anti-SLAPP law informs the extent to which it conflicts with the Federal Rules. *Paucek*, 2025 WL 1298457 at *8–9. Here, UPEPA's "unique text and structure" illustrates the Pennsylvania Legislature's clear intent to create an express grant of immunity to defendants who successfully invoke UPEPA's protections. Therefore, an order under UPEPA relates to an important and separable question and is properly appealable under the collateral order doctrine. *See Cohen*, 337 U.S. at 546.

Because UPEPA's substantive provisions satisfy each prong of the *Schmigel* test, UPEPA is best viewed as substantive law.

### B. UPEPA Can Apply in Federal Court.

Plaintiffs broadly argue that UPEPA, as an anti-SLAPP statute, is inapplicable in federal court. Opp'n at 15–17. This is a facile assertion that fails to engage with the complexities of each state's anti-SLAPP law.

As Amici have explained, "[d]etermining whether a state law applies in federal court requires assessing that law on its individual and unique terms." ACLU Brief at 9; *accord Paucek*, 2025 WL 1298457 at *8. Defendant will not regurgitate each of Amici's well-reasoned arguments here. However, it is worth emphasizing that the circuit decisions relied upon by Plaintiffs are "limited to state laws allowing defendants to pursue special motions that alter pleading standards or shift burdens" and, insofar as fee-shifting provisions are concerned, based their analyses on the fact that such provisions were "predicated on prevailing on a particular procedure tied to a special motion established under state law." ACLU Brief at 12–14. Unlike the anti-SLAPP statutes discussed in those cases, UPEPA, as relied upon here, does not provide for a special motion that "alters pleading standards," nor is its fee-shifting provision "predicated on prevailing" on a

5

procedure tied to such a motion. *See* 42 Pa.C.S. §§ 8340.15, 8340.18. Therefore, Plaintiffs' arguments that UPEPA cannot be applied in federal court find no support in these cases.

The sole case Plaintiffs cite that focuses on UPEPA is similarly inapposite. In *Jakes v. Youngblood*, the Western District of Pennsylvania determined, *inter alia*, that UPEPA could not apply because its grant of immunity conflicted with the Federal Rules. No. 2:24-CV-1608, 2025 WL 1208276, at *5–6 (W.D. Pa. April 25, 2025). However, the Western District focused its discussion on whether subsection 2 of 42 Pa.C.S. § 8340.15, in permitting the court "to consider whether there are genuine issues of material fact," conflicted with the Federal Rules' requirements that a court not look beyond the pleadings, prior to pre-decisional discovery, in evaluating a motion to dismiss or a motion for summary judgment. *Id.* at *5. Here, Defendant makes no attempt to go beyond the pleadings in arguing for dismissal under UPEPA. Therefore, UPEPA, as invoked by Defendant, does not conflict with the Federal Rules as it did in *Jakes*.

Because the particular provisions of UPEPA on which Defendant relies do not conflict with the Federal Rules, UPEPA is applicable in federal court as substantive law.

\* \* \* \*

"The broad command" of *Erie* is that "federal courts are to apply state substantive law and federal procedural law" when sitting in diversity. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). As substantive law, UPEPA should apply here.

## II. Plaintiffs' Amended Complaint Should Be Dismissed Under UPEPA

Plaintiffs offer this Court little in the way of a direct response to Defendant's assertion that he is immune from liability with respect to Plaintiffs' claims. But inasmuch as they do, Plaintiffs' arguments fail.

Chiefly, Plaintiffs make hay of the fact that Defendant acknowledges this Court "may treat its prior decision that the Complaint states claims upon which relief may be granted as the law of

6

the case." Opp'n at 5 (quoting Mot. at 15, n.7). Plaintiffs argue that this concedes the fundamental question at issue in Defendant's Motion. This view of Defendant's Motion is badly mistaken. Defendant was merely acknowledging the Court's prior decision and what it could choose to do with respect to whether the Amended Complaint states a claim, insofar as that can be an element of the analysis under the state law on which this second motion is based. While Defendant wishes to make a record and preserve rights, if necessary, he did not wish to appear obstreperous under the present procedural circumstances. The Court may, of course, reach a different conclusion based on the arguments in the instant motion as applied to the Amended Complaint than it did with respect to the prior motion and the prior complaint.

Accordingly, while Defendant's Motion convincingly argues that Plaintiffs' Amended Complaint fails to state a claim for relief, *see* Mot. at 15–19, its primary focus is not on that issue. Rather, Defendant's Motion focuses on whether UPEPA applies and whether, under UPEPA, Defendant is immune from civil liability <u>because</u> of Plaintiffs' failure to state claims, thereby entitling him to attorney's fees and the right of immediate appeal (if the Court denies the Motion) described in 42 Pa.C.S. §§ 8340.17, 8340.18. *See id.* at 15, n.7. Thus, Plaintiffs' position that this acknowledgment constitutes a dispositive concession is ill-founded.

### A. Plaintiffs' Amended Claims for Defamation-by-Implication Fail to State a Claim.

Insofar as Plaintiffs argue that their amended claim for defamation-by-implication is now sufficient, their arguments do not withstand scrutiny. Plaintiffs argue that their Amended Complaint succeeds where their Complaint failed by properly alleging the "false and defamatory implication" of Defendant's statements during the September 2024 presidential debate. Opp'n at 7. But the allegation that Defendant's statements contained a "false and defamatory implication" is a "'bald assertion' or 'legal conclusion' [that] need not be accepted as true by [this] Court. *See*

7

*Brooks v. Austin*, 720 F. Supp. 2d 715, 718 (E.D. Pa. 2010) (quoting *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)). Accordingly, this Court should afford it no deference.

Moreover, Plaintiffs' argument in support of this conclusion is fundamentally flawed. Plaintiffs argue that Defendant's statements constitute defamation-by-implication because they "omit exculpatory facts." Opp'n at 6. However, Plaintiffs ignore the essential issue with their defamation claims: allegedly defamatory statements must be viewed *in their full context* in evaluating their defamatory effects. Mot. at 15. The full context of Defendant's September 2024 statements establish that President Trump's statements were solely and directly responding to Vice President Harris' implicit accusation that President Trump harbors racial animus because he called for the ultimate punishment for the perpetrators of a heinously violent sexual assault—an assault that Plaintiffs, at the time, had confessed to participating in, and for which they were subsequently convicted at trial for committing, years before they were eventually exonerated when another individual confessed and was linked to the crime by additional evidence. There is no reasonable reading in context that President Trump was making new factual claims at the time of the debate as to Plaintiffs' guilt. *Id.* at 3, 16–17. Even if Defendant's original advertisement constituted defamation (it did not; it was a protected opinion about public policy based on facts that included Plaintiffs' confessions), his present explanation of his prior opinion when challenged is not a statement of fact that can form a valid basis for a defamation claim. *See Weiser Law Firm, P.C. v. Hartleib*, 665 F. Supp. 3d 647, 664 (E.D. Pa. 2023) ("[O]nly statements of fact . . . are actionable under Pennsylvania law.").

But the context is important for another reason. Defendant's statement was an off-the-cuff remark responding to a political attack in the context of a live televised presidential debate with

8

mere minutes to respond. Explaining the deep intricacies of Plaintiffs' criminal history was not possible. It would significantly chill important protected political speech—speech which the public has a strong interest in hearing so they may cast informed votes—if political candidates can face substantial financial liability when forced on the fly to explain past policy opinions in response to an adversary's attack. Thus, Plaintiffs' amended claims of defamation-by-implication fail.

### B. Plaintiffs' Amended Claims for IIED Fail to State a Claim.

In arguing that their renewed claims for IIED are now sufficient, Plaintiffs sacrifice substance for detail. Plaintiffs emphasize what they contend is a "personal vendetta against Plaintiffs" without providing a reason why this Court should depart from the well-established principle that defamation is generally insufficient to constitute IIED. Opp'n at 8–11. Because it is well-settled that a court should not depart from established legal principles "unless there is clear precedent to the contrary," Plaintiffs' amended IIED claim is insufficiently pled. *See In re Verizon Healthcare Servs. v. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017).

As Defendant asserted in his Motion, courts have consistently held that defamation, without more, does not constitute the type of extreme and outrageous conduct necessary to support an IIED claim. Mot. at 13–14; *see Matthews v. Westin Wash. Dulles Airport*, 618 Fed. Appx. 39, 41 (3d Cir. 2015). Here, there simply is no "more" to warrant relief under an IIED claim for the Defendant's words.

Plaintiffs attempt to rebut this argument by arguing that Defendant's September 2024 statements are the latest in a series of words somehow comprising an actionable pattern of "continuing malicious actions." Opp'n at 11. However, a series of statements that do not individually qualify for relief do not do so in the aggregate, and Plaintiffs offer nothing in support of their contention. The lone case Plaintiffs rely upon, *McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695, 703 (E.D. Pa. 2002), stands only for the proposition that "an unceasing farrago

9

of racial epithets" being used in the workplace may rise to the level of extreme and outrageous conduct, not that sporadic instances of alleged defamation (or stated opinions) over the course of decades may do the same. *Id.* at 698, 703. Defendant is alleged to have engaged in—at most—six instances of defamatory conduct over the span of more than three decades. Amended Compl. at ¶¶ 67–95. And Plaintiffs cannot identify a single case in which multiple instances of defamation constituted IIED, nor could Defendant locate one. Therefore, Plaintiffs have failed to substantiate this position.[1]

Consequently, this Court has been given no reason why it should reject the established view that defamation does not constitute IIED, and Plaintiffs have failed to state a claim.

\* \* \* \*

Plaintiffs' Opposition offers only a cursory response to the substantive arguments raised by Defendant in his Motion. To the extent that it does, it relies on inapplicable or otherwise irrelevant law to argue for a radical departure from the black-letter principles that preclude the legal sufficiency of Plaintiffs' defamation-by-implication and IIED claims. Because these arguments fail to counter those presented by Defendant in his Motion, the Court should dismiss Plaintiffs' Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint with prejudice pursuant to UPEPA.

---

[1] Additionally, the only statements made within the statute of limitations are those at the 2024 debate. Plaintiffs cannot circumvent this basic guarantee of repose by bootstrapping years-old time-barred statements under the fig leaf of an alleged cumulative effect to support a concocted theory that lacks any basis in the law. *See O'Connor v. City of Newark*, 440 F.3d 125, 129 (3d Cir. 2006) ("[T]ime-barred claims cannot be resurrected by being aggregated and labeled continuing violations.").

Dated:  May 30, 2025                    Respectfully submitted,

                By:  /s/ Karin M. Sweigart
                   Karin M. Sweigart (PA No: 247462)
                   DHILLON LAW GROUP INC.
                   177 Post Street, Suite 700
                   San Francisco, CA 94108
                   Telephone: 415-433-1700
                   Facsimile: 415-520-6593
                   ksweigart@dhillonlaw.com
                   *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

    I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

Dated: May 30, 2025

                                        By:  /s/ Karin M. Sweigart
                                                Karin M. Sweigart