**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| YUSEF SALAAM, et al., | Case No. 2:24-cv-05560-WB |
| *Plaintiffs*, | |
| *v.* | **MOTION FOR STAY PENDING APPEAL** |
| DONALD J. TRUMP, | |
| *Defendant*. | |

**DEFENDANT DONALD J. TRUMP'S MOTION FOR STAY PENDING APPEAL**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................1

I.    Factual Background .......................................................................................1

II.   Procedural History ........................................................................................2

ARGUMENT ..........................................................................................................3

I.    A Stay Is Mandatory Because President Trump's Immunity Claim Is Not
      Frivolous. ......................................................................................................4

II.   President Trump is Also Entitled to a Stay Under the Traditional Four-Factor Test. .......5

   A.   President Trump Has a Strong Likelihood of Success on the Merits. ........................5

      1.   UPEPA does not "collide" with Federal Rule of Procedure 12(b)(6). ....................6

         i.    There is no conflict between UPEPA's grant of civil immunity and Federal
               Rule of Civil Procedure 12(b)(6). ..........................................................7

         ii.   There is no conflict between UPEPA's attorney fees and cost shifting
               provisions and the federal rules. ..........................................................9

         iii.  There is no conflict between UPEPA's right to interlocutory appeal and
               federal procedural rules.....................................................................10

      2.   UPEPA is outcome determinative and failure to apply UPEPA would
           encourage forum-shopping and create inequitable administration of the law.........11

      3.   No countervailing federal interests prevent this Court from applying UPEPA.......12

   B.   A Stay is Necessary to Prevent Irreparable Harm to President Trump. .....................13

   C.   A Stay Will Not Substantially Injure the Plaintiffs. ....................................14

   D.   The Public Interest Favors a Stay...........................................................14

CONCLUSION.......................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Adelson v. Harris*,
   774 F.3d 803 (2d Cir. 2014) ........................................................................... 8

*Byrd v. Blue Ridge Rural Elec. Coop., Inc.*,
   356 U.S. 525 (1958) ...................................................................................... 12

*Chamberlain v. Giampapa*,
   201 F.3d 154 (3d Cir. 2000) ................................................................6, 11, 12

*Cohen v. Beneficial Industrial Loan Corp.*,
   337 U.S. 541 (1949) .......................................................................................11

*Ferri v. Ackerman*,
   444 U.S. 193 (1979) ........................................................................................ 8

*Forsyth v. Kleindienst*,
   700 F.2d 104 (3d Cir. 1983) ........................................................................... 4

*Gasperini v. Center for Humanities, Inc.*,
   518 U.S. 415 (1996) ........................................................................................ 6

*Gillespie v. United States Steel Corp.*,
   379 U.S. 148 (1964) ...................................................................................... 10

*Giuffe v. Bissell*,
   31 F.3d 1241 (3d Cir. 1994) .................................................................... 10, 13

*Godin v. Schencks*,
   629 F.3d 79 (1st Cir. 2010) ............................................................................. 8

*Hanna v. Plumer*,
   380 U.S. 460 (1965) ...................................................................................... 12

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ........................................................................................ 5

*Hoelzle v. Vensure Emp. Servs.*,
   2022 WL 3588025 (E.D. Pa. Aug. 22, 2022 .................................................. 9

*In re City of Philadelphia Litigation,*
   49 F.3d 945 (3d Cir. 1995) ................................................................................ 10, 13

*In re Forty-Eight Insulations, Inc.,*
   115 F.3d 1294 (7th Cir. 1997) ..................................................................................... 5

*In re Revel AC, Inc.,*
   802 F.3d 558 (3d Cir. 2015) ..................................................................................... 5, 8

*In re Venoco, LLC,*
   2020 WL 264143 (D. Del. Jan. 17, 2020) .................................................................. 4

*Jakes v. Youngblood,*
   2025 WL 1208278 (W.D. Pa. April 25, 2025) ........................................................... 8

*King v. National R.R. Passenger Corporation,*
   2024 WL 665335 (E.D. Pa. February 16, 2024) ........................................................ 7

*Leon v. Hanoch,*
   2025 WL 62806 (E.D. Pa. January 8, 2025) .............................................................. 9

*Liggon-Redding v. Est. of Sugarman,*
   659 F.3d 258 (3d Cir. 2021) ...................................................................................... 6

*Manfred v. National R.R. Passenger Corp.,*
   106 F.Supp.3d 678 (W.D. Pa. 2015) ......................................................................... 7

*Neff v. General Motors Corp.,*
   163 F.R.D. 478 (E.D. Pa. November 7, 1995) .......................................................... 9

*Northon v. Rule,*
   637 F.3d 937 (9th Cir. 2011) .................................................................................... 9

*Paramount Aviation Corp. v. Agusta,*
   178 F.3d 132 (3d Cir. 1999) ................................................................................... 12

*Republic of Philippines v. Westinghouse Elec. Corp.,*
   949 F.2d 653 (3d Cir. 1991) ..................................................................................... 5

*Schmigel v. Uchal,*
   800 F.3d 113 (3d Cir. 2015) ................................................................................... 11

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010) ................................................................................................ 12

*Smith v. American Red Cross*,
  No. CIV.A. 93-6732,
  1994 WL 22688 (E.D. Pa. Jan. 27, 1994) ............................................................ 7

*Stack v. Boyle*,
  342 U.S. 1 (1952) ................................................................................................ 10

*U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*,
  190 F.3d 963 (9th Cir. 1999) .............................................................................. 8

**Statutes**

42 Pa.C.S. § 8340.12 ...................................................................................... 10, 13

42 Pa.C.S. § 8340.15 .......................................................................................... 4

## INTRODUCTION

President Donald J. Trump respectfully moves for a stay pending his appeal to the Third Circuit on whether Pennsylvania's Uniform Public Expression Protection Act (UPEPA) applies in federal court—a novel question of law in this circuit. Courts of Appeal are divided on the question of anti-SLAPPs' application in federal court. Unlike the majority of its sister circuits, the Third Circuit has yet to analyze an anti-SLAPP statute to determine its application by federal courts sitting in diversity. Further, UPEPA is a statute granting "immunity" from suit—a unique feature of Pennsylvania's anti-SLAPP iteration that materially distinguishes it from other anti-SLAPP statutes and further compels the need for a stay pending resolution of the appeal.

This Court's June 27, 2025, ruling that UPEPA conflicts with federal procedural rules threatens to undermine Pennsylvania's clear determination to deter lawsuits chilling protected speech by providing a substantive law conferring immunity. Without a stay, President Trump will be denied the benefits granted by UPEPA's substantive immunity provisions. A stay is warranted to preserve this right, as President Trump's non-frivolous appeal on an issue of immunity raises a substantial question of law, and the traditional four-factor test strongly favors a stay.

## BACKGROUND

### I.    Factual Background

The "Central Park Five" case was a highly publicized controversy from 1989 involving the assault and rape of a jogger in Central Park. *Id.* ¶ 16. Days after the attack and immediately after Plaintiffs confessed, President Trump took out a newspaper ad ("Ad") calling for the death penalty for those responsible (he did not name the Plaintiffs). *Id.* ¶ 25. The Plaintiffs later recanted their confessions and were eventually convicted. Then, over ten years later, they were exonerated after a different perpetrator confessed to the crime. *Id.* ¶ 39.

At a nationally televised September 10, 2024, Presidential debate, Vice President Harris referenced President Trump's 1989 Ad:

> Let's remember, this is the same individual [President Trump] who took out a full-page ad in the New York Times calling for the execution of five young Black and Latino boys who were innocent, The Central Park Five.

Amend. Compl. ¶ 46.

President Trump responded in the debate to Vice President Harris's loaded and patently false accusation that he "call[ed] for the execution" of innocent Black and Latino boys, and the unmistakable suggestion that the Ad stemmed from racist motives. He stated his factual understanding of the Central Park assaults and his reasoning at the time he took out the ad thirty-five years prior:

> … They come up with things like she [Vice President Harris] just said, going back many, many years, when a lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five. They [Plaintiffs] admitted—they said they pled guilty. And I said, well if they pled guilty, they badly hurt a person, killed a person ultimately. And if they pled guilty—then they pled we're not guilty. But this is a person [Vice President Harris] that has to stretch back years, forty, fifty years ago, because there is nothing now.

Amend. Compl. ¶46. Plaintiffs' claims for defamation, false light, and IIED stem solely from President Trump's statements in the 2024 debate about his own understanding in 1989, responding directly to Vice President Harris's accusation that his 1989 newspaper ad was racially motivated. Compl. ¶¶ 42–46.

## II.    Procedural History

Plaintiffs filed their original Complaint on October 21, 2024. ECF No. 1.

On December 11, 2025, President Trump moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and UPEPA. ECF No. 26.

On April 10, 2025, the Court granted President Trump's motion to dismiss in part and denied it in part, dismissing Plaintiffs' intentional infliction of emotional distress claim as well as their defamation claim, to the extent the latter relied on a defamation by implication theory ("April 10 Order"). However, the Court declined to treat the motion as one under UPEPA and decided it exclusively under F.R.C.P. Rule 12, leaving unresolved whether UPEPA applied. ECF No. 37.

On May 1, 2025, Plaintiffs filed their Amended Complaint. ECF No. 40.

On May 15, 2025, President Trump moved to dismiss the Amended Complaint exclusively pursuant to UPEPA. ECF No. 42.

On June 27, 2025, the Court denied President Trump's motion to dismiss based on its threshold determination that UPEPA does not apply in federal court, even when a federal court sits in diversity and applies substantive state law ("June 27 Order"). ECF No. 45.

On July 1, 2025, President Trump filed a notice of appeal as to the Court's June 27, 2025, order denying his motion to dismiss under UPEPA. ECF No. 47.

## ARGUMENT

The Court should apply the same standard that applies to appeals of other immunity determinations to determine whether a stay is appropriate. Under this circuit's general rule governing stays when a case involves immunity, President Trump is entitled to a stay so long as his appeal is not frivolous. But even under the traditional four-factor test that governs other stay applications (outside of the immunity context), President Trump's likelihood of success on the merits and the potential for irreparable harm, coupled with the lack of harm to Plaintiffs and the public interest advanced by a stay, nonetheless entitles President Trump to a stay.

I.      **A Stay Is Mandatory Because President Trump's Immunity Claim Is Not Frivolous.**

In the context of absolute and Eleventh Amendment immunity, a defendant is entitled to a stay while a denial of a motion to dismiss or summary judgment based on immunity is appealed, provided the underlying immunity assertion is not frivolous. *See Forsyth v. Kleindienst*, 700 F.2d 104, 105 (3d Cir. 1983) ("As the Supreme Court has made clear, absolute immunity protects the right not to be subjected to trial---a right that is lost if appellate review awaits final adjudication. It follows therefore, that a stay must be granted or the defendant will be deprived of the benefits of adjudication before trial."). Applying *Forsyth*, the District of Delaware concluded that "a stay should also be required when there is a non-frivolous assertion of Eleventh Amendment immunity." *In re Venoco, LLC*, 2020 WL 264143, at *3 (D. Del. Jan. 17, 2020). As UPEPA expressly provides for "immun[ity] from civil liability," 42 Pa.C.S. § 8340.15, the same analysis regarding the necessity of stays pending appeals of immunity determinations in *Forsyth* and *In re Venoco, LLC* should apply here.

President Trump amply demonstrates that his appeal is not frivolous. This Court noted that "Courts of Appeals have split as to whether other states' anti-SLAPP laws could apply in federal court under *Erie*." ECF No. 45 at 8 (citation omitted). This Court further noted that "no appellate court in Pennsylvania—either state or federal—has provided guidance as to whether [UPEPA] directly collides with the Federal Rules due to it blurring the lines between the pleading and summary-judgment stages[.]" *Id.* The Court relied on non-binding authority from another district court within the Third Circuit to conclude that UPEPA does not apply in federal court. *Id.* at 8–10. Given the paucity of authority on this question, President Trump's arguments on an issue where there is a circuit split and no binding precedent necessarily meets the low bar for being "non-frivolous."

**II.      President Trump is Also Entitled to a Stay Under the Traditional Four-Factor Test.**

While the Court should apply the standard for stays applicable to other types of immunity,

President Trump is also entitled to a stay under the general test courts use in evaluating motions to

stay. Outside the immunity context, courts evaluate stay applications based on:

> (1) whether the stay applicant has made a strong showing that he is likely
> to succeed on the merits; (2) whether the applicant will be irreparably
> injured absent a stay; (3) whether issuance of the stay will substantially
> injure the other parties interested in the proceeding; and (4) where the public
> interest lies.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991) (quoting

*Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). "[A]ll four stay factors are interconnected[.]" *In re*

*Revel AC, Inc.* 802 F.3d 558, 571 (3d Cir. 2015). The applicant must make "a sufficient showing

that (a) it can win on the merits (significantly better than negligible but not greater than 50% *and*

(b) will suffer irreparable harm absent a stay." *Id.* If so, the court must "balance the relative harms

using a 'sliding scale' approach." *Id.* (quoting *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294,

1300–01 (7th Cir. 1997)). All four factors weigh in President Trump's favor.

**A.  President Trump Has a Strong Likelihood of Success on the Merits.**

The Court's denial of President Trump's motion to dismiss the Amended Complaint hinged

on its determination that UPEPA "collided" with Federal Rule of Civil Procedure 12(b)(6) as they

answered the same question, namely whether Plaintiffs' Amended Complaint should be dismissed.

ECF No. 45 at 11. On appeal, President Trump is likely to prevail on his argument that UPEPA

does not collide with Rule 12(b)(6) and supports Pennsylvania's well-considered and substantive

policy of granting immunity against SLAPP suits to protect vital First Amendment rights.

### 1. UPEPA does not "collide" with Federal Rule of Procedure 12(b)(6).

A plaintiff pursuing state law claims should not be able to avoid the dispositive consequences of a state's substantive law by filing the suit in federal court sitting in diversity, which would incentivize forum shopping and risk two conflicting bodies of law on the merits of state law claims. Before applying the *Erie* doctrine, under which federal courts ordinarily apply state substantive law and federal procedural law, courts first assess whether there is a "direct collision between a federal rule and the state law or rule **that the court is being urged to apply**." *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2021) (emphasis added).

A "direct collision" between a federal and state rule means that the federal rule is sufficiently broad to control the issue before the court leaving no room for the operation of state law. *Chamberlain v. Giampapa*, 201 F.3d 154, 159 (3d Cir. 2000). "Although the Rules should be given their plain meaning and are not to be construed narrowly in order to avoid a direct conflict, a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits." *Id.* (cleaned up). "Federal courts have interpreted the Federal Rules, however, with sensitivity to important state interests and regulatory policies." *Id.* (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 at n. 7 (1996)).

Here, the Court erred when it concluded that UPEPA conflicted with federal rules by examining the operation of provisions that President Trump **never urged it to apply**, creating a "direct collision" where there was none. Specifically, the Court concluded UPEPA conflicted with federal rules regarding summary judgement and burden shifting even though President Trump urged the court to apply UPEPA's immunity provision expressly based on the 12(b)(6) standard that relies solely on the allegations in the complaint. President Trump did not ask the Court to engage in burden shifting or review evidence—the two examples cited by the Court in its June 27

6

Order. June 27 Order at 7–8. Because a conflict analysis require looking specifically at the provisions of state law that a party urges the court to apply, we also note that President Trump also contends UPEPA's fee shifting and interlocutory appeal provisions apply to this case (even though the pending appeal is also permitted under and based on the federal rules addressed in this motion) and for the reasons stated below are not in conflict with federal rules.

>    i.    There is no conflict between UPEPA's grant of civil immunity and Federal
>           Rule of Civil Procedure 12(b)(6).

President Trump is likely to prevail on his argument that UPEPA's grant of immunity does not conflict with Federal Rule of Procedure 12(b)(6). Rather, UPEPA, at 42 Pa.C.S. § 8340.15(1)(ii), mirrors the dismissal standard outlined in Rule 12(b)(6): failure to state a cause of action upon which relief can be granted. This Court already noted that "these standards are the same." ECF No. 37 at 6 at n. 3. If two rules are the same, they do not conflict.

Federal courts regularly grant defendants immunity from suit based on substantive state laws without deeming there to be a conflict with federal rules. *See, e.g.*, *King v. National R.R. Passenger Corporation*, 2024 WL 665335 (E.D. Pa. February 16, 2024) (applying statute providing civil immunity for railroads, 42 Pa.C.S. § 8339.1, in federal diversity action); *Manfred v. National R.R. Passenger Corp.*, 106 F.Supp.3d 678, 682 (W.D. Pa. 2015) (same); *Smith v. American Red Cross*, No. CIV.A. 93-6732, 1994 WL 22688, at *2 (E.D. Pa. Jan. 27, 1994) (applying state statute providing civil immunity based on diseases contracted from transplanted bodily fluid and tissue, 42 Pa.C.S. § 8333, in federal court). Just as federal courts in Pennsylvania have applied state law to immunize railroads and organ transplants from civil liability, there is no conflict between UPEPA's civil immunity for free speech and federal procedural rules.

While federal Courts of Appeals have reached different conclusion when analyzing the applicability in state anti-SLAPP statutes in federal court, there is a strong chance (certainly

"significantly better than negligible," *In re Revel AC, Inc.* 802 F.3d 558, 571 (3d Cir. 2015)), that

the Third Circuit will follow its sister courts in the First, Second, and Ninth Circuits and conclude

that UPEPA applies in federal court. *See Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010) ("Rule

12(b)(6) serves to provide a mechanism to test the sufficiency of the complaint. … [Maine's anti-

SLAPP law], by contrast, provides a mechanism for a defendant to move to dismiss a claim on an

entirely different basis: that the claims in question rest on the defendant's protected petitioning

conduct and that the plaintiff cannot meet the special rules Maine has created to protect such

petitioning activity against lawsuits."); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014)

(holding that applying Nevada's anti-SLAPP law's grant of "immunity from civil liability" is

"unproblematic" because "[w]hen state law creates a case of action, the State is free to define the

defenses to that claim, including the defense of immunity, unless, of course, the rule is in conflict

with federal law" (quoting *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979))); *U.S. ex rel Newsham v.

Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding California's anti-

SLAPP statute applies in federal court because to fail to apply California's law would "run squarely

against the 'twin aims' of the *Erie* doctrine").

This Court relied on *Jakes v. Youngblood*, 2025 WL 1208278 (W.D. Pa. April 25, 2025),

which is, to date, the only other federal court to examine the application of UPEPA to a federal

diversity action. ECF No. 45 at 8–10. The *Jakes* court held that there was a conflict between the

application of 42 Pa.C.S. § 8340.15(1)(i) and the federal rules, but this case is distinguishable. The

defendant in that action did not utilize the standard under F.R.C.P. 12(b)(6) included in 42 Pa.C.S.

§ 8340.15(1)(ii), and instead sought to require the introduction of evidence. *Jakes*, 2025 WL

1208278 *4 (W.D. Pa. April 25, 2025). The court held that the requested application of the law

conflicted with the federal rules because it "essentially supplants the Rule 12(b)(6) motion to

dismiss standard with the Rule 56 summary judgment standard." *Id. Jakes* thus presented a different question: whether a motion to dismiss under UPEPA based on evidence, thus triggering a summary judgment-like standard before discovery, conflicts with the Federal Rules. The Third Circuit need not confront this question in answering the easier question of whether a UPEPA motion based purely on legal argument (like President Trump's motion to dismiss) conflicts with the Federal Rules.

> ii.    *There is no conflict between UPEPA's attorney fees and cost shifting provisions and the federal rules.*

State law fee and cost shifting provisions like UPEPA's, 42 Pa.C.S. § 8340.18, are regularly applied in federal courts, including by this Court earlier this year.  *See, e.g.*, *Leon v. Hanoch*, 2025 WL 62806 (E.D. Pa. January 8, 2025) (applying the cost shifting provisions of 42 Pa. Cons. Stat. § 8340.2(a)(1)–(b) while sitting in diversity); (*Hoelzle v. Vensure Emp. Servs.*, 2022 WL 3588025, at \**5–6 (E.D. Pa. Aug. 22, 2022) (awarding fees under the Pennsylvania Wage Payment and Collection Law; *Neff v. General Motors Corp.*, 163 F.R.D. 478, 482 (E.D. Pa. November 7, 1995) (noting application of fees provisions under the Pennsylvania Unfair Trade Practices and Consumer Protection Law); *see also, Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the *Erie* doctrine."). There is no conflict with fee and cost shifting provisions and the federal rules; they are substantive laws that should be applied in diversity cases under the *Erie* doctrine.

    iii. *There is no conflict between UPEPA's right to interlocutory appeal and federal procedural rules.*

Finally, there is no conflict between UPEPA provisions granting the right to interlocutory appeal, 42 Pa.C.S. § 8340.17, and the collateral order doctrine.[1] "Although 28 U.S.C. § 1291 vests the courts of appeals with jurisdiction over appeals only from final decisions of the district courts, a decision final within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152 (1964) (cleaned up). "[A] decision of a district court is appealable if it falls within 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" One "major characteristic" of a "collateral order" is that "unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all." *Id.* (quoting *Stack v. Boyle*, 342 U.S. 1, 12 (1952)). This is one such order.

Immunity is not merely a "defense to liability." *Giuffe v. Bissell*, 31 F.3d 1241, 1245 (3d Cir. 1994). It is "an entitlement not to stand trial or face the other burdens of litigation," a right which would be "effectively lost if a case is erroneously permitted to go to trial" *In re City of Philadelphia Litigation* 49 F.3d 945, 956 (3d Cir. 1995). This right to not have to face trial and the burdens of litigation for one's protected public expression is exactly what the Pennsylvania legislature intended UEPA to establish. 42 Pa.C.S. § 8340.12 (stating UPEPA was passed due to

---

[1] California's anti-SLAPP provides immediate appeal of anti-SLAPP denials but not through immunity as Pennsylvania law does. However, courts sitting in diversity and applying California anti-SLAPP nevertheless have stated that there is no conflict with California's immediate right to appeal and the federal rules. *See Langer v. Kiser*, 57 F.4th 1085, 1104 (9th Cir. 2023) ("The denial of an anti-SLAPP motion is an immediately appealable final decision pursuant to the collateral order doctrine.").

the "disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression" that have "forced [litigants] to defend against meritless claims.").

There is no conflict between UPEPA's immediate right to appeal and the federal rules because a denial of immunity under UPEPA meets the criteria for a collateral order. Under the collateral order doctrine, a court order may be appealed before the case is concluded if it conclusively determines and important and severable question, and that decision is effectively unappealable after a final judgement is rendered. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). Similarly, an immunity right under UPEPA is collateral to the action and if its denial is not reviewed before the proceeding terminates, its value is lost and the right is effectively nullified. Therefore, there is no conflict between UPEPA's immediate appeal right and federal rules. That said and to avoid confusion, President Trump's pending appeal has been brought under the authority of the federal rules.

2. **UPEPA is outcome determinative and failure to apply UPEPA would encourage forum-shopping and create inequitable administration of the law.**

The objective of the *Erie* rule is that "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in federal court [will] be substantially the same, so far as the legal rules determine the outcome of the litigation, as it would be if tried in a State court." *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015) (quoting *Chamberlain*, 210 F.3d at 158). A provision of state law is outcome-determinative when its application or non-application would significantly impact the result of the litigation. *Id*. When a federal court sitting in diversity is faced with a question of whether to apply state law, the court should ask:

> [W]hether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly

> discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would likely cause a plaintiff to choose the federal court.

*Hanna v. Plumer*, 380 U.S. 460, 468 at n. 9 (1965).

If the Third Circuit does not conclude that UPEPA applies here, the outcome in this case will be different than if this case had been filed in state court. In a state court applying UPEPA, since the allegations of the complaint arise from protected speech, dismissal of Plaintiffs' IIED claim would trigger an automatic grant of immunity for that cause of action, 42 Pa.C.S. § 8340.18, and an award of fees and costs, 42 Pa.C.S. § 8340.18 ("If the party is immune . . . the court shall award the party attorney fees, court costs and expenses of litigation …"). Any denials of immunity would be immediately appealable, 42 Pa.C.S. § 8340.17. If this Court does not apply UPEPA, it would incentivize plaintiffs to file lawsuits based on protected public expression in federal court rather than Pennsylvania state court to gain a significant and outcome determinative legal advantage. This defeats the twin aims of the *Erie* doctrine.

### 3. No countervailing federal interests prevent this Court from applying UPEPA.

Notwithstanding the "twin aims" of the *Erie* doctrine, if a "strong countervailing federal interest dictates application of the federal rule, the federal rule controls." *Chamberlain*, 210 F.3d at 159. Some examples of "countervailing interests" deemed controlling over state law include interests in class certification, *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), interests in a right to a jury trial, *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525 (1958), and interests in the preclusive effect of prior federal decisions, *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999). Here, there is no countervailing federal interest that would override Pennsylvania's stated public policy interest in curbing the "disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression"

and encouraging "continued public participation in matters of public significance." 42 Pa.C.S.
§ 8340.12.

*       *       *       *

President Trump is therefore likely to prevail before the Third Circuit as to his argument
that UPEPA is a substantive Pennsylvania law that does not conflict with federal procedural rules
or other federal interests, and that it should be applied here to avoid forum-shopping and disparate
outcomes between state and federal actions applying the same law.

### B.  A Stay is Necessary to Prevent Irreparable Harm to President Trump.

If President Trump is forced to continue litigating this matter before the question of
immunity is resolved on appeal, he would be irreparably harmed if the Third Circuit later resolves
the issue of immunity in President Trump's favor. *See In re Venoco, LLC*, 2020 WL 264143, at *3
(D. Del. Jan. 17, 2020) ("[I]mmunity protects the right not to be subjected to trial in federal courts
and it will be lost if appellate review awaits final adjudication[.]"). Immunity is not merely a
"defense to liability," but instead is "an entitlement not to stand trial or face the other burdens of
litigation," *Giuffe v. Bissell*, 31 F.3d 1241, 1245 (3d Cir. 1994); *In re City of Philadelphia
Litigation*, 49 F.3d 945, 956 (3d Cir. 1995). The right to immunity would thus "effectively lost if
a case is erroneously permitted to go to trial" *In re City of Philadelphia Litigation*, 49 F.3d at 356.

Unlike a typical case in which a defendant must contend with multiple amended complaints
and often discovery before defeating an unmeritorious lawsuit, UPEPA provides defendants with
critical safeguards that provide for the expeditious resolution of lawsuits based on protected public
expression, including the right to an immediate interlocutory appeal, the right to collect attorneys'
fees after winning a UPEPA motion, and, perhaps most importantly, immunity from suit if a
plaintiff cannot clear the hurdles established by UPEPA.

13

Without a stay, the damage will already be done as President Trump would have been subjected to the hardships involved in litigation for a matter for which he was immune from suit. In this scenario, President Trump would have wholly lost the principal benefit of the immunity UPEPA was enacted to confer, and to which he was legally entitled. This constitutes irreparable harm.

### C.  A Stay Will Not Substantially Injure the Plaintiffs.

A stay will not "substantially injure the other parties interested in the proceeding." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991) (citation omitted). A stay will simply freeze the proceedings so the Court of Appeals can resolve the novel and critical immunity question President Trump's appeal presents. Any delay in Plaintiff's pursuit of their claims is minimal compared to the irreparable harm President Trump faces if forced to litigate a case from which he may be immune. Here, the case turns upon a televised exchange of statements within the last year. The Third Circuit's resolution of this discrete legal issue will ensure minimal disruption while preserving UPEPA's intended protections and any delay pales in comparison to the immunity President Trump may forfeit if no stay is granted.

### D.  The Public Interest Favors a Stay.

Public interest strongly favors a stay. UPEPA was enacted to curb "lawsuits brought primarily to chill the valid exercise of protected public expression" and to "encourage continued participation in matters of public significance." 42 Pa.C.S. § 8340.12. Allowing Plaintiffs to continue prosecuting their claims while the Court of Appeals decides the critical question of whether the immunity created by UPEPA applies to defendants in federal court would frustrate the General Assembly's efforts to safeguard protected public expression. Further, it would discourage all citizens from engaging in robust public discourse, particularly on contentious issues like

criminal justice. This case, in which Plaintiffs seek compensation based on speech in a freewheeling live debate between Presidential candidates, is a particularly egregious example possible of litigation threatening the public interest, including the free exchange of ideas guaranteed by the First Amendment and the public's right to observe and be informed by a debate between candidates for the highest public office. A stay ensures the Third Circuit can resolve this critical issue, safeguarding free speech for all.

## CONCLUSION

For the foregoing reasons, President Trump respectfully requests a stay pending the Third Circuit's resolution of whether UPEPA applies in federal court. This stay is critical to preserve President Trump's potential immunity and uphold Pennsylvania's policy against SLAPP lawsuits, ensuring that protected public expression, particularly in the context of a presidential debate, is not chilled by meritless litigation.

Dated:  July 3, 2025                                  Respectfully submitted,

                                                     By:  /s/ Karin M. Sweigart
                                                     Karin M. Sweigart (PA No: 247462)
                                                     DHILLON LAW GROUP INC.
                                                     177 Post Street, Suite 700
                                                     San Francisco, CA 94108
                                                     Telephone: 415-433-1700
                                                     Facsimile: 415-520-6593
                                                     ksweigart@dhillonlaw.com
                                                     *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

Dated:  July 3, 2025

By:  /s/ Karin M. Sweigart