UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSEF SALAAM,<br>ANTRON BROWN,<br>KEVIN RICHARDSON,<br>RAYMOND SANTANA, and<br>KOREY WISE,<br><br>    Plaintiffs,<br><br>  v.<br><br>DONALD J. TRUMP,<br><br>    Defendant. | Case No. 2:24-cv-05560-WB |

**ORDER**

Upon consideration of Defendant's Motion for Stay Pending Appeal, and Plaintiffs' response in opposition thereto, it is hereby ORDERED that Defendant's motion is DENIED.

              _____
              Beetlestone, C.J.
              United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSEF SALAAM,<br>ANTRON BROWN,<br>KEVIN RICHARDSON,<br>RAYMOND SANTANA, and<br>KOREY WISE,<br><br>    Plaintiffs,<br><br>  v.<br><br>DONALD J. TRUMP,<br><br>    Defendant. | Case No. 2:24-cv-05560-WB |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT'S MOTION FOR STAY PENDING APPEAL**

  Plaintiffs Yusuf Salaam, Antron Brown, Kevin Richardson, Raymond Santana, and Korey Wise respectfully oppose Defendant Donald J. Trump's motion for stay of this litigation pending appeal.

**I.  Legal Standard**

  "[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013). Like a preliminary injunction, a stay pending appeal "is an extraordinary remedy never awarded as of right." *Id.* (quoting *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008)). The Court considers four factors: (1) likelihood of success in obtaining relief on appeal, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether a stay would substantially

injure the non-movant, and (4) where the public interest lies. *In re Citizens Bank, N.A.*, 15 F.4th 607, 615 (3d Cir. 2021).

II. **Argument**

    A. **Defendant is not automatically entitled to a stay simply because he is asserting immunity under UPEPA.**

Defendant argues that a stay pending appeal is mandatory whenever the appeal involves a non-frivolous assertion of immunity, regardless of the traditional four-factor test for considering stays pending appeal. Defendant does not cite any relevant case for this proposition. Defendant relies on a District of Delaware case, *In re Venoco, LLC*, No. 17-10828, 2020 WL 264143 (D. Del. Jan. 17, 2020), where the district court found that a stay was appropriate where a defendant appealed an assertion of absolute immunity because this immunities "protect[s] the right not to be subjected to trial." *Id.* at *3. Yet *Venoco* does not compel a mandatory stay irrespective of the four-factor test. As a starting point, the Third Circuit has never recognized categorical exceptions to the traditional stay factors. It has made clear that the four-factor test applies with its usual vigor regardless of the nature of the right asserted on appeal. *See Conestoga*, 2013 WL 1277419, at *3 ("[W]e do not, unlike other courts, relax our standard [for a stay pending appeal] depending on the nature of the right asserted."). *Venoco* also involved absolute immunity and public official immunity, which involve immunity from suit as a threshold. *See Forsyth v. Kleindienst*, 700 F.2d 104, 104 (3d Cir. 1983). Because absolute immunity and public official immunity involves the right not even to be subject to litigation, those doctrines are separate from the merits of the claim and must be addressed as "a threshold issue." *B.S. v. Somerset Cnty.*, 704 F.3d 250, 261 & n.3 (3d Cir. 2013). The *Venoco* court granted a stay pending appeal because the nature of the rights conferred by the particular immunities at stake--the right to avoid litigation entirely.

2

The "immunity" conferred by UPEPA is different from absolute and public official immunity. UPEPA immunity arises *only* if a claim is first found to be non-meritorious either because (1) the plaintiff fails to "establish a prima facie case," (2) the complaint fails to "state a cause of action upon which relief can be granted," or (3) "there is no genuine issue as to any material fact and the [defendant] . . . is entitled to judgment as a matter of law." 42 Pa.C.S. § 8340.15. So immunity under UPEPA does not protect a defendant from having to litigate the merits of the underlying claim. UPEPA actually <u>requires</u> a merits determination. Only after the merits determination might "immunity" attach to the defendant. As such, Defendant is not entitled to a stay pending appeal based on a comparison to absolute immunity. If anything, the contrast points out exactly what a stay is not warranted in this case. UPEPA "immunity" flows from a merits determination rather than prevents that determination at the outset.

In *We, Inc. v. City of Philadelphia*, 174 F.3d 322 (3d Cir. 1999), the Third Circuit made clear that an immunity protecting a defendant's First Amendment rights does not entail an immunity from suit. Recognizing the distinction between immunity from suit and immunity from liability, the Court stated that "immunity *from suit*" is not necessary to prevent "an unacceptable chill of First Amendment rights." *Id.* at 329 (emphasis in original). Rather, the interests protected by First Amendment-based immunities "can be fully vindicated after trial." *Id.* *We* further undermines the availability of a stay, as further develop below.

**B.    The traditional stay factors preclude Defendant's requested relief.**

Defendant is not entitled to a stay under the traditional four-factor test. None of the factors support granting a stay, as set forth below.

3

### 1.  Defendant has not made a strong showing that he is likely to prevail on appeal.

"[W]hen considering motions to stay, the most important factor is whether the petitioner has made a strong showing of the likelihood of success on the merits." *In re Villarreal*, 758 F. App'x 314, 315 (3d Cir. 2019) (citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)). Here, Defendant has not made a strong showing of his likelihood of success on the merits.

*First*, there is no likelihood of success on the merits because the appeal should be dismissed for lack of appellate jurisdiction.[1] The sole basis offered by Defendant for appellate jurisdiction it the collateral order doctrine. Under the collateral order doctrine, an interlocutory order is appealable as of right if (1) it "conclusively determine[d] the disputed question"; (2) it "resolve[d] an important issue completely separate from the merits of the action"; and (3) it is "effectively unreviewable on appeal from a final judgment." *Graber v. Doe II*, 59 F.4th 603, 608 (3d Cir. 2023). The analysis here focuses on the second and third prongs.

Here, there is no way that Defendant can fulfill the third prong of the collateral order doctrine. An order denying an immunity such as absolute and qualified immunity meets the third prong because the immunity refers specifically to the right not to be sued in the first instance. Absent prompt appeal and a stay pending appeal, the right not to litigate necessarily is lost. But the particular immunity created by UPEPA does protect a defendant from litigation as a threshold matter. It is conferred only after a merits determination. 42 Pa.C.S. § 8340.15. UPEPA actually

---

[1] If Defendant purports to base his right to appeal on UPEPA's interlocutory appeal provision, this argument fails because "parties in a diversity action . . . are bound by federal procedural rules governing appeals, including the collateral order doctrine." *Brown v. Grabowski*, 922 F.2d 1097, 1106 (3d Cir. 1990). Further, UPEPA only provides for interlocutory appeal of orders "granting, denying or otherwise determining immunity." 42 Pa.C.S. § 8340.17. The Court did not make any such determination with respect to immunity because it concluded that UPEPA's immunity provision does not apply in federal court.

4

<u>requires</u> a merits determination before immunity can be conferred. *Id*. Relatedly, the Third Circuit has specifically held that orders denying First Amendment-based immunities (like UPEPA) are not immediately appealable because these rights can be fully vindicated in an appeal from a final judgment. *We, Inc.*, 174 F.3d at 330 (dismissing appeal of an order denying immunity under the *Noerr-Pennington* doctrine because an interlocutory appeal is not "necessary to prevent an unacceptable chill of those First Amendment rights."). Since Defendant cannot meet the third prong of the collateral order doctrine, his appeal must be quashed.

Defendant cannot meet the second prong either. Under the second prong, a collateral order must be "completely separate from the merits of the action." *Id.* at 324. Defendant has argued that the standard for finding immunity under UPEPA is identical to the standard for dismissing a complaint under Rule 12(b)(6). The determination of whether Plaintiffs have cognizable claims for defamation, false light and intentional infliction of emotional distress is not distinct from the "immunity" determination. This parallel between the merits and immunity determinations under UPEPA contrast with absolute immunity, which must be decided as a threshold matter because the immunity refers to the right not to be subject to litigation in the first instance. The appeal must be dismiss on jurisdictional grounds for this reason as well.

*Second*, Defendant has no likelihood of success on the merits regardless of jurisdiction. As this Court noted in its Order, Defendant renounced any reliance on the Federal Rules of Civil Procedure in bringing his motion. He based his motion to dismiss entirely on UPEPA alone. *See* Order dated June 27, 2025 [ECF Dkt. No. 45] at 6, n.3.But as Defendant has conceded, UPEPA's motion to dismiss procedure has never been promulgated by the Supreme Court of Pennsylvania. Because there is no procedure for filing a UPEPA motion to dismiss, Defendant's motion relying on a UPEPA procedure would fail because it is procedurally improper even under UPEPA itself.

5

*Third*, Defendant is not likely to persuade the Third Circuit that UPEPA applies in federal court, at least as related to the procedural circumstances of this case. The courts that have addressed this question both concluded that UPEPA does not apply in federal court because it conflicts with Rules 12 and 56. *See id.*; *Jakes v. Youngblood*, No. 2:24-CV-1608, 2025 WL 1208276, at *2 (W.D. Pa. Apr. 25, 2025). A district court of the District of New Jersey reached the same conclusion when analyzing New Jersey's nearly identical statute. *Paucek v. Shaulis*, No. CV 24-9807 (RMB-AMD), 2025 WL 1298457, at *8 (D.N.J. May 6, 2025) ("Unquestionably, some provisions of UPEPA conflict with the Federal Rules. . . . UPEPA's prima facie standard of dismissal conflicts with the Federal Rules by nullif[ying] a plaintiff's entitlement to trial if he can overcome a motion to dismiss or motion for summary judgment.") (alterations in original; internal quotation marks removed). Several circuits courts that have addressed whether anti-SLAPP motions apply in federal court have reached the same conclusion *See Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018) (explaining that the Federal Rules of Civil Procedure are "sufficiently broad . . . to control the issue before the court, thereby leaving no room for the operation of the motion-to-strike procedure") (internal quotation marks omitted); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015) (Kavanaugh, J.) (same); *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231 (D.C. Cir. 2021) (same); *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) (same). None of these decisions are binding on this Court. But their reasoning is sound and illuminates the correctness of this Court's decision.

Defendant points to other courts that have concluded that anti-SLAPP motions may be brought in federal court. These rulings have been the subject of criticism and calls for

6

reconsideration by several judges in the Ninth Circuit.[2] Last year, the Ninth Circuit agreed to reconsider its precedent on this issue *en banc*; the case settled before it could be heard by the *en banc* panel. *See Martinez v. ZoomInfo Tech.*, Inc., No 22-35305 (9th Cir. Jan. 18, 2024). As relates to Pennsylvania's statute, this Court's reasoning and the parallel reasoning in *Jakes* is correct is likely to be embraced by the Third Circuit.

In sum, Defendant has not made a strong showing that he is likely to prevail on appeal for several independent reasons: (1) his appeal lacks jurisdiction, (2) his motion fails even under UPEPA, and (3) the Court correctly held that UPEPA does not apply in federal court. This factor supports denying Defendant's request.

## 2. Defendant would not suffer irreparable harm absent a stay.

Defendant argues that *all* immunities constitute an immunity *from suit* and that such protections are lost whenever a defendant is forced to continue litigating. As noted above, Defendant conflates diverse immunities. Some immunities involve a right to be free from litigation. Others are aligned with the merits themselves. As the Supreme Court has cautioned: "There is a 'crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989) (quoting *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 269 (1982)). An immunity *from*

---

[2] *See Martinez v. ZoomInfo Tech., Inc.*, 82 F.4th 785, 794–95 (9th Cir. 2023) (McKeown, J., concurring) (explaining that the Ninth Circuit's current case law on anti-SLAPP motions is "at odds with the venerable [Erie] doctrine"); *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1182–86 (9th Cir. 2016) (Kozinski and Gould, JJ., concurring) ("California's anti-SLAPP law directly conflicts with Federal Rule 12, which provides a one-size-fits-all test for evaluating claims at the pleading stage."); *Makaeff v. Trump Univ.*, LLC, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., joined by Kozinski, Paez, & Bea, JJ., dissenting from denial of rehearing *en banc*) ("Our circuit's anti-SLAPP jurisprudence runs afoul of two separate lines of Supreme Court precedent, both of which involve matters fundamental to the operation of the federal courts."); *id.* (Kozinski, J. joined by Paez, J.) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules").

7

*suit* must "rest[] upon an explicit statutory or constitutional guarantee that trial will not occur—as in the Double Jeopardy Clause ('nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb'), or the Speech or Debate Clause ('[F]or any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place')." *Id.* (internal citations omitted). Here, the Third Circuit has never held that an immunity protecting a private litigant entails a right not to be subject to litigation. Instead the Court has held that immunities protecting a defendant's First Amendment rights *do not* entail that protection—only the right to be free from liability. *See We* 174 F.3d at 329.

In *We,* the plaintiff brought suit against the University of Pennsylvania for reporting suspicious activity occurring on the plaintiff's properties to the City of Philadelphia. *Id.* at 324. The University moved for summary judgment, arguing that it was immune under the *Noerr-Pennington* doctrine, which provides immunity to citizens' petitioning activities protected by the First Amendment. *Id.* at 326–327. The district court denied summary judgment and the University appealed under the collateral order doctrine. The University attempted to "liken *Noerr-Pennington* immunity to the absolute and qualified immunity enjoyed by public officials." *Id.* at 325. The Third Circuit rejected that argument. *Id.* at 330. The Court reasoned that "[c]itizens who exercise their First Amendment rights of free speech and free press enjoy significant protection from defamation liability in order to prevent undue chill on the exercise of those rights," and that "an immunity *from suit* [is not] necessary to prevent an unacceptable chill of those First Amendment rights." *Id.* at 327 (emphasis in original). The Court held that "[w]hile of course there is value—to all but the most unusual litigant—in triumphing before trial, the interest protected by the *Noerr-Pennington* doctrine can be fully vindicated after trial. . . . [A]n order denying *Noerr-Pennington* immunity is

8

effectively reviewable on appeal from a final judgment." *Id.* (internal citations and quotation marks omitted).

*We* militates against a stay in this case. Like the *Noerr-Pennington* doctrine at issue in *We*, UPEPA "grants immunity to those groups or parties exercising the rights to protected public expression" enshrined in the First Amendment so as to prevent those rights from being "chilled through abuse of the judicial process." 42 Pa.C.S. § 8340.12. Like the *Noerr-Pennington* doctrine, UPEPA confers immunity "from civil liability," rather than immunity from suit as a threshold matter (akin to absolute immunity). 42 Pa.C.S. § 8340.15. Defendant cannot establish irreparable harm because the interests protected by UPEPA can be "fully vindicated after trial." *We*, 174 F.3d at 330. A stay should be denied for this reason as well.

### 3. A stay would substantially injure Plaintiffs.

A stay in this case would substantially injure Plaintiffs. Plaintiffs were called murderers by the Defendant to an audience of over 67 million Americans. Plaintiffs filed suit less than six weeks after the debate to clear their names. Nine months after suit was initiated, Defendant still has not filed an answer. Now Defendant seeks an indefinite stay pending a meritless appeal. "[J]ustice delayed is justice denied," and this Court should not accommodate Defendant's requests to delay justice. *Edmondson v. Lilliston Ford Inc.*, No. 23-2938, 2024 WL 5155557, at *3 (3d Cir. Dec. 18, 2024).

Delaying discovery is also problematic because Defendant's memory is important to this litigation. Plaintiffs intend to show that Defendant knew that his statements about Plaintiffs over the past 30 years, including and especially at last September's debate, were false. Defendant is 79 years old, and there is a serious risk that his fading memory will hinder Plaintiffs from obtaining the necessary discovery, including at his deposition, which would be highly prejudicial to

9

Plaintiffs' case. This is not just a hypothetical concern. Defendant has already stated in response to multiple interrogatories relating to the September 2024 presidential debate that he "is unable to remember the specific details requested in this interrogatory." *See* Def's Objections and Responses to Plaintiffs' First Set of Interrogatories, Response to Interrogatory No. 6 (attached as Exhibit "A"). Problems of fading memory get worse as more time passes. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("[D]elaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts").

### 4.  Public interest factors do not support a stay.

The public interest favors denying a stay pending appeal. Individuals who have been publicly accused of heinous crimes should be entitled "to secure the just, speedy, and inexpensive determination" of their claims. Fed. R. Civ. P. 1. This benefits not just the litigants themselves. A speedy resolution of Plaintiffs' meritorious compensatory and punitive claims has the salutary benefit of deterring Defendant and others from spreading malicious falsehoods about innocent individuals in the future.

Defendant argues that public interest favors a stay because allowing this case to proceed pending appeal would chill public discourse "on contentious issues like criminal justice." This court has already rejected Defendant's argument that he was simply opining on criminal justice issues rather than making untrue statements about Plaintiffs. The Court should not accept Defendant's attempts to cast his statements in the light most favorable to him.

Free speech interests do not justify disrupting the litigation process. They do not justify providing a defendant with procedural protections not available to other litigants. As the U.S. Supreme Court explained in *Calder v. Jones*, 465 U.S. 783 (1984), "the potential chill on protected First Amendment activity stemming from libel and defamation actions is already taken into

10

account in the constitutional limitations on the substantive law governing such suits. . . . We have already declined . . . to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws." *Id*. at 790–91  The Third Circuit likewise has "rejected the notion that the burden of litigation poses an unacceptable threat to First Amendment values." *We,* 174 F.3d at 328.

As a final matter, Defendant has not argued that his current role as President of the United States factors into the stay analysis. Any such argument is waived. *See, e.g.*, *Baker v. Pennsylvania Econ. League, Inc. Ret. Income Plan*, 811 F. Supp. 2d 1136, 1144 (E.D. Pa. 2011). For the avoidance of doubt, Plaintiffs note that Defendant has engaged in extensive litigation as a plaintiff during his time in office. *See, e.g.*, *Donald J. Trump, et al.* v. *Paramount Global*, *et al*, No. 2:24-cv-00236-Z (N.D. Tex.); *Donald J. Trump, et al.* v. *J. Ann Selzer, et al*, No. 4:24-cv-449-RGE-WPK (S.D. Iowa). Indeed, civil litigation remains on ongoing priority for Defendant. He recently threatened to sue the Wall Street Journal based on its journalism concerning Defendant's relationship with Jeffrey Epstein. *See* [Exclusive | Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was From Donald Trump. - WSJ](#) (last viewed July 18, 2025) (reporting Defendant's statement that "I'm gonna sue The Wall Street Journal just like I sued everyone else."). Defendant filed suit against the Wall Street Journal last week, *See* [https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-ece8a837f9bd179771f801a765e242e4](#) (last viewed July 20, 2025). He has filed other lawsuits as well.  *See*  [https://www.washingtonpost.com/politics/2025/07/18/trump-bob-woodward-lawsuit-dismissed/](#) (last viewed July 20, 2025) (another lawsuit filed by Defendant during presidency). Defendant clearly does not believe he is prevented by his office from engaging in civil litigation.

11

In *Clinton*, the Supreme Court held that it was an abuse of discretion for a district court to defer a civil trial until after the President leaves office. See *Clinton,* 520 U.S. at 708. The Court added that "delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts." *Id*. This reasoning from *Clinton* applies equally here.

### IV. Conclusion

Defendant's motion should be denied. A proposed form of order is attached hereto.

Respectfully Submitted,

By:     */s/ Shanin Specter*
Shanin Specter, Esquire (No. 40928)
Charles L. Becker, Esquire (No. 81910)
Alex Van Dyke, Esquire (No. 334456)
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
shanin.specter@klinespecter.com
charles.becker@klinespecter.com
alex.vandyke@klinespecter.com
*Lead Counsel for All Plaintiffs*

Jane Fisher, Esquire, *pro hac vice*
David Fisher, Esquire, *pro hac vice*
FISHER & BYRIALSEN, PLLC
99 Park Avenue
New York, NY 10016
(303) 256-6345
jane@fblaw.org
david@fblaw.org
*Co-Counsel for Plaintiff Wise*

              Hollis Whitson, Esquire, *pro hac vice*
              SAMLER & WHITSON, P.C.
              1600 Stout St. Suite 1400
              Denver, CO 80202
              (303) 670-0575
              hollis@samlerandwhitson.com
              *Co-Counsel for Plaintiff Wise*

              Jonathan C. Moore, Esquire, *pro hac vice*
              Marc Cannan, Esquire, *pro hac vice*
              BELDOCK LEVINE & HOFFMAN, LLP
              99 Park Avenue
              New York, NY 10016
              (212) 490-0400
              jmoore@blhny.com
              mcannan@blhny.com
              *Co-Counsel for Plaintiffs Salaam, Santana,*
              *Richardson & Brown*

Dated:  July 23, 2025

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel through the Court's electronic filing and case management system.

                                                Respectfully Submitted,

By:     */s/ Charles L. Becker*
Shanin Specter, Esquire (No. 40928)
Charles L. Becker, Esquire (No. 81910)
Alex Van Dyke, Esquire (No. 334456)
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
shanin.specter@klinespecter.com
charles.becker@klinespecter.com
alex.vandyke@klinespecter.com
*Lead Counsel for All Plaintiffs*

Dated: July 23, 2025