UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSEF SALAAM, et al., | Case No. 2:24-cv-05560-WB |
| *Plaintiffs*, | |
| *v.* | **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR STAY PENDING APPEAL** |
| DONALD J. TRUMP, | |
| *Defendant*. | |

**REPLY IN SUPPORT OF DEFENDANT DONALD J. TRUMP'S
MOTION FOR STAY PENDING APPEAL**

**INTRODUCTION**

In enacting the Uniform Public Expression Protection Act ("UPEPA"), the Pennsylvania General Assembly explicitly recognized the severe chilling effect that lawsuits which target public participation have on constitutionally protected speech. To combat these abuses of the judicial process, the legislature provided defendants with substantive immunity from suit to spare them the burdens and expenses associated with meritless litigation. Plaintiffs' Opposition fails to acknowledge this fundamental purpose of UPEPA, or discuss the role this Court must play applying substantive state law when sitting in diversity jurisdiction, instead arguing that UPEPA's grant of immunity is fundamentally distinct from other federal immunities. Because the record demonstrates UPEPA immunity was intended to protect defendants from the burdens of litigation, and President Trump's ("Defendant") appeal presents a non-frivolous question, this Court should order an immediate stay.

But even under the traditional four-factor test, a stay is still warranted. Defendant has shown that he is likely to prevail at the Third Circuit, he would suffer irreparable harm that outweighs any harm to Plaintiffs, and the public interest favors a stay. Plaintiff's arguments to the contrary rest on legally deficient grounds and do not meaningfully refute Defendant's position. For these reasons, the Court should grant Defendant's motion.

**ARGUMENT**

**I.   UPEPA's Grant of Immunity Should Be Treated as Other Immunities Against Suit and Warrants an Immediate Stay.**

In adopting UPEPA, the General Assembly was clear in its recognition of the fact that "across the Commonwealth, individuals and organizations continue to get hit with strategic lawsuits against public participation, or SLAPPs," and "[t]hese lawsuits are notorious for their chilling effect on free speech, overwhelming nonmoving parties with excessive stress and legal

fees simply for statements or positions they may take in connection with matters of public interest." Sen. Maria Collett, Remarks on H.B. 1466, Pa. S. Legis. J., 2024 Sess., 647 (July 9, 2024). Because "SLAPPs are an egregious means of silencing public debate, conversation, and diverse thought[,]" the Commonwealth adopted UPEPA to "give those facing SLAPPs across the State the incentive and the tools to fight back against these frivolous suits." *Id.*

To that end, the Pennsylvania legislature drafted UPEPA to "grant[] immunity to those . . . parties exercising the rights to protected public expression," 42 Pa.C.S. § 8340.12(3)(i), not merely to create a procedural defense to liability. This statutory grant of immunity explicitly safeguards defendants from the burdens and expenses associated with litigation itself, recognizing that the threat of costly and protracted litigation significantly deters individuals from engaging in constitutionally protected speech. *See id.* § 8340.12(1)–(2). Indeed, to effectuate this aim, UPEPA "awards attorney fees to parties that are forced to defend against meritless claims arising from the exercise of the rights to protected public expression." *Id.* § 8340.12(3)(ii). And should a court deny a defendant the benefits of this immunity, such a denial may be immediately appealed. *Id.* § 8340.17. In these ways, UPEPA's grant of immunity mirrors those immunities that federal courts have long recognized as immunities from suit.

For example, the Third Circuit has explicitly recognized that absolute immunity—a clear immunity from suit, rather than from liability, *see Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985) ("[T]he essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.")—protects the right not to be subjected to trial. Mot. 4 (quoting *Forsyth v. Kleindienst*, 700 F.2d 104, 105 (3d Cir. 1983)). Such a right is "grounded in the need to free parties from the costs, burdens, and consequences of having to be party to an action and to defend one's self." *Bell Atl.-Pa., Inc. v. Pennsylvania Pub. Util. Comm'n*, 273 F.3d 337, 345 (3d

2

Cir. 2001) (citing *Transtech Indus., Inc. v. A & Z Septic Clean*, 5 F.3d 51, 56 (3d Cir. 1993)). And the denial of such immunity "should be subject to immediate review." *Id.* (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993), and *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The same can be said of qualified immunity. In *Mitchell*, the U.S. Supreme Court recognized that qualified immunity is "an *immunity from suit* rather than a mere defense to liability." 472 U.S. at 526 (emphasis in original). Even though a claim of qualified immunity turns on a merits determination of "whether the conduct of which the plaintiff complains violate[s] clearly established law," the "essentially legal" nature of this question renders qualified immunity an "entitlement not to stand trial or face the other burdens of litigation." *See id.* (discussing the assessment of qualified immunity in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). And like absolute immunity, the denial of qualified immunity is immediately appealable because "the right not to stand trial . . . cannot be effectively vindicated after the trial has occurred." *See id.* at 525–27.

Like absolute and qualified immunity, UPEPA grants immunity from suit. When determining whether an immunity should be viewed as immunity from suit or immunity from liability, "[t]he critical question, following *Mitchell*, is whether 'the essence' of the claimed right is a right not to stand trial." *We, Inc. v. City of Phila.*, 174 F.3d 322, 326 (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988)). UPEPA was designed to ensure that an individual who engages in speech on a matter of public concern has the right to avoid the costs and burdens associated with meritless suits designed to deter such conduct. *See* 42 Pa.C.S. § 8340.12(1)–(3)(ii). Such a right, by its very nature, cannot be vindicated if litigation proceeds despite a defendant's assertion of that right. *Mitchell*, 472 U.S. at 525. And should a court deny that right, a defendant may immediately appeal that denial. 42 Pa.C.S. § 8340.17. Therefore, this

3

Court should view Defendant's assertion of UPEPA immunity as it would when faced with a non-frivolous assertion of other immunities from suit and grant a stay during the pendency of Defendant's appeal. *See* Mot. 4.

Plaintiffs do not meaningfully contest Defendant's view of UPEPA's grant of immunity. In their Response, Plaintiffs merely assert that absolute immunity is a "threshold" determination, Opp'n 2, and that, unlike absolute immunity, UPEPA immunity "requires a merits determination," *id.* 3 (emphasis removed). On this basis, Plaintiffs assert that the two are dissimilar. *Id.* ("UPEPA 'immunity' flows from a merits determination rather than prevents that determination at the outset."). But Plaintiffs provide no support for their contention that a merits determination transforms an immunity from suit into a mere immunity from liability. And nor could they, as the U.S. Supreme Court has been clear that certain immunities from suit, such as qualified immunity, maintain their character *despite* requiring an initial merits determination. *See supra* p. 3 (qualified immunity requires an initial determination as to whether the conduct of which the plaintiff complains violates clearly established law).

Instead, Plaintiffs rely on the Third Circuit's central holding in *We*, an inapposite case. Opp'n 3. In *We*, the Court of Appeals considered whether the *Noerr-Pennington* doctrine should be viewed as creating immunity from suit or immunity from liability. 174 F.3d at 326–30. "The *Noerr-Pennington* doctrine originated in the anti-trust context as the proposition that 'joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition.'" *Id.* at 326 (citing *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)). However, the doctrine has since broadened to encompass claims of immunity premised on constitutional rights. *See id.* at 326–27 (citing cases). Nevertheless, in *We*, the Third Circuit determined that "the interest protected

4

by *Noerr-Pennington* [*i.e.*, immunity from liability for certain types of constitutionally protected activity] can be fully vindicated after trial," and upon that basis, "conclude[d] that the *Noerr-Pennington* doctrine does not confer a right not to stand trial, but rather provides only a defense against liability for certain conduct." *Id.* at 330.

UPEPA's immunity is readily distinguishable from the type of immunity considered in *We*. Unlike *Noerr-Pennington* immunity—a judicial invention that predates UPEPA and was originally designed to reinforce the principle that "the antitrust laws, tailored as they are for the business world, are not at all appropriate for application in the political arena," *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (cleaned up)—UPEPA provides an express statutory grant of immunity, similar in essence to absolute or qualified immunity, that cannot be retrieved once a defendant is required to undergo the burdens of meritless litigation. That is why, for example, a court must stay "all other proceedings in the action" when a defendant files a motion to dismiss pursuant to UPEPA and why any denial of UPEPA immunity may be immediately appealed. *See* 42 Pa.C.S. § 8340.16(e). To permit other proceedings to continue—including costly and intrusive discovery into activity protected at the core of the First Amendment—while a court weighs the merits of a frivolous suit would fly in the face of the Pennsylvania legislature's clear intent to avoid the chill on public participation that the legislature has determined necessarily flows from such litigation. *Id.* § 8340.12(2).

Regardless of whether the Third Circuit has concluded that "'immunity from suit' is not necessary to prevent 'an unacceptable chill of First Amendment rights'" in the *Noerr-Pennington* context, Opp'n 3 (emphasis removed), the Pennsylvania legislature has spoken with one voice to the contrary. And this Court is required to apply substantive Pennsylvania law while sitting in diversity. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

5

Plaintiffs' attempt to distinguish UPEPA immunity by claiming it hinges on a merits determination thus fundamentally misconstrues the statute, as UPEPA grants defendants an immediate entitlement to avoid the litigation process itself, which cannot be vindicated once Defendant is subjected to the burdens of litigation. UPEPA immunity is, therefore, like that afforded to defendants under the doctrines of absolute and qualified immunity, and the Court should stay the proceedings in this case as it would in cases where such immunities are invoked.

## II.   Plaintiffs' Jurisdictional and Merits Arguments Do Not Demonstrate that a Stay Is Unwarranted.

### A.   The Third Circuit Has Jurisdiction to Hear Defendant's Appeal.

Plaintiffs argue that Defendant has failed to demonstrate his likelihood of success on the merits because "the appeal should be dismissed for lack of appellate jurisdiction." Opp'n 4. This argument is unpersuasive for several reasons.

*First*, Plaintiffs' view that this Court's refusal to evaluate Defendant's motion to dismiss under UPEPA eliminates the possibility of a successful appeal, *id.* n.1, is plainly wrong. The Third Circuit has explicitly recognized that denials of immunity, *even if implicit*, are immediately appealable. *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 187–88 (3d Cir. 2021) ("Denials of immunity are immediately appealable even if the denial is "'implicit.'"). This Court's decision not to assess Defendant's immunity under UPEPA constitutes an implicit denial. Thus, it is irrelevant whether the Court *explicitly* denied Defendant's claim.

*Second*, as discussed *supra*, Plaintiffs misunderstand UPEPA's grant of immunity. An appeal is permissible under the collateral order doctrine where, *inter alia*, a court's decision is "effectively unreviewable on appeal from a final judgment." *Graber v. Doe II*, 59 F.4th 603, 608 (3d Cir. 2023). If proceedings in this case continue, Defendant will be denied the essential function of UPEPA immunity, which is to prevent defendants from being subjected to meritless litigation

6

seeking to punish their exercise of their First Amendment rights. *See* 42 Pa.C.S. § 8340.12(1)–(3)(i). Because this Court's error would be requiring Defendant to undergo the entire process of litigation, such error cannot be effectively reviewed after this Court issues a final order, regardless of whether the determination of immunity requires a merits determination. *See Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014) (officers' invocation of qualified immunity "could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost").

*Third*, Plaintiffs are misguided in their view that because Defendant would have immunity under the same circumstances in which their Amended Complaint would be insufficient, Defendant's appeal does not concern a question that is "completely separate from the merits of the action." Opp'n 5 (quoting *We*, 174 F.3d at 324). In assessing whether a question is "completely separate from the merits," a court considers whether the appellate court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required." *Praxis Props. Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 58 (3d Cir. 1991) (quoting *Van Cauwenberghe*, 486 U.S. at 528). The entire purpose of Defendant's appeal is to settle the unanswered question of whether UPEPA immunity applies to defendants in the Third Circuit because it grants a substantive right. This doctrinal question has nothing to do with the underlying merits of Plaintiffs' causes of action. Indeed, at least one federal circuit has acknowledged that "issues concerning immunity from suit are often separate from the underlying dispute in the litigation." *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 174 (5th Cir. 2009) (quoting *Mitchell*, 472 U.S. at 529). Because the Third Circuit may answer this question without "scrutinizing the substance of th[is] dispute," Defendant's appeal concerns a question "completely separate from the merits" of this action.

Therefore, Plaintiffs' arguments that the Third Circuit lacks appellate jurisdiction fail.

### B. Defendant Is Likely to Succeed on the Merits of His Appeal.

Plaintiffs contend that Defendant is unlikely to succeed in his appeal for two reasons: (1) The Pennsylvania Supreme Court has not issued a procedure for filing a UPEPA motion to dismiss, Opp'n 5; and (2) UPEPA conflicts with the Federal Rules of Civil Procedure, *id.* 6. Neither argument is compelling.

Concerning Plaintiffs' first argument, Defendant's anti-SLAPP motion to dismiss was premised on UPEPA's grant of immunity to defendants who engage in public participation on matters of public concern, a substantive provision of UPEPA that took effect "immediately" upon UPEPA's enactment. *See* H.B. 1466 § 7(1) (stating that 42 Pa.C.S. §8340.16, which would implement a special motion procedure, a discovery stay, and other procedural requirements, shall take effect upon approval by the state supreme court, while "the remainder of this act shall take effect immediately"); ECF 42-1 at 1 n.2. Accordingly, that the Pennsylvania Supreme Court has yet to adopt UPEPA's procedural components does not affect the present operability of UPEPA's substantive provisions, including UPEPA's grant of immunity and it further establishes that the immunity is substantive.

Regarding Plaintiffs' second argument, Plaintiffs suggest that UPEPA conflicts with Federal Rules 12 and 56. But the authority Plaintiffs cite exclusively concerns standards that differ significantly from the standard invoked by Defendant. In *Paucek v. Shaulis*, the District of New Jersey found that New Jersey's anti-SLAPP statute conflicted with Rule 12 by permitting a district court to consider "any evidence that could be considered in ruling on a motion for summary judgment." No. 24-9807 (RMB-AMD), 2025 WL 1298457, at *9 (D.N.J. May 6, 2025) (quotation omitted). In *Carbone v. Cable News Network, Inc.*, the Eleventh Circuit determined that Georgia's anti-SLAPP statute conflicted with Federal Rules 8 and 12 "by requiring the plaintiff to establish a probability that he will prevail on the claim asserted in the complaint." 910 F.3d 1345, 1350 (11th

8

Cir. 2018) (cleaned up). The same is true for the D.C. Circuit in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015), and *Tah v. Gob Witness Publishing, Inc.*, 991 F.3d 231, 255–56 (D.C. Cir. 2021) (citing *Abbas*), as well as the Second Circuit in *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020). And with respect to the sole case Plaintiff cites concerning UPEPA, *Jakes v. Youngblood*, No. 2:24-cv-1608, 2025 WL 1208276 (W.D. Pa. Apr. 25, 2025), the Western District was concerned with the question of whether UPEPA's standard for dismissal that mirrors Federal Rule 56 (42 Pa.C.S. § 8340.15(2)), conflicts with that rule. *Jakes¸* 2025 WL 1208276 at *5. Indeed, Plaintiffs have provided no support for their position that UPEPA, as invoked by Defendant seeking to apply the standards of Federal Rule 12(b)(6), conflicts with *any* federal rule.

By contrast, Defendant has shown that several Circuits have permitted state anti-SLAPP statutes to apply in federal court. Mot. 8. In addition to the First, Second, and Ninth Circuits, *id.*, the Fifth Circuit has also determined that federal courts should apply state anti-SLAPP statutes in similar cases. *See Henry*, 566 F.3d at 169 (Louisiana anti-SLAPP statute governs federal defamation action under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Defendant need not demonstrate that he will certainly prevail on the merits to warrant a stay. Rather, he must merely demonstrate that his chances of success are "significantly better than negligible." Mot. 5 (citing *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015)). As the Third Circuit has yet to voice its opinion on the issue, and four sister circuits agree with Defendant's argument, Defendant has plainly met this standard.

### III.     Plaintiffs' Remaining Arguments Are Unavailing.

As to the remaining three factors under the traditional stay analysis, Plaintiffs have failed to demonstrate that any of them weigh against issuing a stay.

Plaintiffs argue that Defendant would not suffer irreparable harm absent a stay because the rights protected by UPEPA "can be fully vindicated after trial." Opp'n 8. But, as Defendant has

9

already argued, this overlooks the point of UPEPA entirely. UPEPA was designed to ensure that citizens who engage in public discourse should not be hauled into court in the first instance to answer for their decision to do so. *See supra* pp. 5–6. If Defendant is forced to continue litigating Plaintiffs' frivolous suit, he will be irreparably harmed because the Third Circuit cannot turn back the clock and prevent Defendant from having had to undertake the burdens of litigation. And insofar as Plaintiffs argue that they will be irreparably harmed because of Defendant's "fading memory," Opp'n 9–10, this is a red-herring argument because Plaintiffs and their counsel have no basis to disparage Defendant's memory and, in any event, their claims are based solely on Defendant's recorded statements during a televised debate. Whether those statements comprise defamation in the context in which they were made has nothing to do with anyone's memory—they are a simple matter of public record. Plaintiffs have provided no other justification for their view that a stay would cause irreparable harm and have not demonstrated that any harm they might face outweighs the clear harm to Defendant.

Finally, Plaintiffs do not squarely address Defendant's—and the Pennsylvania legislature's, *see supra* pp. 1–2—broader view as to the impact this Court's refusal of a stay will likely have on First Amendment expression. UPEPA was designed to provide citizens with the assurance that they will not be subjected to litigation for speaking on matters of public concern. If this Court refuses to grant a stay while the Third Circuit provides clarification on whether those protections will follow defendants into federal court, this litigation will establish that citizens may face frivolous lawsuits for merely voicing their opinions in quintessentially political discussions. Only granting a stay during the pendency of appellate proceedings will avoid that consequence.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Stay Pending Appeal should be granted.

Dated:  July 30, 2025                                    Respectfully submitted,

By:  /s/ Karin M. Swigart
Karin M. Sweigart (PA No: 247462)
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: 415-433-1700
Facsimile: 415-520-6593
ksweigart@dhillonlaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

Dated:  July 30, 2025

By:  /s/ Karin M. Sweigart